**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
2700 N. Main Street, Ste. 1000
Santa Ana, California 92705
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
411 Camino Del Rio South, Suite 301
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

Attorneys for the Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Erik Knutson Kevin Lemieux, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br> v. <br><br> Schwan's Home Service, Inc., <br><br> Defendant. | **Case No: 12-CV-964 GPC (DHB)** <br><br> **JOINT MOTION FOR DISCOVERY DISPUTE REGARDING RESPONSES TO PLAINTIFFS' DISCOVERY REQUESTS** <br><br><br> **Judge: Hon. David H. Bartick** |

Kazerouni Law Group, APC
2700 Noth Main Street, Suite 1000
Santa Ana, CA  92705

# I. Introduction

This is a case seeking damages from Defendant for alleged violations of 47 U.S.C. § 227 *et seq.* ("TCPA"), by illegally calling potentially hundreds of thousands of putative class members on their cell phones, without prior express consent, resulted in the tens of millions of dollars in statutory damages. From the outset of this litigation, Plaintiffs have sought the most basic information required to litigate a TCPA class action: (i) the extent of use of autodialer or prerecorded voice message to call cell phones; (ii) Defendant's evidence of "prior express consent"; and (iii) Defendant's insurance coverage. However, to date, Plaintiffs have been stonewalled at every step of the way, as evidenced by the parties' continued and lengthy meet and confer process, Defendant's refusal to provide this basic information, and meritless objections to Plaintiffs' third party subpoena.

The parties conferred regarding this discovery dispute, pursuant to Civil Local Rule 26.1.a., on two occasions, including on January 4, 2013 [Declaration of Abbas Kazerounian ("Kazerounian Decl."), ¶ 4; Exhibit B] and January 23, 2013 [Declaration of Joshua B. Swigart ("Swigart Decl."), ¶ 3; Exhibit C.].

# II. What Plaintiffs Are Seeking

Rather than specifically discuss each of Plaintiffs' several document production and interrogatory requests in dispute, these requests can be summarized into three basic categories: (1) Defendant's outbound dial list and report of telephone numbers called using an autodialer and/or prerecorded voice;

Kazerouni Law Group, APC
2700 Noth Main Street, Suite 1000
Santa Ana, CA  92705

Kazerouni Law Group, APC
2700 Noth Main Street, Suite 1000
Santa Ana, CA 92705

(2) Documents pertaining to Defendant's affirmative defense of "prior express consent"; and (3) Defendant's insurance policies that may cover Plaintiffs' TCPA claims. [1] Plaintiffs are entitled to this information necessary to establish the prerequisites of a motion for class certification, pursuant to FRCP 23(a).

### A.   Outbound Dial List

Despite Plaintiffs' proper requests for production of documents and interrogatories regarding Defendant's outbound dial list and report,[2] Defendant continues to refuse to provide this information. Defendant knows full well that the production of this information (the outbound call list and report) will allow Plaintiffs to certify their proposed class action. Based on discovery responses provided thus far, Plaintiffs believe that Defendant obtained the cellular telephone numbers for a certain group of former customers, specifically NutriSystems's former customers, and then created a dial list of those former customers, and provided that dial list to third party dialing company, CustomerElation, Inc., who then placed automated/prerecorded sales calls to the putative class. Defendant refuses to disclose even the "format" of the outbound dial list and report.[3]

Defendant essentially objects to Plaintiffs' document requests on the grounds that: (i) the requests are overbroad in light of the fact that the "Court has

---

[1] Specific objections are found in Plaintiffs' Exhibit A, attached hereto.
[2] See Pls.' Exhibit A ("December Letter"), Document Production Requests Nos. 7-12 [Pgs. 26-41] and 14 [Pg. 43]; and Special Interrogatories Nos. 2-9 [Pgs. 4-20], 16 [Pgs. 20-22], 18 [Pgs. 22-23] and 25 [Pgs. 23-25]; Kazerounian Decl., ¶ 3. Additionally, Plaintiffs seek a "signed" copy of the Master Services Agreement already provided by Defendant as Bates A00326 to A00344.
[3] See id., Special Interrogatory No. 25 [Pgs. 23-25]; Kazerounian Decl., ¶ 3.

Kazerouni Law Group, APC
2700 Noth Main Street, Suite 1000
Santa Ana, CA  92705

bifurcated discovery"; (ii) Defendant will have to guess at which documents are relevant because of the terms "related to" and "regarding"; (iii) the requests are "unduly burdensome"; and (iv) the requests seek documents protected by attorney-client privilege and work product doctrine. Plaintiffs' responded to Defendant in a 51-page M&C letter on December 28, 2012 ("December Letter"), explaining for the most part that: (i) Defendant's representation that the Court has bifurcated discovery is false, as this Court has issued no such order; (ii) Defendant's general objections are inadequate: Plaintiffs' requests are not overly broad because they only seek relevant documents critical to Plaintiffs' claims regarding outbound autodialed and/or prerecorded calls within the four year statutory period; (iii) Defendant did not explained how or why it is unduly burdensome for Defendant to produce the requested documents; and (iv) Defendant had not provided a privilege log[4], did not explain how the attorney-client privilege and work product doctrine applied, and did not even indicate the date on which the requested documents were created so as to possibly implicate such privilege or doctrine.

