1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9         SOUTHERN DISTRICT OF CALIFORNIA

10

11   ERIK KNUTSON and KEVIN          )   Civil No. 3:12-cv-0964-GPC-DHB
     LEMIEUX, individually and on behalf  )
12   of all others similarly situated,   )   **ORDER REVERSING IN PART
                                      )   AND REMANDING JUDGE
13                  Plaintiffs,       )   BARTICK'S ORDER
     v.                               )   COMPELLING DISCOVERY OF
14                                    )   AN OUTBOUND DIAL LIST**
     SCHWAN'S HOME SERVICE, INC.       )
15   and CUSTOMER ELATIONS, INC,       )   [Dkt 54]
                                      )
16                  Defendants.       )

17

18

19       Defendant Schwan's Home Service, Inc. ("Schwan's") appeals the March 25,

20   2013 Order of Magistrate Judge David H. Bartick directing Schwan's to produce

21   outbound call logs for an estimated 3.9 million customers.  For the reasons stated

22   below, the Court **REVERSES** the order in part, and **REMANDS** the order to Judge

23   Bartick for further consideration.

24                        **BACKGROUND**

25       This is a class action lawsuit in which Plaintiffs allege Defendants have

26   violated the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.*

27   ("TCPA").

28       Schwan's operates a grocery delivery service.  In addition to delivering

groceries to their primary customers, Schwan's also made deliveries on behalf of NutriSystem, Inc. ("NutriSystem") to NutriSystem customers.  (Dkt 54 at 2.)  When deliveries of groceries are unable to be made to particular addresses at scheduled times, Schwan's so notifies affected customers, including NutriSystem customers, by phone via an automated dialing system.  (Id.)

On February 20, 2013, Plaintiffs filed their Second Amended Complaint seeking statutory damages and injunctive relief pursuant to 47 U.S.C. § 227(b). (Dkt 39 at 8.)  The putative class was therein defined as:

> All persons within the United States who received any telephone call from Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system or with an artificial or prerecorded voice, which call was not made for emergency purposes or with the recipient's prior express consent, within the four years prior to the filing of this Complaint.

(Dkt 39 at 5.)  Aside from a significant change to the definition of the putative class, the second amended complaint is still operative.

On March 25, 2013, Magistrate Judge David H. Bartick resolved a discovery dispute regarding, among other things, whether Schwan's should be required to produce an outbound dial list and report of calls Schwan's made on behalf of itself and on behalf of NutriSystem.  (Dkt 45 at 4.)  The Magistrate Judge stated that "the outbound dial lists and reports will illuminate issues such as the number and ascertainability of potential class members, typicality of their claims, and whether common questions of law or fact exist."  (Id.)  He reasoned that, even though Schwan's stipulated to numerosity, the call list is still relevant to the ascertainability and manageability of the putative class, and would allow Plaintiffs "to articulate in their motion for class certification how large, or small, the proposed class is expected to be."  (Id.)  Judge Bartick overruled Schwan's objection that the discovery would be overly burdensome, noting that Plaintiffs' expert could extract the actionable calls from a searchable list.  (Id.)  Accordingly, Judge Bartick granted

1    Plaintiffs' request compelling Schwan's to produce a comprehensive outbound call

2    list and report of an estimated 3.9 million entries, in a searchable format.  (Id. at 4-

3    5.)  In addition, the Magistrate Judge ordered Schwan's to produce a NutriSystem-

4    only call list for the same reasons.  (Id. at 8.)  Judge Bartick noted that he would

5    entertain a joint motion for protective order regarding the call list.  (Id. at 4-5.)

6         In response, on April 8, 2013, Schwan's timely filed a motion to set aside the

7    portion of Judge Bartick's order regarding the outbound call list.  Schwan's claims

8    that the call list is not relevant to class certification issues, including numerosity,

9    commonality, predominance, typicality, and ascertainability.  Schwan's further

10   argues that the dial lists are presumptively not discoverable because they constitute

11   a "class list."  Lastly, Schwan's claims that Judge Bartick's order regarding the

12   production of a specifically NutriSystem-only call list should be set aside because it

13   would involve the creation of documents in violation of Federal Rule of Civil

14   Procedure 34 ("Rule 34"), requiring only that parties produce documents already in

15   existence.  (Dkt 54.)  Shortly thereafter, on April 26, 2013, Plaintiffs filed an

16   opposition to Schwan's motion to set aside.  (Dkt 56.)

