UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIK KNUTSON and KEVIN LEMIEUX, individually and on behalf of all others similarly situated,<br><br>                             Plaintiffs,<br>v.<br><br>SCHWAN'S HOME SERVICE, INC. and CUSTOMER ELATION, INC,<br><br>                             Defendants. | Civil No. 3:12-cv-0964-GPC-DHB<br><br>**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**(ECF NO. 65)** |

## INTRODUCTION

This is a class action lawsuit in which Erik Knutson ("Knutson") and Kevin Lemieux ("Lemieux") (together, "Plaintiffs") allege Schwan's Home Service, Inc. ("Schwan's") and Customer Elation, Inc. ("Customer Elation") (together, "Defendants") have violated the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 et seq., ("TCPA"). Presently before the Court is Plaintiffs' Motion for Class Certification, (ECF No. 65), which has been fully briefed, (ECF Nos. 89, 96), and which the Court finds suitable for disposition without oral argument, see CivLR 7.1.d.1. For the reasons that follow, the Court will **DENY** Plaintiffs' request to certify a Rule 23(b)(2) class and **GRANT** Plaintiffs' request to certify a Rule 23(b)(3) class.

/ / /

# BACKGROUND

Schwan's is in the business of delivering frozen foods to residential customers. From November 2008 through November 13, 2011, Schwan's contracted with non-party NutriSystem, Inc. ("NutriSystem") to deliver weight-loss food to NutriSystem customers on Schwan's routes. Pursuant to this arrangement, NutriSystem gave Schwan's the telephone numbers, addresses, and other information that NutriSystem customers provided to NutriSystem in connection with their orders for NutriSystem products. During the course of their relationship, NutriSystem provided Schwan's with approximately 195,000 phone numbers—some of which were cell phone numbers.

Schwan's delivery routes are on fixed schedules. When Schwan's is unable to make a delivery, Schwan's attempts to notify its customers that their delivery must be rescheduled. Because NutriSystem customers were placed on Schwan's ordinary delivery routes, NutriSystem customers would receive rescheduling calls as if they were regular Schwan's customers.

Before November 2009, Schwan's placed these calls from its own customer service center. Beginning in November 2009, Schwan's outsourced these calls to Customer Elation. Pursuant to its arrangement with Customer Elation, Schwan's electronically notifies Customer Elation when a call must go out, and a Schwan's computer system generates a listing of telephone numbers associated with customers on the affected routes. Customer Elation then calls the customers to inform them their routes have been rescheduled using an automatic telephone dialing system ("ATDS") and a prerecorded message.

Schwan's estimates that, from April 2008 through November 2009, it made approximately 3.9 million autodialed/prerecorded calls to customers throughout the nation—some of which were made to Nutrisystem customers. Schwan's records show whether a call was completed, and Customer Elation has records for all calls since November 2009.

Before and after the arrangement between Schwan's and Nutrisystem ended on

November 13, 2011, some NutriSystem customers, including Plaintiffs, received rescheduling calls from Defendants on their cell phones.

Plaintiffs allege, in their currently operative Second Amended Complaint ("SAC"), that, on or about August 16, 2012, Lemieux received a call on his cell phone from Schwan's, through Customer Elation, using "an artificial or prerecorded voice" in violation of § 227(b)(1)(A).  (ECF No. 39 ¶¶ 17, 33, 38.)

The prerecorded call stated:

> Hello, this is Bill from Schwan's Home Service with an automated message.  Press 0 at any time to speak with a Customer Service Representative.  I'm calling to inform you that your Schwan's representative will not be able to stop on [Month][Day] [and] instead will be stopping on [Month][Day].  We apologize for any inconvenience.  If you have any questions or if you need to place an order, please call us at 888-SCHWANS or visit with us online at Schwans.com.  Thanks for your time.

Plaintiffs allege Lemieux listened to the automated message and then called the number provided therein to inquire about the automated call.  (ECF No. ¶ 21.) Plaintiffs allege that, upon calling the number provided, Lemieux was connected with a sales representative, who acknowledged that Lemieux had no pending orders but who then "informed Plaintiff that the purpose of the automated telephone call was to advise Plaintiff that Defendants' outside sales representative would be in his neighborhood that day and that if he desired to place orders for any products, to contact the outside sales representative."  (Id. ¶ 22.)