Plaintiffs informed Defendant of the intention to compel production of the outbound dial list and report in electronic format, during the Meet & Confer on

---

[4] Defendant has since provided a "privilege log" (Pls.' Exhibit D; Swigart Decl., ¶ 4) indicating that Bates A00311 was prepared *after* this action was filed, and therefore, Defendant cannot claim work product doctrine, nor can Defendant claim attorney-client privilege because there is no indication that the email was a communication between Defendant and Defendant's attorney. insufficient detail provided to reasonably inform Plaintiffs whether these documents were *See Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 930 (N.D. Cal. 1976); *Fox v. California Sierra Financial Services*, 120 F.R.D. 520, 524 (N.D. Cal. 1988)). Again, Plaintiffs seek only *non-privileged* policies/procedures regarding use of autodialed/prerecorded calls.

Kazerouni Law Group, APC
2700 Noth Main Street, Suite 1000
Santa Ana, CA 92705

January 4, 2013[5] and on January 23, 2013.[6]  Defendant's refusal to produce this information is unjustified. The production of that outbound dial list and report establishes: (i) the numerosity of Plaintiffs' class[7]; and (ii) the identity of those class members. Plaintiffs are entitled to conduct discovery regarding both items, in preparation for an eventual motion for class certification. Plaintiffs must know the number of class members for their class certification brief. The outbound dial list provides this basic information. Significantly, Defendant will likely argue that Plaintiffs cannot ascertain the nationwide class otherwise. The dial list has a list of all class members and will thus allow Plaintiffs' consultant to accurately ascertain who was called and who should be included in or excluded from the class.

If Defendant is unwilling to determine the number of calls to putative class members using an autodialer and/or prerecorded voice message, Plaintiffs' consultant is willing and able to determine this information from review of the outbound dial list. Plaintiffs request a scrubbed list of the cellular telephones called from the outbound dial list (under protective order), but Plaintiffs' consultant can scrub the list and determine that number and the identifiable class members.[8] Thus, Defendant cannot claim it would require an unreasonable number of hours and cause undue expense to determine the number of persons called using an autodialer

---

[5] *See* Pls.' Exhibit B ("January 4, 2013 Letter"), Document Request Nos. 7-12 [Pgs. 26-41] and 14 [Pg. 43]; Kazerounian Decl., ¶ 4.
[6] *See* Pls.' Exhibit C ("January 23, 2013 Letter"); Swigart Decl., ¶ 3.
[7] Although Defendant says it will stipulation to satisfaction of the numerosity prerequisite in this Joint Motion, Defendant offers no such offer of stipulation as to the ascertainability requirement.
[8] *Id.* at 7.

Kazerouni Law Group, APC
2700 Noth Main Street, Suite 1000
Santa Ana, CA  92705

and/or prerecorded voice (a computer system made such calls), as Plaintiffs' consultant can perform this task swiftly once provided with the outbound dial list and report, requiring about a week to separate cell phones from landlines per every one million calls.[9]

Plaintiffs request limited discovery to determine, from the outbound dial list, the number of potential class members and their identity in order to adequately support the numerosity and ascertainability of a class. "**[D]iscovery must be broad enough to give the plaintiffs 'a realistic opportunity to meet [the certification] requirements.**'" *United States EEOC v. ABM Indus.*, 2008 U.S. Dist. LEXIS 105649 (E.D. Cal. Dec. 22, 2008) (quoting *National Organization for Women, Farmington Chapter v. Sperry Rand Corp.,* 88 F.R.D. 272, 276-277 (D. Conn. 1980) (emphasis added); *see also Philipp v. Carey*, 517 F. Supp. 513, 521 (N.D.N.Y 1981) (delaying ruling on class certification motion until after further discovery needed to "better ascertain class membership").[10]

---

[9] *Id.* at 8.

[10] *See CashCall, Inc. v. Superior Court*, 159 Cal. App. 4th 273, 286 (Cal. App. 4th Dist. 2008) ("we conclude that a trial court, exercising its reasonable discretion in applying the *Parris* balancing test in the circumstances of a particular case, may order precertification discovery of the identities of class members (i.e., those with standing) who, when contacted, ultimately may elect to be substituted as named plaintiffs to continue prosecution of the class action on behalf of the class."); *Sandres v. Corr. Corp. of Am.*, 2011 U.S. Dist. LEXIS 14369, 12 (E.D. Cal. Feb. 4, 2011) (permitting precertification discovery regarding identify of a witness with personal knowledge of the unlawful acts allegedly suffered by Plaintiff); *Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal. 4th 360, 374 (Cal. 2007) (court "permitted disclosure of contact information regarding Pioneer's complaining customers" as part of precertification discovery); *In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, 2012 U.S. Dist. LEXIS 19389, 7 (C.D. Cal. Feb. 14, 2012) ("it would be more appropriate at this juncture to grant Plaintiffs limited discovery to attempt to ascertain the locations of all the Unserved Defendants.").