17        On May 8, 2013, well after Judge Bartick issued the discovery order in

18   dispute, Plaintiffs filed a motion to certify the class.  There, Plaintiffs seek to certify

19   a class that is drastically reduced from all individuals who received actionable calls

20   from Schwan's, to only NutriSystem customers who received such calls.  (Dkt 65-2

21   at 5.)  This amendment to the class definition reduces the pool of potential members

22   from an estimated 3.9 million, to a maximum of roughly 195,000.  (Dkt 67 at 3.)

23        Schwan's thereafter filed a reply in support of its motion to set aside Judge

24   Bartick's discovery order, citing the newly defined putative class and the

25   availability of an alternate, smaller and narrowly tailored list of outbound calls as

26   reasons to set aside Judge Bartick's March 25, 2013 order compelling discovery.

27   (Id. at 3-4.)

28   / / /

## LEGAL STANDARD

District courts review a magistrate judge's pretrial order under a "clearly erroneous or contrary to law" standard.  <u>Rivera v. NIBCO, Inc.</u>, 364 F.3d 1057, 1063 (9th Cir. 2004) (citing Fed. R. Civ. P. 72(a)); <u>accord</u> 28 U.S.C. § 636(b)(1)(A)).  As one district court explained:

> This Court's function, on a motion for review of a magistrate judge's discovery order, is not to decide what decision this Court would have reached on its own, nor to determine what is the best possible result considering all available evidence.  It is to decide whether the magistrate judge, based on the evidence and information before him, rendered a decision that was clearly erroneous or contrary to law.

<u>Paramount Pictures Corp. v. Replay TV</u>, CV 0-9358 FMC(Ex), 2002 WL 32151632, at *1 (C.D. Cal. May 30, 2002).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  <u>United States v. U.S. Gypsum Co.</u>, 333 U.S. 364, 395 (1948); <u>see also</u> <u>Anderson v. Equifax Info. Servs. LLC</u>, No. CV 05-1741-ST, 2007 WL 2412249, at *1 (D. Or. Aug. 20, 2007) ("Though Section 636(b)(1)(A) has been interpreted to permit de novo review of the legal findings of a magistrate judge, magistrate judges are given broad discretion on discovery matters and should not be overruled absent a showing of clear abuse of discretion.").

## DISCUSSION

Schwan's argues that (1) the call lists requested by Plaintiffs are presumptively not discoverable because they act as "class lists"; (2) that the call lists are not relevant to class certification because they are unrelated to ascertainability, typicality, and commonality; and (3) that the ordered discovery would violate statutory restrictions on orders to create documents.

**I. Class Lists**

Schwan's argues the outbound dial list constitutes a class list because it

1   would include the identities and contact information of putative class members, and

2   is therefore presumptively not discoverable. (Dkt 54 at 4.)  Schwan's further argues

3   the identities and contact information contained in the call list are irrelevant at this

4   time because such information cannot be used to determine whether a class should

5   be certified.  (Id.)

6        Plaintiffs argue in response that the outbound call list is not a class list

7   because Judge Bartick did not specify that the identities and current addresses were

8   to be included. (Dkt 56 at 14.)  Plaintiffs also claim the call list is discoverable

9   because it is relevant to issues of class certification and necessary to establish the

10  appropriateness of certification.  (Id. at 13-15.)