Plaintiffs allege Knutson also received a call on his cell phone from Schwan's, through Customer Elation, using "an artificial or prerecorded voice" in violation of 47 U.S.C. § 227(b)(1)(A).  (Id. 39 ¶¶ 10, 33, 38.)  Notwithstanding this allegation, however, Knutson testified at his deposition that he did not receive a call using "an artificial or prerecorded voice" but that he instead spoke with a live person.  Knutson testified: "They said that, 'Schwan's delivery truck is going to be by to drop of your package at such-and-such a date.'"  Still, Defendants' own business records indicate Knutson did in fact receive a prerecorded call on the date alleged.

Plaintiffs allege that neither Knutson nor Lemieux expressly consented to receive such calls on their cell phones.  (Id. ¶ 13, 20.)  Defendants admit that they have no documentation that either of the Plaintiffs expressly consented to receive such calls.

In sum, both of the Plaintiffs received an autodialed call, Lemieux received a prerecorded call, and there is a disputed question of fact as to whether Knutson received a prerecorded or live call.[1]  Neither of the Plaintiffs had a relationship with Schwan's outside of being on delivery routes pursuant to the prior arrangement between NutriSystem and Schwan's.  Defendants confirm that calls are made to every customer on affected routes, whether or not they are current Schwan's customers and whether or not they have pending orders, unless the customer is removed from the route.

Defendants ceased calling Plaintiffs or any other NutriSystem customer as of November 2012.

Plaintiffs have moved for summary judgment on their individual claims for violations of the TCPA.  (ECF No. 84.)

The putative class is defined in Plaintiffs' SAC as:

> All persons within the United States who received any telephone call from Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system or with an artificial or prerecorded voice, which call was not made for emergency purposes or with the recipient's prior express consent, within the four years prior to the filing of this Complaint.

(ECF No. 39 at 5.)

Plaintiffs now seek to certify a class defined as:

> All subscribers to wireless telephone numbers who are past or present customers of NutriSystem, Inc., whose numbers were dialed by Defendants, where such calls were placed through the use of an automated dialer system and/or artificial or prerecorded voice between April 18,

---

[1] At the class certification stage, courts generally must resolve factual disputes only to the extent necessary to determine whether class certification is appropriate.  See Ellis v. Costco Wholesale Corp., 657 F.3d 970, 983 (9th Cir. 2011) ("[T]he district court was required to resolve any factual disputes necessary to determine whether there was a common pattern or practice that could affect the class as a whole." (emphasis removed)).  As discussed herein, the Court finds it unnecessary to resolve this factual dispute for purposes of certification.

1   2008 and August 31, 2012.

2   (ECF No. 65 at 5.)  Plaintiffs thus seek to certify a more limited class than described

3   in the SAC.  The underlying claim, however, remains the same.

4   **DISCUSSION**

5   **I.   Legal Standard**

6   Federal Rule of Civil Procedure 23 governs class certification.  A plaintiff

7   seeking class certification must affirmatively show the class meets the requirements of

8   Rule 23.  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011); Doninger v.

9   Pacific Northwest Bell, Inc., 564 F.2d 1304, 1309 (9th Cir. 1977).  More specifically,

10  the plaintiff must satisfy all four requirements of Rule 23(a)—numerosity,

11  commonality, typicality, and adequacy—and at least one of the requirements of Rule

12  23(b).  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 979-80 (9th Cir. 2011); Zinser

13  v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2011).

14  Although nothing in Rule 23 expressly requires a class to be ascertainable,

15  federal courts have required a class to be currently and readily ascertainable based on

16  objective criteria—especially with respect to a Rule 23(b)(3) action.  See Marcus v.

17  BMW N. Am., LLC, 687 F.3d 583, 591-92 (3rd Cir. 2012) (analyzing ascertainability

18  as a preliminary matter before moving on to numerosity); Moreno v. Autozone, Inc.,

19  251 F.R.D. 417, 421 (N.D. Cal. 2008) (analyzing ascertainability in connection with

20  numerosity), vacated on other grounds, 2009 WL 3320489 (N.D. Cal. Oct. 9, 2009);

21  Schwarts v. Upper Deck Co., 183 F.R.D. 672, 679-80 (S.D. Cal. 1999) (analyzing

22  ascertainability in connection with superiority).