Kazerouni Law Group, APC
2700 Noth Main Street, Suite 1000
Santa Ana, CA  92705

The requested outbound dial list and report are relevant to Plaintiffs' TCPA claims, and Plaintiffs are amendable to seeking a protective order[11] in this case.[12] With limited precertification discovery regarding the number of putative class members and their identity, assuming the class is certified, those persons identified in the outbound dial list will have names and addresses associated with Defendant's files, and thus notice can be sent in the manner most practicable.

**B.      Documents Evidencing "Prior Express Consent"**

Prior express consent under the TCPA, is treated as an affirmative defense. Calls otherwise in violation of the TCPA are not unlawful if made "with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). Plaintiffs are entitled to all documents and evidence to support that defense, including but not limited to any contract and/or agreement between Defendant and any of the Plaintiffs, in order to prepare a response and demonstrate that the putative class is both ascertainable and manageable. Plaintiffs' discovery requests concerning this point is entirely proper.[13] While Defendant indicates that it did not maintain a record of prior express consent in a database[14] until November 2012, let Defendant produce at least those records now in electronic searchable format.

---

[11] *See* Kazerounian Decl., ¶ 5; Swigart Decl., ¶ 5.

[12] Hyde & Swigart obtained a protective order in connection with production of an outbound dial list in a very similar TCPA class action in *Adams, et al., v. AllianceOne Receivables Management, Inc.* (Case No. 08-CV-0248). *See* Swigart Decl., ¶ 5.

[13] *See* Pls.' Exhibit A, Document Production Request Nos. 13 and 18; Kazerounian Decl., ¶ 3.

[14] *See CE Design Ltd. v. King Architectural Metals, Inc.*, 271 F.R.D. 595, 600 (N.D. Ill. 2010) ("failure to keep orderly records should not be permitted to foil certification motions.")

Kazerouni Law Group, APC
2700 Noth Main Street, Suite 1000
Santa Ana, CA 92705

Regarding Defendant's objection to this request, Defendant merely responded as follows: "*See* Objection to Request No. 7," which objection is essentially the same meritless objection raised to Plaintiffs' requests for documents relating to the outbound dial list. Plaintiffs attorneys explained the desire to seek a motion to compel regarding thus information.[15] Defendant is unjustifiably withholding this information to prejudice Plaintiffs regarding an eventual class certification motion. Defendant has and will likely claim that the persons called gave Defendant their "prior express consent" to being called with an autodialer and/or by prerecorded voice message on their cell phone, for that is the primary defense to such a TCPA claim (47 U.S.C. § 227(b)(1)(A)), which is generally considered a strict liability statute. *See Alea London Ltd. v. Am. Home Servs.*, 638 F.3d 768, 776 (11th Cir. Ga. 2011). Defendant will likely assert this affirmative defense at trial and in opposition to class certification. Because "prior express consent" is an affirmative defense, Defendant has the burden and obligation to produce evidence of such consent, if any exist.

On January 4, 2008, the FCC release a Ruling[16] that clearly and unequivocally made it very plain that the burden of proving prior express consent was on the debt collector. FCC 07-232, ¶ 10. In that Ruling, in response to a debt

---

[15] Pls.' Exhibits B and Exhibit C, Document Request Nos. 13 [Pgs. 41-42] and 18 [Pgs. 48-50]; Kazerounian Decl., ¶ 4; Swigart Decl., ¶ 3.

[16] *See FCC, In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International for Clarification and Declaratory Ruling*, 07-232 (Adopted Dec. 28, 2007): (hereinafter "FCC 07-232").

Kazerouni Law Group, APC
2700 Noth Main Street, Suite 1000
Santa Ana, CA  92705

collector trade group's request for clarification of cell phone rules, the FCC permitted debt collectors to call cell phones only if the person called had provided their cell phone to the creditor in an application for services. FCC 07-232, ¶ 10. Courts have acknowledge the effect of the FCC Ruling placing the burden[17] on the defendant of proving prior express consent in several recent TCPA cases.[18]

In similar case involving discovery of prior express consent documents in a TCPA cell phone claim, *Donnelly v. NCO Financial Systems, Inc.*, 2009 U.S. Dist. LEXIS 124730, the Court ordered all documents evidencing prior express consent to be produced, *and prior to class certification*, and held Plaintiff's need in having the information outweighs any claimed burden on Defendant in producing it (*id.* at *6-9). Thus, it is crucial that these discoverable documents be produced now.

It is fundamentally unfair for Defendant to surprise Plaintiffs with relevant documents not served in discovery but produced for the first time in response to a motion for class certification or at trial. Plaintiffs believe there are no documents evidencing prior express consent, as Defendant was contacting Plaintiffs and the

---

[17] *See also Shupe v. JPMorgan Chase Bank of Ariz.*, 2012 U.S. Dist. LEXIS 54756, 13 (D. Ariz. Mar. 14, 2012) ("Defendant bears the burden of demonstrating that its conduct falls clearly within the exemption."); *Hicks v. Client Servs., Inc.*, 2009 WL 2365637 (S.D. Fla. June 10, 2009; *Pollock v. Bay Area Credit Serv., LLC*, 2009 WL 2475167 (S.D. Fla. Aug. 13, 2009).