11       "Parties may obtain discovery regarding any nonprivileged matter that is

12  relevant to any party's claim or defense . . ." Fed. R. Civ. P. 26(b)(1).  Further, a

13  magistrate judge has broad discretion to determine and order discovery deemed

14  relevant to the certification of a class.  See Hallett v. Morgan, 296 F.3d 732, 751

15  (9th Cir. 2002); Vonole v. Countrywide Home Loans, Inc., 571 F.3d 935, 942 (9th

16  Cir. 2009) ("District courts have broad discretion to control, the class certification

17  process, and '[w]hether or not discovery will be permitted . . . lies within the sound

18  discretion of the trial court.'").  "At the same time, discovery, like all matters of

19  procedure, has ultimate and necessary boundaries." Oppenheimer Fund, Inc. v.

20  Sanders, 437 U.S. 340, 351 (1978) (internal quotation marks omitted).

21       In Oppenheimer, the Supreme Court held that the names and addresses of

22  putative class members were not "within the scope of legitimate discovery." Id. at

23  354.  The Court instead ordered the production of a list of names and addresses for

24  notification purposes pursuant to Rule 23(c)(2).  Id.[1]  Despite their holding, the

25  Court stated that it did "not hold that class members' names and addresses never can

26  ──────────────────

27  [1]The Supreme Court held that a district court may order the production of a list of names and
    addresses of putative class members, under Rule 23(d), for the purpose of notification. Oppenheimer
28  Fund, Inc., 437 U.S. at 355-56. ("[W]e agree with the Court of Appeals for the Fifth Circuit that Rule
    23 (d) also authorizes a district court in appropriate circumstances to require a defendant's cooperation
    in identifying the class members to whom notice must be sent.")

3:12-cv-0964-GPC-DHB

be obtained under discovery rules," but that such evidence would have to be relevant to issues "upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, common questions, and adequacy of representation." <u>Oppenheimer Fund, Inc.</u>, 437 at 351 n.13.

A class may be certified only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "Prior to certification of a class action, discovery is generally limited and in the discretion of the court." <u>Del Campo v. Kennedy</u>, 236 F.R.D. 454, 459 (N.D. Cal. 2006) (citation omitted); <u>see also</u> <u>Lee v. Stonebridge Life Ins. Co.</u>, 289 F.R.D. 292, 294 (N.D. Cal. 2013) ("Adjudication on the merits of plaintiffs' claims is inappropriate, and any inquiry into the merits must be strictly limited to evaluating plaintiffs' allegations to determine whether they satisfy Rule 23.") "Generally, a plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed.R.Civ.P. 23 are satisfied, or that discovery is likely to produce substantiation of the class allegations." <u>Del Campo</u>, 236 F.R.D. at 459 (quotation marks and citations omitted). "[D]iscovery often has been used to illuminate issues upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, common questions, and adequacy of representation." <u>Id.</u> (citation omitted).

Schwan's relies on two cases from the Eastern District of New York, and one case from South Dakota for the proposition that the call list is not discoverable. <u>Dziennik v. Sealift, Inc.</u>, No. 05-CV-4659 (DLI) (MDG), 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006); <u>Charles v. Nationwide Mutual Ins. Co., Inc.</u>, No. 09 CV 94 (ARR), 2010 WL 7132173, at *3-5 (E.D.N.Y. May 27, 2010); <u>Bird Hotel Corp.</u>

1  v. Super 8 Motels, Inc., CIV. 06-4073, 2007 WL 404703, at *4 (D.S.D. Feb. 1,

2  2007).  In each of these cases, a district court reversed an order compelling

3  discovery of a list of putative class members containing the identity and contact

4  information for each member.  In each of these cases the information sought was

5  irrelevant to the alleged harms suffered by individual members of the respective

6  putative classes, or to any issue related to class certification.

7          Schwan's assertion that class lists are presumptively nondiscoverable

8  confuses the issue; whether or not the list is a "class list," it is discoverable if it

9  bears relevance to issues of class certification.  All three cases that Schwan's relies

10 on are distinguishable.  While contact information and identity may bear no direct

11 relevance to whether an employee was paid properly (Dziennik, 2006 WL 1455464,

12 at *1; Charles, 2010 WL 7132173, at *3-5), or whether a franchise agreement was

13 breached (Bird Hotel Corp. 2007 WL 404703, at *4), a list of phone numbers may

14 very well bear direct relevance to a violation of the TCPA concerning the dialing of

15 the very phone numbers listed.