23  In determining whether certification is appropriate, a court is required to perform

24  a "rigorous analysis," which may require it "to probe behind the pleadings before

25  coming to rest on the certification question."  Dukes, 131 S. Ct. at 2551.

26      [T]he merits of the class members' substantive claims are often highly
        relevant when determining whether to certify a class.  More importantly,
27      it is not correct to say a district court may consider the merits to the extent
        that they overlap with class certification issues; rather, a district court
28      must consider the merits if they overlap with Rule 23(a) requirements.

<u>Ellis</u>, 657 F.3d at 981.  Nonetheless, the court should not conduct a mini-trial to determine if the class "could actually prevail on the merits of their claims."  <u>Id.</u> at 983 n.8; <u>United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.</u>, 593 F.3d 802, 808 (9th Cir. 2010) (court may inquire into substance of case to apply the Rule 23 factors, however, "[t]he court may not go so far . . . as to judge the validity of these claims.").  "[I]n determining whether to certify the class, the district court is bound to take the substantive allegations of the complaint as true" but "also is required to consider the nature and range of proof necessary to establish those allegations."  <u>In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.</u>, 691 F.2d 1335, 1342 (9th Cir. 1982) (citing <u>Blackie v. Barrack</u>, 524 F.2d 891, 901 n.7 (9th Cir. 1975)).

Whether to certify a class is within the district court's discretion.  <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 953 (9th Cir. 2003).

**II.    Analysis**

**A.    Plaintiffs' SAC**

As a preliminary matter, Defendants argue Plaintiffs' proposed class contradicts their SAC because Plaintiffs are attempting to certify a class of customers who received a call "through the use of an automated dialer system and/or artificial or prerecorded voice," but Plaintiffs do not allege in their SAC that Defendants used an ATDS. Defendants further argue Plaintiffs failed to diligently amend their SAC and that permitting Plaintiffs to amend now would be futile.

Plaintiffs argue in response that they do in fact allege in their SAC that Defendants used an ATDS, including the following examples:

•    "Defendants' sales representative then informed Plaintiff [Lemieux] that the purpose of the automated telephone call was to advise Plaintiff that Defendants' outside sales representative would be in his neighborhood . . . ." (ECF No. 39 ¶ 22);

•    "These automated telephone calls by Defendants were in violation of 47

6

U.S.C. § 227(b)(1)."  (ECF No. 39 ¶ 23);

- "Plaintiffs represent, and are members of, the 'Class,' consisting of: All persons within the United States who received any telephone call . . . through the use of any automatic telephone dialing system or with an artificial or prerecorded voice . . . ."  (Id. ¶ 25);

- "There is a well-defined community of interests in the questions of law and fact involved affecting the parties to be represented . . ., including . . . [w]hether . . . Defendants made any call . . . to a Class member using any automatic telephone dialing system or an artificial or prerecorded voice . . . ."  (Id. ¶ 30.)

Plaintiffs thus assert there is no need to amend their SAC.  Plaintiffs request leave to amend, however, should this Court find Plaintiffs did not adequately allege that they received a call using an ATDS.  Plaintiffs argue it would not be futile to permit such an amendment given Defendants' admission that both Plaintiffs received autodialed calls.

Based on the foregoing excerpts from Plaintiffs' SAC, the Court finds Plaintiffs have sufficiently alleged that they each received autodialed calls.  Plaintiffs plainly provide that they are among those that received calls to their cell phones through the use of an ATDS and/or with an artificial or prerecorded voice, and Defendants have never moved to dismiss Plaintiffs SAC for failure to state a claim with regard to the use of an ATDS.

Further, Plaintiffs clearly allege that Defendants have violated 42 U.S.C. § 227(b)(1)(A)(iii)—a subsection that provides for liability if "any call (other than a call made for emergency purposes or made with the prior express consent of the called party)" is made "using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service."

Given Plaintiffs' allegations that Defendants violated § 227(b)(1)(A)(iii), and

given the closely related nature of claims alleging the use of an ATDS and claims alleging the use of an artificial or prerecorded voice, Defendants cannot reasonably claim they were not on notice of Plaintiffs' claim that they received autodialed calls. This is especially true given the fact that a TCPA plaintiff would not ordinarily know with any certainty that an ATDS was used until some discovery is taken.  While Plaintiffs' proposed class is narrower in scope than the class alleged in Plaintiffs' SAC, the proposed class still includes individuals that were allegedly called in violation of the same subsection of the TCPA. The Court will thus go on to address the requirements for class certification.