[18] *See Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed. Appx. 598, 600, fn. 1 (9th Cir. Cal. 2011) ("**'express consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof.**"); *Meyer v. Portfolio Recovery Assocs., LLC*, 2012 U.S. App. LEXIS 26708, 7-8 (9th Cir. Cal. Dec. 28, 2012); *Connelly v. Hilton Grand Vacations Co.*, 2012 U.S. Dist. LEXIS 81332, 9 (S.D. Cal. June 11, 2012) ("Whether Plaintiffs gave the required prior express consent is an affirmative defense to be raised and proved by a TCPA defendant, however, and is not an element of Plaintiffs' TCPA claim"); *see also Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 642 (7th Cir. Ill. 2012) (**defendant must conduct due diligence before making autodialed calls**).

Kazerouni Law Group, APC
2700 Noth Main Street, Suite 1000
Santa Ana, CA   92705

putative class for solicitation of additional goods.  The mere fact that Plaintiffs and the putative class provided their cellular telephone to the original vendor, in this case NutriSystems, does not give Defendant the right to send unsolicited, prerecorded voice messages to Plaintiffs.[19] The Ninth Circuit explained the heavy burden to obtain consent to autodialed and/or prerecorded calls that must be "clearly and mistakenly" stated. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. Cal. 2009) ("Express consent is '[c]onsent that is clearly and unmistakably stated.'"). Defendant must to show "clear and unmistakably" stated consent to receive *autodialed/prerecorded calls*, which it likely cannot do here.

The Court should compel Defendant to produce all documents they will rely upon at class certification and/or trial evidencing prior express consent or bar them from future introduction. Defendant seeks to prejudice Plaintiffs by withholding any evidence of prior express consent all while claiming that consent is an individualized inquiry that then makes a TCPA class action unmanageable – which proves Plaintiffs' point that such evidence is needed now to certify a class action as manageable. Thus, were Plaintiffs to consent to sampling posited by Defendant, Defendant would still argue that consent is an individualized inquiry. Further, even

---

[19] *See Meyer v. Portfolio Recovery Assocs., LLC*, 2012 U.S. App. LEXIS 26708, *7-8 (9th Cir. Cal. Dec. 28, 2012); *In re Jiffy Lube Int'l, Inc.,* 847 F. Supp. 2d 1253, 1256 (S.D. Cal. 2012) (defendant unsuccessfully argued on a motion to dismiss that the plaintiff have "prior express consent to the text messages by providing their telephone numbers to Heartland on invoices when they received oil changes."); *Connelly v. Hilton Grand Vacations Co.*, 2012 U.S. Dist. LEXIS 81332, 10 (S.D. Cal. June 11, 2012) ("Regarding the booking of reservations, Hilton has failed to explain how the mere registration of a cellular telephone number at the time of booking a hotel reservation constitutes prior express consent for the telephone calls at issue here.")

if *prior express consent* were an individualized inquiry – which is more appropriately addressed in a motion for class certification – common issues would still predominate in this TCPA action. *See generally* William B. Rubenstein, Alba Conte and Herbert B. Newberg, 2 Newberg on Class Actions § 4:25 (4th ed. 2010).

It may be necessary to exclude from the class Plaintiffs will seek to certify those persons that provided Defendant with "prior express consent," as that is one way classes are certified in TCPA cases.[20] Defendant has provided no documentation associated with the provision of "prior express consent" concerning the putative class or *even the named Plaintiffs*.

## C.   Insurance Coverage

Defendant refuses to provide the insurance agreement that may cover Defendant's violations of the TCPA, despite Defendant reference to an insurance policy in the Master Services Agreement (A00340-A00341) [Kazerounian Decl., ¶ 6] and Fed. R. Civ. P. 26(a)(1)(A)(iv), which make Plaintiffs' request entirely proper.[21] This information is relevant[22] and discoverable.[23] Defendant only asserts, and not under oath, that no insurance policy exists.

Thus, Defendant should be order to produce this relevant and discoverable information, which Defendant knows is crucial to establish Plaintiffs' TCPA class.

---

[20] *See e.g.*, *Kavu v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wash. 2007); *Mey v. Herbalife Int'l Inc.*, 2006 TCPA Rep. 1445 (W. Va. Cir. April 21, 2006).
[21] *See* Pls.' Exhibit A, Document Production Request No. 1 [Pgs. 26-27]; Kazerounian Decl., ¶ 3.
[22] Pls.' Exhibit C (Document Request No. 1); Swigart Decl., ¶ 3.
[23] *SierraPine v. Refiner Prods. Mfg.*, 275 F.R.D. 604, 611 (E.D. Cal. 2011).