16         In each of the cases cited by Schwan's, the dispositive issue was not whether

17 the sought after lists contained the names and addresses of class members, but

18 whether the list bore any relevance to appropriate questions of law.  Thus, Plaintiffs'

19 and Schwan's contentions regarding whether the call list is or is not a "class list" are

20 misguided.  Because the class has not yet been certified, this Court must determine

21 whether the information contained in the call list relates to Rule 23(a)'s

22 requirements for class certification.

23 **II. Class Certification**

24         Schwan's argues that, contrary to Judge Bartick's order, the call list bears no

25 relevance to numerosity, ascertainability, typicality, or commonality.

26         To be certified, it is necessary that

27

28              (1) the class is so numerous that joinder of all members is
               impracticable; (2) there are questions of law or fact
               common to the class; (3) the claims or defenses of the

1    representative parties are typical of the claims or defenses
     of the class; and (4) the representative parties will fairly
2    and adequately protect the interests of the class.

3  Fed. R. Civ. P. 23(a).  Although nothing in Rule 23 expressly requires a class to be

4  ascertainable, federal courts have required that a class be ascertainable before it is

5  certified.  Some courts consider ascertainability within the numerosity requirement

6  of Rule 23.  Moreno v. Autozone, Inc., 251 F.R.D. 417, 421 (N.D. Cal. 2008).

7  Ascertainability is at times analyzed, however, independently of numerosity.  See

8  Schwarts v. Upper Deck Co., 183 F.R.D. 672, 679-80 (S.D. Cal. 1999); see also

9  Marcus v. BMW of North America, LLC, 687 F.3d 583, 591-92 (3rd Cir. 2012)

10 (addressing ascertainability as a preliminary matter before moving on to

11 numerosity).  Because Schwan's has stipulated to the numerosity requirement, the

12 Court will address only whether the Judge Bartick erred in concluding the call list is

13 relevant to issues of ascertainability, typicality, and commonality.

14     **A. Ascertainability**

15     Schwan's argues that any information provided by a call list would not help

16 answer the question of whether a class is objectively defined.  (Dkt 54 at 7-8.)

17 Plaintiffs respond, claiming the list is necessary to determine whether the identity of

18 the putative class members is reasonably ascertainable.  (Dkt 56 at 15.)  Plaintiffs

19 assert the call list "will likely prove very helpful in explaining how . . . Plaintiffs . . .

20 plan to identify or ascertain putative class members from the outbound dial lists."

21 (Id. at 14.)

22     "A class is ascertainable if it identifies a group of unnamed plaintiffs by

23 describing a set of common characteristics sufficient to allow a member of that

24 group to identify himself or herself as having a right to recover based on the

25 description."  Thomasson v. GC Services Ltd. P'ship, 275 F.R.D. 309, (S.D. Cal.

26 2011) (citing Moreno, 251 F.R.D. at 421 (rev'd on other grounds)).  Class

27 certification hinges on whether the identity of the putative class members can be

28 objectively ascertained; the ascertaining of their actual identities is not required.

(Id.)  That is, ascertainability is a question of whether the proposed class definition is definite enough for the court to determine whether someone is a member of the class.  Zeisel v. Diamond Foods, Inc., No. C 10-01192 JSW, 2011 U.S. Dist. LEXIS 60608, at *20 (N.D. Cal. June 7, 2011).  It requires the definition to contain sufficiently objective criteria for an individual to identify himself or herself as a member of the putative class.  Id. at 21.

Here, Plaintiffs seek to certify a class defined as:

> All subscribers to wireless telephone numbers who are past or present customers of Nutrisystem, Inc., whose numbers were dialed by [Schwan's], where such calls were placed through the use of an automated dialer system and/or prerecorded voice between April 18, 2008 and August 31, 2012.

(Dkt 65-1 at 5.)  The Court finds the proposed class definition to be definite enough for a member of the class to identify him or herself.  It is unclear from Plaintiff's arguments just how discovery of the call list would in anyway improve the objectivity of its class definition, or change the criteria therein.  Thus, the magistrate judge erred in concluding the call list was relevant to establishing ascertainability.