### B.    Ascertainability

"A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description." Thomasson v. GC Services Ltd. P'ship, 275 F.R.D. 309, (S.D. Cal. 2011) (citing Moreno, 251 F.R.D. at 421).  Class certification hinges on whether the identity of the putative class members can be objectively ascertained; the ascertaining of their actual identities is not required.  (Id.)  That is, ascertainability is a question of whether the proposed class definition is definite enough to determine whether someone is a member of the class.  Zeisel v. Diamond Foods, Inc., 2011 WL 2221113, at *6 (N.D. Cal. June 7, 2011).

Defendants argue the proposed class is not ascertainable because—given the disparity between Knutson's testimony that he received a live call and Defendants' records indicating Knutson received a prerecorded call—"it is unclear how the parties and the Court can determine whether each potential class member received a prerecorded call as opposed to a live voice call" without "deposing each of several thousand potential class members."

Defendants' argument does not focus on whether the proposed class definition is objectively clear enough to identify absent class members.  Indeed, Defendants

ignore that the proposed class definition explicitly includes NutriSystem customers who received calls "placed through the use of an automated dialer system and/or artificial or prerecorded voice." (Emphasis added.)  Whether a customer received an autodialed or artificial/prerecorded call may be determined objectively.  That is, even if a putative class member received a live call, then he or she—along with the parties and the Court—would readily be able to decide whether he or she is a member of the class by determining whether he or she received a call through the use of an ATDS, in addition to meeting the other criteria provided in the class definition.  Accordingly, the Court finds the proposed class is readily ascertainable.

### C.    Numerosity

The numerosity requirement is satisfied if "the class is so large that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

The number of calls made to NutriSystem customers is indisputably in the thousands, and Defendants have offered to stipulate to the numerosity requirement. Defendants do not now oppose Plaintiffs' Motion for Class Certification for failure to demonstrate that the numerosity requirement has been met.  Accordingly, the Court finds this requirement has been satisfied.

### D.    Commonality

A class may be certified only if "there are questions of law and fact common to the class."  Fed. R. Civ. Proc. 23(a)(2).  Commonality requires the plaintiff to demonstrate that the "class members have suffered the same injury."  Dukes, 131 S. Ct. at 2551 (quotation marks omitted).  "That common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Id.  "What matters to class certification . . . is not the raising of common 'questions' . . . but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the

proposed class are what have the potential to impede the generation of common answers." Id. (emphasis in original) (citation omitted).

Plaintiffs assert the common questions of law and fact include:

(1) whether Defendants made "autodialed" and/or "prerecorded voice" calls to consumers listed on its delivery routes (whether or not there was an active order; and regardless of whether they were made for marketing purposes); (2) whether Defendants made such calls to "cellular" telephone numbers during the class period;(3) whether such calls by Defendants were made to Nutri[S]ystem customers on the "Scrubbed List."

Plaintiffs assert their claims "arise from Defendants' uniform practice of making autodialed and/or prerecorded voice calls to consumers' telephones (including persons on the Nutri[S]ystem List)."

In addressing commonality, Defendants assert the facts of this case raise an "issue of first impression": "When a customer provides a telephone number to a seller to effectuate delivery of product, does the customer implicitly consent to receive telephone calls from the deliverer or the product regarding the logistics of delivery?" Defendants do not directly address Plaintiffs' proposed common questions and answers.

The TCPA provides:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

...

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

47 U.S.C. § 227(b)(1)(A)(iii).

The Court finds there are question of law and fact common to the class, including: (1) whether Defendants used an ATDS or artificial/prerecorded voice, (2)

to call (3) NutriSystem customers' cell phones, (3) for non-emergency purposes, and (4) without the customers' prior express consent.  Plaintiffs have proffered the existence of common proof to answer these questions in the form of Defendants' business records and the testimony of Defendants' personnel, which can answer–in one stroke–each of these questions.