Kazerouni Law Group, APC
2700 Noth Main Street, Suite 1000
Santa Ana, CA  92705

Kazerouni Law Group, APC
2700 Noth Main Street, Suite 1000
Santa Ana, CA 92705

## DEFENDANT'S ARGUMENTS AND AUTHORITIES

### I.   Introduction

For over 55 years, Schwan's Home Service, Inc.'s Route Sales Representatives have visited households throughout the nation to deliver restaurant-quality food products to residential customers. These visits are prescheduled at fixed intervals and many customers plan their grocery shopping based upon their knowledge that a Schwan's Route Sales Representative will visit their home on a particular day. Consequently, to avoid inconvenience and discourtesy, Schwan's informs its customers by way of an automated message when a Route Sales Representative cannot run a delivery route due to absence or illness. Plaintiffs – to whom Schwan's had previously delivered products on behalf of NutriSystem – received such a call.[24]

Rule 1 of the Federal Rules of Civil Procedure provides that the Rules – including Rule 23 – "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." But this lawsuit – at least in the form that Plaintiffs have pled and prosecuted it – will be anything but speedy and inexpensive. Based upon single telephone calls, Plaintiffs seek to certify a nationwide class action consisting of every Schwan's customer that has received an automated message over a nearly five-year period. Not surprisingly, considering that Schwan's does business nationwide, approximately 3.9 million people received such calls on either cell phones or landlines during this time period. Plaintiffs now seek two things as to each of these 3.9 million customers: (1) their telephone numbers, and (2) documentation evidencing that each of these customers consented to receiving automated messages. But

---

[24]  Plaintiffs contend, upon belief, that Schwan's "obtained the cellular telephone numbers for a certain group of . . . NutriSystem's former customers, and then created a dial list of those former customers." This is not true. Schwan's did not obtain a list of NutriSystem customers. Rather, Schwan's delivered NutriSystem products to Plaintiffs on behalf of NutriSystem and then inadvertently failed to scrub Plaintiffs' names and telephone numbers from its calling lists after they stopped receiving delivery of NutriSystem products from Schwan's.

Kazerouni Law Group, APC
2700 Noth Main Street, Suite 1000
Santa Ana, CA 92705

customers consented to receiving these messages in a number of different ways, some verbally to their Route Sales Representatives, some by e-mail, some over the internet, and some by calling a hotline. Presuming it would take a clerical worker a mere thirty seconds to find documentation evidencing a particular customer's consent (it would likely take much longer), that clerical worker could work full-time <u>for over fifteen years</u> and *still* not complete the task as to each of 3.9 million individuals. It is also doubtful – even if it all were produced today – that Plaintiffs' counsel could possibly review such documentation prior to their May 17, 2013 deadline for filing a motion for class certification.

What is worse is that fifteen years later, Schwan's efforts may prove entirely wasted in the event this lawsuit is not certified as a class action. And contrary to their contentions, Plaintiffs certainly do not need this information to brief the issue of class certification (and as pointed out above, because of logistical impossibility it is unlikely they *would* use this information to brief class certification). Schwan's knows that it cannot dispute the numerosity element of Rule 23(a) in relation to a nationwide class action and, if it would resolve this motion, will stipulate to the numerosity of a nationwide class. And other courts addressing the issue have held that a class list – which is not analytically distinguishable from the call list Plaintiffs now seek – does not need to be produced until after the Court rules upon class certification.

While conferring with Plaintiffs' counsel regarding this motion, defense counsel suggested that a <u>sampling</u> of the requested records was the best way to ensure a speedy and inexpensive response to Plaintiff's discovery request. Plaintiffs wholly rejected the notion of a middle ground. Defendant respectfully requests the Court not order an impossibility.

## II.     The Nature of Class Discovery.

The purpose of class discovery is to provide "a fair and realistic opportunity to obtain evidence which will meet the requirements of Rule 23, yet not so broad

Kazerouni Law Group, APC
2700 Noth Main Street, Suite 1000
Santa Ana, CA  92705

that the discovery efforts present an undue burden to [the defendant]." *In re Bank of Am. Wage and Hour Emp't Practices Litigation,* 275 F.R.D. 534, 540 (D. Kan. 2011).  Indeed, the Advisory Committee's Notes to Fed. R. Civ. P. 23 make clear that it is appropriate to conduct "controlled [class] discovery… limited to those aspects relevant to making the certification [decision] on an informed basis." Class-wide merits discovery prior to class certification risks "extraordinary and unnecessary expense and burden," in that the parties may waste resources on burdensome discovery that turns out to be unnecessary either because the class is defined more narrowly than expected or Plaintiffs decide to discontinue this litigation after a denial of certification. Manual for Complex Litigation (Fourth), § 21.14; *see also Nat'l Org. for Women v. Sperry Rand Corp.,* 88 F.R.D. 272, 277 (D. Conn. 1980) ("Discovery is not to be used as a weapon, nor must discovery on the merits be completed precedent to class certification.").

### III.   The Burden Associated With Production.

Plaintiffs seek all documents evidencing that each putative class member provided "prior express consent" at some point in the past nearly five years.[25]  The burden upon Schwan's of satisfying this request is beyond undue, but impossible. Schwan's placed prerecorded route-reschedule messages to 66,385 customers during the month of January 2013 alone.  [Declaration of Mary Ellen Kappes, ¶ 8]. Based upon this monthly tally, and extrapolated out over five years, Schwan's estimates that Plaintiff's putative class comprises approximately 3.9 million class members.