**B. Typicality**

Schwan's argues that "neither the Magistrate nor Plaintiffs set forth a single question of law or fact the outbound dial lists will answer." (Dkt 54 at 7.)  In response, Plaintiffs do little more than simply rely on the weight of Judge Bartick's order, presenting nothing beyond a claim that Schwan's failed to establish a sufficient argument for setting aside Judge Bartick's order.  (Dkt 56 at 14-15.)

The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F. 2d 497, 508 (9th Cir. 1992).  A finding of typicality rests on the nature of a claim, and whether members of a putative class will be subject to unique defenses.  Id. (rejecting typicality where the

1   named plaintiff had a "unique background and factual situation," requiring

2   "defenses that are not typical of the defenses which may be raised against other

3   members of the proposed class.")

4         In the present case, Plaintiffs ultimately claim that many individuals, who had

5   not given express consent, received phone calls to their cell phones from the same

6   defendant by the same means.  (Dkt 65-1 at 5.)  This claim alleges that members of

7   the putative class suffered the same injury, that the conduct is not unique to the

8   named plaintiffs, and that members of the putative class have been allegedly injured

9   by the same course of action.

10        Plaintiffs seek the call list in order to obtain the numbers dialed and the dates

11  of those calls, and to identify which numbers in the list are cell phone numbers.

12  (Dkt 56 at 13-14.)  Evidence showing that many individuals were called on their cell

13  phones by an autodialer contributes nothing further to typicality than what is already

14  alleged in the claim.  In addition, the call list is not relevant to determining whether

15  unique defenses exist among members of the putative class because a list of dates

16  and an identification of which numbers dialed were cell phones does not provide

17  information of sufficient detail to identify unique factual situations or anticipated

18  defenses.

19        The call list is likely relevant to whether individuals were actually dialed in

20  violation of the TCPA, but that is a question of merit that does not overlap with

21  typicality.  <u>Lee v. Stonebridge Life Ins. Co.</u>, 289 F.R.D. 292, 294 (N.D. Cal. 2013)

22  ("Adjudication on the merits of plaintiffs' claims is inappropriate, and any inquiry

23  into the merits must be strictly limited to evaluating plaintiffs' allegations to

24  determine whether they satisfy Rule 23.")  Therefore, the magistrate judge erred in

25  concluding the call list was relevant to establishing typicality.

26        **C. Commonality**

27        Schwan's argues the call list is not relevant to commonality because it does

28  not answer the question of whether there are common issues of law or fact.  (Dkt 54

10

at 7.)   According to Schwan's, the call list includes names and phone numbers, and would only answer broadly sweeping questions such as, "Did we all receive calls on our cell phones?"  (Id.)  Schwan's argues generalized, non-specific questions of commonality among putative class members are not relevant to class certification, and thus neither is the call list.  (Id.)  Plaintiffs argue the call list would establish that "the issues in this case are subject to a common proof [sic]" regarding whether members of the putative class were called on their cell phones using an autodialer or a pre-recorded voice message in violation of the TCPA.  (Dkt 56 at 19.)[2]  Plaintiffs assert:

> Being able to show that putative class members have claims based on inclusion of their cellular telephone number on lists of prerecorded calls maintained by [Schwan's] is certainly relevant to class certification issues.

(Id. at 14.)[3]

Class certification requires a plaintiff to show "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a).  To satisfy commonality, a