Even Defendants' purported "issue of first impression" presents a common question, as an answer to the question would resolve the issue of consent in one stroke if the Court were to accept Defendants' premise that implied consent is sufficient under § 227(b)(1)(A).  The Court disagrees, however, that Defendants' purported "issue of first impression" has any basis in the law.  Section 227(b)(1)(A) plainly requires prior express consent, which the Ninth Circuit has defined as "[c]onsent that is clearly and unmistakably stated."  Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 955 (9th Cir. 2009) (quoting Black's Law Dictionary 323 (8th ed. 2004)).  The Court thus finds Plaintiffs have satisfied the commonality requirement.

### E.    Typicality

The typicality requirement is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  Hanlon, 150 F.3d at 1020.  The relevant inquiry "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  Hanon v. Dataproducts Corp., 976 F. 2d 497, 508 (9th Cir. 1992).  A finding of typicality rests on the nature of a claim, and whether members of a putative class will be subject to unique defenses.  Id.

Defendants argue Plaintiffs' individual claims are not typical of the claims of the class, beginning with the premise that, "because Schwan's was no longer delivering product on behalf of NutriSystem at the time Plaintiffs received their calls,"  then

"Schwan's cannot contend it was contacting Plaintiffs <u>regarding the logistics of deliveries.</u>" (Emphasis in original.)  On that basis, Defendants assert that "the same is not true for the lion's share of the class that Plaintiffs seek to represent," implying that most of the other NutriSystem customers were called during Schwan's relationship with NutriSystem.

First, Defendants provide no evidence to support their claim that most of the remaining NutriSystem customers were called during Schwan's and NutriSystem's arrangement.  One might infer, however, that this was the case, given that Schwan's and NutriSystem were in partnership from November 2008 through November 2011, which constitutes the majority of the class period (April 2008 through August 2012). Regardless, the Court has rejected Defendants' basis for making this argument, to wit, that Schwan's delivery of NutriSystem products resulted in customers implicitly consenting to receiving autodialed and/or prerecorded calls on their cell phones from Defendants.  As Defendants put it, "Defendants' alleged crime is in failing to scrub their numbers from its [<u>sic</u>] calling lists after Schwan's partnership with NutriSystem ended."[2]

The Court therefore finds Plaintiffs have suffered the same or similar injury as the putative class members.  Plaintiffs assert they received autodialed and/or prerecorded calls from Defendants without their prior express consent, and the proposed class is defined to include individuals who received the same type of calls. The Court therefore finds Plaintiffs have satisfied the typicality requirement.

## F.   Adequacy

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. Proc. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs

---

[2] Defendants characterize their calls as "courtesy calls," arguing the TCPA was not enacted to prohibit such calls but was instead enacted to prevent unwanted telemarketing.  Section 227(b)(1)(A)(iii), however, does not make such a distinction.  Indeed, the primary focus of § 227(b)(1)(A)(iii) is on calls made to numbers assigned to "service[s] for which the party is charged for the call."

and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Hanlon, 150 F.3d at 1020.

Defendants argue that if Plaintiffs prevail on their motion for summary judgment as to their individual claims for violation of the TCPA, "they will have no 'incentive to assist or cooperate in the litigation' and this case becomes 'a pure class action lawyer's suit.'"  (ECF No. 89 (quoting Robinson v. Sheriff of Cook Cnty., 167 F.3d 1155, 1157 (7th Cir. 1999)).)

Plaintiffs assert they are adequate representatives because they are committed to obtaining injunctive relief against Defendants as set forth in their SAC.  Plaintiffs also note that in his deposition Knutson testified, "It's important to me that these companies stop harassing people on their cell phones."  Plaintiffs further assert that Defendants' misquote Robinson, noting that what the Seventh Circuit actually said was that "[o]ne whose claim is a loser from the start knows that he has nothing to gain from the victory of the class, and so he has little incentive to assist or cooperate in the litigation; the case is then a pure class action lawyer's suit."  167 F.3d at 1157 (emphasis added).