These 3.9 million class members consented to receiving prerecorded calls from Schwan's in a number of different ways.  [*Id.* at ¶ 5].  Some consented via e-mail; some through Schwan's website; some over the telephone; and some orally to a Route Sales Representative who was present at their residential front door.

---

[25] Although Plaintiffs' claims are arguably governed by a four-year statute of limitations, this lawsuit was filed nearly a year ago on April 18, 2012.

Kazerouni Law Group, APC
2700 Noth Main Street, Suite 1000
Santa Ana, CA  92705

[*Id.*].  From April 2008 through November 2012, Schwan's did not record its customers' manner of consenting to prerecorded calls in any computer database.[26] [*Id.* at ¶¶ 6-7].  Rather, for this time period, Schwan's would need to compile and review documentation specific to each individual customer such as customer transaction histories, call notes, internet activity logs, and other documentation. [*Id.* at ¶ 7].

Obviously, reviewing and compiling individualized documentation not stored in a single location takes a great deal of time.  But even assuming that Schwan's could produce individualized documentation at an implausible, light-speed rate of <u>thirty seconds per customer</u>, it could not produce the requested documentation during the pendency of this lawsuit.  Rather, applying this overly conservative assumption, it would take a full-time clerical worker <u>over fifteen years</u> to compile individualized documentation evidencing each of 3.9 million customers' consent to receive pre-recorded telephone calls.

## IV.    The Scope of Relevancy to Class Certification.

Plaintiffs contend that Defendant's outbound calls lists and documentation of "prior express consent" are necessary to evaluate the class action prerequisites of numerosity and ascertainability, and to identify potential class members.  As will be explained, none of the information sought will assist Plaintiffs in establishing class action prerequisites and Plaintiffs do not need to identify class members prior to class certification.

---

[26] Only in November 2012 did Schwan's begin recording new customers' method of consenting to telephone calls within its computer database.  [Declaration of Kappes, ¶ 6].  But even as to these new customers whose consent is recorded in Schwan's computer database, Schwan's could not efficiently determine each customer's method of consent.  [*Id.*].  Rather, Schwan's would be required to input manually input each customer's name or other identifier into a database search field, open a screen relating to such customer, and print the screen or whatever information Plaintiffs seek from that screen.  [*Id.*].  It is common knowledge that performing individualized searches within a database – while more convenient than finding and compiling information not within a database – takes time, particularly when a discovery request requires thousands or millions of such individualized queries.

**A.     None of the Requested Information is Necessary to Establish Numerosity.**

Plaintiffs contend they need a listing of putative class members' telephone numbers to establish numerosity.  While caselaw does not recognize any particular "magic number" necessary to establish numerosity, a class of forty or more is usually sufficient.  *Stewart v. Abraham,* 275 F.3d 220, 226-27 (3d Cir. 2001); Newberg on Class Actions § 3.05, at 3-25 (3d ed. 1992).  Furthermore, Plaintiffs need not establish the exact number of potential class members in order to meet the numerosity requirement.  *Robidoux v. Celani,* 987 F.2d 931, 936 (2d Cir. 1993) ("Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement.").  *Smith v. Texaco, Inc.,* 88 F.Supp.2d 663, 674 (E.D. Tex. 2000), vacated on other grounds, 281 F.3d 477 (5th Cir. 2002); Newberg on Class Actions, § 3.5 (4th ed.).  Rather, good-faith estimates – and even common sense inferences – regarding the size of a class will suffice.  *Sullivan v. Kelly Services, Inc.,* 268 F.R.D. 356, 362 (N.D. Cal. 2010) ("Although 75,000 may not be an entirely accurate estimate, the Court is satisfied that the estimate is not so far off the mark to defeat numerosity."); *Sadowski v. Med1 Online, LLC,* No. 07 C 2973, 2008 WL 2224892, at *3 (N.D. Ill., May 27, 2008) (finding numerosity established where "common sense allows us to infer" that a "good number" of over 300,000 junk faxes allegedly sent by the defendant were received by putative class members); *In re Aluminum Phosphide Antitrust Litig.,* 160 F.R.D. 609, 612-13 (D. Kan. 1995) (good faith estimate of hundreds of class members sufficient to satisfy numerosity requirement); *Murray v. GMAC Mtg. Corp,* 483 F. Supp. 2d 636, 642 (N.D. Ill. 2007) (accepting the plaintiff's "admittedly coarse calculation" for demonstrating numerosity).