---

[2]Plaintiffs submitted a Notice of Recent Authority ("Notice") in support of their opposition to Defendant's Motion to Set Aside Judge Bartick's order.  (Dkt 71.)  Exhibit A of the Notice is a copy of Stemple v. Q.C. Holdings, Inc., No. 12-CV-1997-CAB (WVG) (S.D. Cal. June 17, 2013).  Stemple held that an outbound dial list is relevant to certification because "the requested documents will provide Plaintiffs a means to ascertain which of the numbers dialed within the statutory term are cellular telephone numbers dialed by an autodialer."  (Dkt 71-1 at 5.)  The Stemple order is unpersuasive for three reasons.  First, Stemple relies on Judge Bartick's discovery order at issue in the present case.  (Id.)  To be swayed by this decision would amount to the circular logic that Judge Bartick's order is proper because Judge Bartick's order is proper.  Second, Stemple relies on the flawed reasoning that ascertaining which numbers were called in violation of the TCPA is relevant for certification.  (Id.)  Ascertainability is a question of the objectivity of a proposed class definition, not of actually ascertaining issues of merit prior to certification of a class.  Third, Stemple orders the call list to be narrowed from the full list of 20 million calls to only calls made "to persons within California."  (Dkt 71-1 at 6.)  The court explains that it is "bound by the class definition provided by the complaint," and thus restricts the list to that definition.  (Id.)  In the present case, the same analysis would weigh in favor of partially setting aside Judge Bartick's order to produce a call list of 3.9 million individuals in light of the fact that the definition of the putative class has changed.

[3]Schwan's and Plaintiffs each address the issue of predominance in the motion to set aside, and opposition to the motion to set aside respectively (Dkt 54 at 7); (Dkt 56 at 20.)  However, in ordering the discovery of the call list, Judge Bartick did not mention predominance as a reason for his order.  (Dkt 45.)  This Court will thus limit its analysis of Judge Bartick's order to the reasons that the Judge listed.  (Id. at 4.)

1    plaintiff must actively show the putative class "suffered the same injury . . . such

2    that the . . . class claims will share common questions of law or fact" with those of

3    the named plaintiffs.  Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 157

4    (1982).  Merely stating questions common to all putative class members is

5    insufficient, however, because "[a]ny competently crafted class complaint literally

6    raises common 'questions.'"  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551

7    (2011).  As a result, the test of commonality is not whether common questions exist,

8    but whether common answers to critical questions of law and fact can be reached

9    without impediment.  Id.  Since the plaintiff carries the burden of demonstrating

10   commonality, such proof may overlap with findings of merit of the plaintiff's claim.

11   Id. at 2551-52.

12        The plaintiffs in Wal-Mart were unable to find a common answer to the

13   question of the putative class members, "why was I disfavored?"  Id. at 2552.  The

14   Supreme Court determined that, in the absence of evidence of a company-wide

15   policy of discrimination against women, no common answer could reasonably be

16   obtained.  Thus, it would have been infeasible to establish a common motivation

17   resulting in over one million individual decisions to promote or not promote an

18   employee.  Id.

19        The issue of commonality in this case is far simpler than in Wal-Mart.  In

20   contrast to the discrimination claim asserted in Wal-Mart, establishing a common

21   question regarding violations of the TCPA does not require a showing of intent.  All

22   that is required is a showing that Schwan's called Plaintiffs (1) using an automated

23   dialer or artificial or prerecorded voice; (2) in non-emergency situations and without

24   prior express consent; (3) on their cellular telephones.  47 U.S.C. § 227(b)(1)(A).

25   The common question is thus, "were we all called on our cellular telephones, by an

26   autodialer or artificial or prerecorded voice, on behalf of Schwan's, without having

27   given express consent?"  A list of numbers dialed by an autodialer on behalf of

28   Schwan's for a singular purpose could be relevant to this inquiry, especially since

1  Plaintiffs claim the cell phone numbers can be reliably identified within the list and

2  used in conjunction with evidence of lack of consent.  (Dkt 36 at 2-3.)

3       Despite the potential relevance of *a* call list, however, the comprehensive list

4  of 3.9 million numbers over a four-year period is *not* relevant pre-certification.  The

5  district court has the authority to limit discovery where it is found to be

6  "unreasonably cumulative or . . . can be obtained from some other source that is

7  more convenient."  Fed. R. Civ. P. 26(b)(2)(C)(i).  Since the Judge Bartick's

8  discovery order was issued, Plaintiffs have reduced the putative class from the full

9  3.9 million customers dialed to only the NutriSystem system customers that were

10  called.  (Dkt 65-1 at 5.)  Additionally, Schwan's has claimed that they have

11  constructed a NutriSystem-only dial list that satisfies all of the plaintiff's criteria for

12  having sought the original 3.9 million-entry list in the first place.  (Dkt 67 at 3.)