The Court finds Plaintiffs and their counsel are adequate representative of the class.  There is no apparent conflict between Plaintiffs or their counsel and other class members.  The Court accepts Plaintiffs' unchallenged representation that their counsel is competent in prosecuting class actions and is experienced in TCPA litigation.  Further, given the fact that Plaintiffs themselves may have meritorious claims, and given the possibility that Plaintiffs may be awarded some amount of money for representing the class, the Court finds that–even if Plaintiffs prevail on their motion for summary judgment as to their individual claims–Plaintiffs and their counsel have an incentive to vigorously prosecute this action on behalf of the class.  Indeed, Defendants assert that Plaintiffs and their counsel have brought several TCPA class actions.  Should facts indicating Plaintiffs are not vigorously prosecuting this action develop,

1 the Court will entertain a motion to decertify the class. For now, however, the Court
2 finds Plaintiffs have satisfied the adequacy requirement.

3 **G.     Rule 23(b)(2)**

4          A class may be certified under Rule 23(b)(2) if "the party opposing the class has
5 acted or refused to act on grounds that apply generally to the class, so that final
6 injunctive relief or corresponding declaratory relief is appropriate respecting the class
7 as a whole." Fed. R. Civ. P. 23(b)(2). "Class certification under Rule 23(b)(2) is
8 appropriate only where the primary relief sought is declaratory or injunctive." Ellis,
9 657 F.3d at 986 (citation omitted). Claims for individualized monetary relief do not
10 satisfy Rule 23(b)(2).

11         Plaintiffs assert their request for certification under Rule 23(b)(2) is "based upon
12 Defendants' common practice of making automated and prerecording [sic] voice calls
13 to consumers' cell phones without prior express consent."

14         Defendants again base their opposition on the premise that Defendants made
15 calls to class members during Schwan's relationship with NutriSystem, arguing the
16 "differences between Plaintiffs' circumstances and those of many of the class members
17 demonstrate that Defendants' conduct cannot be declared unlawful 'as to all of the
18 class members or as to none of them.'" Defendants further argue that, because it is
19 undisputed that Defendants no longer call NutriSystem customers, Plaintiffs lack
20 standing to seek injunctive relief.

21         The Court agrees certification under Rule 23(b)(2) is inappropriate in this case
22 because Plaintiffs are primarily interested in monetary damages. Plaintiffs seek an
23 award of statutory damages for each violation of the TCPA. And, as noted above, the
24 number of allegedly illegal calls each class member received is unclear, making this
25 class more appropriate for certification under Rule 23(b)(3). Further, as Defendants
26 note, it is undisputed that Defendants have ceased calling NutriSystem customers; thus,
27 it cannot be said that Plaintiffs are primarily interested in injunctive relief.
28 Accordingly, the Court denies Plaintiffs' request to certify a Rule 23(b)(2) class.

**H.     Rule 23(b)(3)**

A class may be certified pursuant to Rule 23(b)(3) if the district court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 944 (9th Cir. 2009).

### 1.     Predominance

The predominance inquiry focuses on "the relationship between the common and individual issues" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Vinole, 571 F.3d at 945 (quoting Hanlon, 150 F.3d at 1022).  The predominance inquiry also includes consideration of whether "adjudication of common issues will help achieve judicial economy." Vinole, 517 F.3d at 945 (quoting Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir. 2001)).

Plaintiffs assert "[t]he only individual issue here is the identification of the Class members," which Plaintiffs assert may be answered "by a review of Defendants' records."  Plaintiffs assert that consent does not present an individualized question in this case because Defendants have no evidence of prior express consent and that, even if they did, the question of prior express consent would not outweigh the aforementioned common questions.

Defendants argue Plaintiffs cannot establish predominance for the same reasons Plaintiffs cannot establish commonality, typicality, and adequacy; i.e., "Plaintiffs' individual circumstances are irrelevant to the class-wide question of whether a customer [implicitly] consents to receive calls from the deliverer of products by providing his or her telephone number to the seller for purposes of effectuating delivery."  Defendants therefore assert the questions of "Did the calls violate the TCPA?" and "Did the recipient provide consent?" may require individualized answers.

The Court agrees that the common questions set forth above predominate in this

class action.  First, the question of whether the calls violated the TCPA depends on a number of sub-questions as set forth above.   Second, the Court has rejected Defendants' argument that the issue of consent may vary by individual depending on whether Schwan's and NutriSystem were still partnered.

The Court finds a further individualized question is the number of calls each class member received, as the amount of damages each class member is entitled to depends on how many illegal calls each class member received.  <u>See</u> 47 U.S.C. § 227(b)(3).  This question, however, may be answered–at least in part–by resort to Defendants' records without the need for a multitude of mini-trials.  Accordingly, the Court finds Plaintiffs' have satisfied the predominance requirement.