Plaintiffs seek to certify a nationwide class of individuals who received Defendant's automated route-reschedule message on their cellular phones.  Although many of the approximately 3.9 million such calls that Defendant has

Kazerouni Law Group, APC
2700 Noth Main Street, Suite 1000
Santa Ana, CA  92705

placed within the past three years were to landlines, a significant fraction (and certainly, at least *forty* of the 3.9 million) were to cell phones. Schwan's will readily stipulate that Plaintiffs would establish the numerosity prerequisite in relation to a nationwide class of all individuals who received prerecorded messages on their cellular phones.[27] And considering that the very purpose of stipulations is to narrow the scope of disputed issues and narrow the scope of discovery, Defendant's stipulation obviates any need for Defendant to produce the telephone numbers of approximately 3.9 million of its customers. *See Bishop's Property & Investments v. Protective Life,* No. 4:05-cv-126, 2007 WL 4146131, at *3 (M.D.Ga., Nov. 19, 2007) (holding that class certification briefing "should not be further delayed by a prolonged discovery process that will produce evidence that has little relevance to class certification in light of Defendant's stipulations on numerosity and typicality."); *Banks v. Yokemick,* 214 F. Supp.2d 401, 405 (S.D.N.Y. 2002) (holding that judicial admissions such as stipulations obviate the need for discovery, thus narrowing the scope of discovery and reducing trial time).

## B. Establishing Class Composition Is Not Necessary Prior to Certification.

"[C]ourts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification." *Dziennik v. Sealift, Inc.,* No. 05cv4659, 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006). And certainly, determining class members' identities is not necessary to determine whether a class should be certified. *Charles v. Nationwide Mutual Ins. Co., Inc.*, No. 09cv94, 2010

---

[27] Schwan's reserves the right to contest numerosity in the event that Plaintiffs' proposed class becomes limited in some material way prior to class certification – for instance, by way of a finding that class composition should be limited to former NutriSystem customers. However, as they currently stand, Plaintiffs' discovery requests seek information on a nationwide basis and are not limited in any way whatsoever.

Kazerouni Law Group, APC
2700 Noth Main Street, Suite 1000
Santa Ana, CA 92705

WL 7132173, at *3-5 (denying pre-certification discovery of class list as premature); *Bird Hotel Corp. v. Super 8 Motels, Inc.,* No. CIV 06-4073, 2007 WL 404703, at *4 (D.S.D., Feb. 1, 2007) ("name, current address, current telephone number, franchise address, and franchise telephone number for each franchisee that has ever operated under the same or essentially similar franchise agreement is not helpful or necessary to establish or decide certification of the class.").

**C.    Plaintiffs' "Ascertainability" Argument Puts the Cart Before the Horse.**

Plaintiffs contend they require documents evidencing customers' consent in order to determine whether their proposed class is ascertainable.  An identifiable class exists if its members can be ascertained by reference to objective criteria. *DeBremaeker v. Short,* 433 F.2d 733, 734-35 (5th Cir. 1970).  Ascertainability is generally established if class members are possible to "identify without extensive and individualized fact-finding or 'mini-trials'[.]"  *Marcus v. BMW of North America,* 687 F.3d 583, 593 (3d Cir., Aug. 7, 2012) (further noting, "Some courts have held that where nothing in company databases shows or could show whether individuals should be included in the proposed class, the class definition fails."); *see also Lukovsky v. City and County of San Francisco,* No. C 05-00389, 2006 WL 140574 at *2 (N.D. Cal., Jan. 17, 2006).

Plaintiff's contention that they require records regarding consent to determine whether their proposed class is ascertainable is disingenuous.  In reality, they seek via a motion to compel a *legal holding* that their class is ascertainable.  Plaintiffs do not and cannot explain why they require 3.9 million records to determine whether there is anything in "company databases [that] shows or could show whether individuals should be included in the proposed class."  *Marcus,* 687 F.3d at 593.  They ask the Court to compel Defendant to *undertake* "extensive and individualized fact-finding" (over twelve years' worth) in an alleged effort to prove that ascertaining class composition *does not depend upon* "extensive and

Kazerouni Law Group, APC
2700 Noth Main Street, Suite 1000
Santa Ana, CA  92705

Kazerouni Law Group, APC
2700 North Main Street, Suite 1000
Santa Ana, CA  92705

individualized fact-finding." In sum, Plaintiffs ask the Court to facilitate a science experiment of sorts aimed at answering the question of how quickly Defendant can compile and produce 3.9 million records (for, the question of ascertainability turns *not* upon the 3.9 million records *themselves* but rather upon whether it is even possible to efficiently compile them). But nothing within the Federal Rules allows for such an experiment. And, of course, Plaintiffs will return to this Court seeking discovery sanctions when Defendant's diligent but unsuccessful efforts to comply prove that ascertainability is impossible.

Ascertainability turns not upon the 3.9 million records Plaintiffs seek, but rather whether such records can even be compiled during the pendency of this lawsuit. The question of *whether* Defendant can efficiently identify putative class members who consented to receiving telephone calls is best explored during the deposition of Defendant's corporate representative, not through an overly broad and unduly burdensome request for documents.[28]

## V.   The Fact That Class Certification Would Destroy Defendant's Ability to Prove Individualized Affirmative Defenses Does Not Permit Pre-Certification Production of Merits-Related Documents.

Plaintiffs contend that Defendant cannot pursue its affirmative defense of "prior express consent" unless it now produces all documents relating to it. Plaintiffs' contention is evidently predicated upon their alleged belief that when the individualized nature of affirmative defenses makes their class-wide resolution impracticable, courts simply bar the defendant from pursuing its defenses. Plaintiffs are wrong. In reality, individualized affirmative defenses that cannot be manageably litigated on a class-wide basis render class certification inappropriate. *See Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct.