13       Further, the motivation behind the Plaintiffs' request for the full call list

14  seems to be based on a misunderstanding regarding what is contained in Schwan's

15  records.  Plaintiffs' expert, Mr. Jeffrey A. Hansen, claims that the full 3.9 million

16  entry list is necessary.  (Dkt 65-17 at 4.)  He intends to cross-reference numbers

17  from a separate list, previously obtained from NutriSystem, with the list to be

18  provided by Schwan's to identify which individuals received calls from an

19  automated dialer to their cellular telephones.  (Id.)  Setting aside the fact that such

20  detailed information is likely merit-based and does not likely overlap with questions

21  pertaining to class certification, such a process would be rendered redundant and

22  unnecessary according to Schwan's description of a call list they have already

23  produced.  (Dkt 67 at 3.)  Schwan's claims they are in "possession of a listing of the

24  telephone numbers of NutriSystem-only customers who received prerecorded route

25  reschedule calls within the four years prior to this lawsuit."  (Id.)  This call list was

26  produced by Schwan's for the purpose of this case.  (Id. n.1)  In light of the

27  amended putative class and the production of a more relevant call list, it is likely

28  that much of the original list of 3.9 million entries is irrelevant, unreasonably

1   cumulative, and inconvenient at this stage of discovery.

2   **III. Creation of Documents**

3       Lastly, Schwan's argues Judge Bartick's order to produce a NutriSystem-only

4   call list violates Rule 34 because such a list does not exist.  (Dkt 54 at 10.)  To

5   comply with Judge Bartick's order, Schwan's would have to create documents for

6   production, violating Rule 34 which requires that a party need only produce

7   documents that already exist.  (Id.)

8       Rule 34(a)(1)(A) states that a party may be requested to produce:

10          any designated documents or electronically stored
            information–including writings, drawings, graphs, charts,
11          photographs, sound records, images, and other data or data
            compilations–stored in any medium from which
12          information can be obtained either directly or, if necessary,
            after translation by the responding party into a reasonably
            usable form . . . .

14   Rule 34 is limited, however, to documents that already exist.  Paramount Pictures

15   Corporatione et al., Plaintiff, v. Replay TV, et al., Defendants, 2002 WL 32151632,

16   CV 01-9358 FMC(Ex), at *2 (C.D. Cal. May 30, 2002) ("A party cannot be

17   compelled to create, or cause to be created, new documents solely for their

18   production.")

19       Schwan's argument fails for two reasons.  First, Judge Bartick stated that

20   Schwan's need only "provide the requested outbound dial list and report to the

21   extent [Schwan's] is able to do so."  (Dkt 45 at 8.)  Judge Bartick's qualification is

22   sufficient to keep discovery within the bounds of Rule 34.  Second, on May 17,

23   2013, Schwan's claimed to have produced a list substantially similar to the

24   NutriSystem-only call list sought in Plaintiff's Request for Production No. 28.  (Dkt

25   67 at 3); (Dkt 56 at 9.)  This apparent concession renders moot Schwan's objection

26   to discovery of a NutriSystem-only call list on the grounds that it violates Rule 34.

27                          **CONCLUSION**

28       Based on the foregoing, the Court **REVERSES IN PART** Judge Bartick's

discovery order.  And, given the developments in this case since Judge Bartick issued the contested order, the Court will **REMAND** the order to Judge Bartick for consideration of whether the ordered call list is relevant to the issue of commonality, as well as to determine the relative cumulativeness and convenience of both lists. The hearing on Schwan's Motion to Set Aside Portion of Magistrate's Order, currently set for July 19, 2013, is **VACATED**.

        **IT IS SO ORDERED**.

DATED:  July 15, 2013

HON. GONZALO P. CURIEL
United States District Judge