### 2.    Superiority

Under the superiority requirement, the plaintiff must demonstrate that class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  "The superiority inquiry . . . requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case. [Citation.]  This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution."  <u>Hanlon</u>, 150 F.3d at 1023.

Defendants assert that, "based upon the possibility that the merits of Plaintiff's individual claims will be fully litigated before the time comes to determine liability on a class-wide basis, a class action is not superior to other available methods for fairly and efficiently adjudicating this controversy."

It is not clear that Defendants' argument pertains to the superiority of a class action.  Moreover, Defendants do not proffer any alternative that is superior to a class action.   The Court finds Plaintiffs' objective in bringing a class action is to halt unwanted calls to class members' cell phones.  Given the relatively minimal amount of damages that an individual may recover in suing for violation of the TCPA, <u>see</u> 47 U.S.C. § 227(b)(3), the Court finds a class action would achieve Plaintiffs' objective

1  better than if class members were required to bring individual actions.  See

2  Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1163 (9th Cir.

3  2001) ("If plaintiffs cannot proceed as a class, some–perhaps most–will be unable to

4  proceed as individuals because of the disparity between their litigation costs and what

5  they hope to recover.")  Accordingly, the Court finds Plaintiffs have satisfied the

6  superiority requirement.

7  **I.      Offers of Judgment**

8  Defendants assert they tendered offers of judgment affording Plaintiffs complete

9  relief, which Plaintiffs have not accepted.  Relying on Genesis Healthcare Corp. v.

10  Symczyk, 133 S. Ct. 1523, 1529-32 (2013), Defendants assert their unaccepted offers

11  of judgment moot this lawsuit, depriving this Court of subject-matter jurisdiction and

12  rendering class certification unnecessary.  Genesis, however, involved a collective

13  action under the Fair Labor Standards Act, which the Supreme Court recognized is

14  fundamentally different from Rule 23 class actions.  Id. at 1528-30.  Thus, the Court

15  does not apply Genesis to these facts.  Instead, the Court applies the holding of Pitts

16  v. Terrible Herbst, Inc., which provides that "an unaccepted offer of judgment that fully

17  satisfies a named plaintiff's individual claim before the named plaintiff files a motion

18  for class certification . . . does not moot the case so long as the named plaintiff may still

19  file a timely motion for class certification."  653 F.3d 1081, 1096 (9th Cir. 2011).

20  **CONCLUSION & ORDER**

21  Based on the foregoing, Plaintiffs' Motion for Class Certification is **DENIED**

22  **IN PART** and **GRANTED IN PART**.  It is denied to the extent Plaintiffs' request

23  certification of a Rule 23(b)(2) class and granted with respect to Plaintiffs' request for

24  certification of a Rule 23(b)(3) class.  To conform with the language of 42 U.S.C. §

25  227(b)(1)(A)(iii), the Court modifies Plaintiffs' proposed class definition and

26  **CERTIFIES** a Rule 23(b)(3) class defined as:

27  All persons who are past or present customers of NutriSystem, Inc., who
had or have a number assigned to a cellular telephone service, which
28  number was called by Defendants using an automatic telephone dialing
system and/or an artificial or prerecorded voice between April 18, 2008

1
2
3

and August 31, 2012.   Excluded from the class are persons who Defendants called for emergency purposes and persons who gave express consent to Defendants to call their cellular telephone number prior to Defendants first placing a call using an automatic telephone dialing system and/or an artificial or prerecorded voice.

4   Plaintiffs **MAY SERVE** as class representatives.

5   On or before **September 20, 2013**, plaintiffs **SHALL LODGE** a proposed order

6   defining the class claims, issues, and defenses, and appointing class counsel. See Fed.

7   R. Civ. P. 23(c)(1)(B).  Plaintiffs **MAY FILE** simultaneously a brief, not to exceed ten

8   pages in length, in support of the proposed order.

9   The hearing on Plaintiffs' Motion for Class Certification, currently set for

10   September 6, 2013, is **VACATED**.

11   **IT IS SO ORDERED.**

12

13   DATED:  September 5, 2013

14

15   HON. GONZALO P. CURIEL
     United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

3:12-cv-0964-GPC-DHB