---

[28]   Plaintiffs also contend they need <u>outbound calling lists</u> in order to evaluate ascertainability. As explained in Section III.B., Plaintiffs do not need to now identify specific class members in order to determine whether it is *possible* to identify specific class members.

Kazerouni Law Group, APC
2700 Noth Main Street, Suite 1000
Santa Ana, CA  92705

2541, 2581 (2011) ("Because the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,' a class cannot be certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims." (citations omitted)); *Sepulveda v. Wal-Mart Stores, Inc.,* 237 F.R.D. 229, 249 (C.D. Cal. 2006) (where defendant was entitled to raise a particular fact-based defense as to each individual class member, "highly individualized" questions of proof predominated); *Alberghetti v. Corbis Corporation,* 263 F.R.D. 571, 582 (N.D. Cal., Jan. 13, 2010) ("Defendant identifies various affirmative defenses that would require individualized inquiries into each class member's claims."); *Sandy Gartin v. S & M Nutec LLC,* 245 F.R.D. 429, 436 (C.D. Cal. 2007) ("If significant elements of a claim or defense require individualized proof from each class member, class certification is inappropriate.") (*citing Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 624-25, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).  Furthermore, Plaintiffs' alleged concerns that Defendant will be unable to pursue its individualized defenses *following class certification when it becomes appropriate to evaluate the merits of this lawsuit* are irrelevant to whether Defendant should be required to produce all documentation supporting its individualized defenses *now*.

   To the extent Plaintiffs seek to determine the varieties of "prior express consent," and the rough proportion of putative class members who gave prior express consent in these various ways, defense counsel proposed that the parties explore a method of sampling the putative class.   It is common for courts to order a sampling of records to relieve the undue burden of production upon the producing party. *Soto v. Castlerock Farming & Transp., Inc.,* 282 F.R.D. 492, 503-04 (E.D. Cal. 2012); *Smith v. Lowe's Home Ctrs.,* 236 F.R.D. 354, 357-58 (S.D. Ohio 2006) ("limiting discovery to a statistically significant representative sampling...  [will]  reasonably  minimize  the  otherwise

Kazerouni Law Group, APC
2700 Noth Main Street, Suite 1000
Santa Ana, CA   92705

extraordinary burden imposed"); *Barnhart v. Safeway Stores,* 25 Fed.R.Serv.3d (Callaghan) 35, 1992 U.S. Dist. LEXIS 22572 (E.D. Cal. 1992) (finding "sampling is a reasonable compromise" and ordering the defendant to submit a proposed sampling method to the plaintiff); *Feske v. MHC Thousand Trails Ltd. P'ship,* 2012 U.S. Dist. LEXIS 47236, at *8 (N.D. Cal Apr. 3, 2012) ("in the specific context of class-action discovery, sampling advances the goal of proportionality set forth in Fed.R.Civ.P. 26(b)(3)(C)(iii)"). During their efforts to meet and confer, Plaintiffs wholly rejected the notion of a middle ground and insist upon the production of *all* records.

## VI.   Remaining Issues

Defendant writes briefly to address some of Plaintiff's remaining contentions. First, Plaintiffs contend that Defendant objects to producing evidence of insurance coverage. Plaintiffs allege that insurance coverage exists for this claim based upon a Master Services Agreement between Defendant and CustomerElation, a third party vendor. In reality, the Master Services Agreement places a duty upon CustomerElation – not Schwan's – to obtain certain insurance coverage. Defendant is self-insured. It has no insurance policy to produce.

Second, Plaintiffs take issue with Defendant's assertion of the attorney/client privilege. To be certain, Defendant does not contend that its "outbound call logs" or "documents evidencing prior express consent" are privileged. However, Plaintiffs' requests were not limited to outbound call logs or documents evidencing consent. Rather, Plaintiffs' requests invariably sought all documents "relating to or regarding" the outbound call logs and customers' consent to be contacted. Defense counsel has obviously communicated with its client about these topics in the time since this lawsuit has been filed.[29]

---

[29] Although it would be strange to disclose on a privilege log all post-lawsuit attorney/client communications *about the lawsuit,* no privilege log of any kind would be required until after the Court resolves Defendant's objections to Plaintiffs' overly broad discovery requests. *See U.S. v. Philip Morris, Inc.,* 314 F.3d 612, 621 (D.C. Cir. 2003).

Date: February 14, 2013                    **Kazerouni Law Group, APC**


                                           By:/s/ Abbas Kazerounian
                                           Abbas Kazerounian
                                           Attorneys for Plaintiffs




Date: February 14, 2013                    **Kutak Rock, LLP**

                                           By: /s/ Alan L. Rupe
                                           Alan L. Rupe, Esq.
                                           Attorneys for Defendant

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kazerouni Law Group, APC
2700 Noth Main Street, Suite 1000
Santa Ana, CA  92705

PROOF OF SERVICE