**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Attorneys for Plaintiffs,*
Erik Knutson and Kevin Lemieux

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ERIK KNUTSON and KEVIN LEMIEUX, Individually and On Behalf of All Others Similarly Situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**SCHWAN'S HOME SERVICE, INC.; and CUSTOMER ELATION, INC.,**<br><br>Defendants. | Case No.: 12-CV-00964-GPC (DHB)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date:** July 18, 2014<br>**Time:** 1:30 p.m.<br>**Place:** 2D<br>**Judge:** Hon. Gonzalo P. Curiel |

*Kazerouni Law Group, APC*
*Costa Mesa, California*

**Table Of Contents**

I.      Introduction ..................................................................................................1

II.     Statement of Facts .......................................................................................3

    A.   Factual Background ..............................................................................3

    B.   Proceedings to Date ..............................................................................4

III.    The Settlement ..............................................................................................5

    A.   The Settlement Class ............................................................................5

    B.   Class Size ...............................................................................................6

    C.   Class Notice ...........................................................................................7

    D.   The Claims Process ...............................................................................8

    E.   Settlement Payment/Compensation to Class Members ...................8

    F.   Non-Monetary Award to Class Members .........................................10

    G.   Claims Deadline ..................................................................................11

    H.   Opt Out/Objection Deadline .............................................................11

    I.   Scope of Release ..................................................................................11

IV.     Legal Standards For Preliminary Approval of A Class Action Settlement.......11

V.      The Proposed Settlement is Fair, Reasonable and Adequate and Should be
        Preliminarily Approved ..............................................................................14

    A.   Liability is Highly Contested and Both Sides Face Significant Challenges in
        Litigating the Action ..........................................................................14

    B.   Defendants' Agreement to Provide Up To $2,535,280.00 In Settlement
        Benefits Provides a Fair and Substantial Benefit to the Class ....................17

        1.   Plaintiffs Face Substantial Risk Even Though A Class Has Been
        Certified ...............................................................................................17

        2.   The Merchandise Voucher Aspect of The Settlement Is Appropriate .....20

            i.   Vouchers Were Approved in *Jiffy Lube* ...........................................21

            ii.  Vouchers Were Approved in *Wojcik* ...............................................22

            iii. Vouchers Were Approved in *Friedman* ............................................22

Kazerouni Law Group, APC
Costa Mesa, California

C.   The Monetary and Non-Monetary Recovery Amounting To $100 In Value Per Claiming Class Member Is Fair and Reasonable, and Settlement Serves To Deter Future Violations ................................................................23

D.   The Settlement was Reached as the Result of Arms-Length Negotiation, Without Collusion, With the Assistance of the Court and Two Private Mediation Sessions ................................................................24

E.   Experienced Counsel Have Determined that the Settlement is Appropriate and Fair to the Class ................................................................25

F.   The Court Has Already Certified A Rule 23(b)(3) Class ............................25

G.   The Proposed Method of Class Notice is Appropriate ................................26

  1.   Direct Mail Notice (The Class Notice) ................................26

  2.   Settlement Website ................................................................27

  3.   Toll-Free Telephone Number ................................................27

  4.   List of Class Members Provided To Claims Administrator ..................28

H.   The Court Should Appoint KCC as the Claims Administrator ..................29

  1.   A Final Approval Hearing Should Be Scheduled................................29

VI.   Conclusion................................................................................................29

Kazerouni Law Group, APC
Costa Mesa, California

**Table Of Authorities**

**Cases**

*Adams v. AllianceOne,*

    08-CV-0248-JAH (S.D. Cal. Sept. 28, 2012) ................................... 10

*Alea London Ltd. v. Am. Home Servs.,*

    638 F.3d 768 (11th Cir. Ga. 2011) ......................................14

*Arthur v. Sallie Mae, Inc.,*

    2012 U.S. Dist. LEXIS 132413 (W.D. Wash. Sept. 17, 2012) ..........................15

*Baird v. Sabre Inc.,*

    WL 320205 (C.D. Cal. Jan. 28, 2014) ......................................16

*Barani v. Wells Fargo Bank, N.A,*

    2014 U.S. Dist. LEXIS 49838 (S.D. Cal. Apr. 9, 2014) .................14, 19, 25, 28

*Boyce v. Sports and Fitness,*

    03-CV- 2140-BEN (BLM) (S.D. Cal. Jan. 24, 2006) ..........................9

*CE Design Ltd. v. Prism Bus. Media, Inc.,*

    2009 U.S. Dist. LEXIS 70712 (N.D. Ill. Aug. 12, 2009) ..................................14

*Connelly v. Hilton Grand Vacations Co., LLC,*

    294 F.R.D. 574 (S.D. Cal. 2013) ..........................................16, 17, 19

*Dunn v. City of Chicago,*

    231 F.R.D. 367 (N.D. Ill. 2005).........................................17

*Fernandez v. Vict. Secret Stores, LLC,*

    2008 U.S. Dist. LEXIS 123546 (C.D. Cal. July 21, 2008) ..............................21

*Friedman v. LAC Basketball Club, Inc.,*

    13-cv-00818-CBM-AN (C.D. Cal. April 29, 2014) ..........................22

*Graham et al. v. Overland Solutions, Inc.,*

    10-CV-00672-BEN-BLM (S.D. Cal. Jan. 30, 2013) ..........................9

*Hanlon v. Chrysler Corp.,*

    150 F.3d 1011 (9th Cir. Cal. 1998)......................................12, 13, 26

**Kazerouni Law Group, APC**
Costa Mesa, California

**Table Of Authorities**

**(continued)**

*In re Global Crossing Sec. and ERISA Litig.,*

  225 F.R.D. 436 (E.D. Pa. 2000)...................................................................23

*In re Jiffy Lube International, Inc Text Spam Litigation,*

  11-MD-02261-JM-JMA (S.D. Cal) ...........................................................21, 22

*In re Mego Fin'l Corp. Sec. Litig.,*

  213 F. 3d 454 (9th Cir. 2000)......................................................................23

*In re Omnivision Tech., Inc.,*

  559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008)...........................................23

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.,*

  163 F.R.D. 200 (S.D.N.Y. 1995) ..................................................................12

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA)*

*Litig,*

  2014 U.S. Dist. LEXIS 8289 (C.D. Cal. Jan. 17, 2014)..................................21

*In re Wireless Facilities, Inc. Sec. Litig. II,*

  253 F.R.D. 607 (S.D. Cal. 2008) .................................................................24

*Kazami v. Payless Shoesource, Inc. et al.,*

  3:09-cv-05142-EMC, (N.D. Cal. April 2, 2012) ...........................................21

*Kirkorian v. Borelli,*

  695 F. Supp. 446 (N.D. Cal.1988)...............................................................13

*Lemieux v. Schwan's Home Serv.,*

  2013 U.S. Dist. LEXIS 127032 (S.D. Cal. Sept. 5, 2013)............................3, 25

*Linney v. Cellular Alaska P'ship,*

  151 F.3d 1234 (9th Cir. 1998) ...................................................................5, 14

*Lo v. Oxnard European Motors, LLC,*

  2012 U.S. Dist. LEXIS 73983 (S.D. Cal. May 29, 2012) ...............................10

Kazerouni Law Group, APC
Costa Mesa, California

**Table Of Authorities**

**(continued)**

*Malta v. Fed. Home Loan Mortg. Corp.,*

   2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 4, 2013).........................14, 24, 28

*Marshall v. Holiday Magic, Inc.,*

   550 F.2d 1173 (9th Cir. 1977)..............................................................27

*Masters v. Lowe's Home Ctrs., Inc.,*

   2011 U.S. Dist. LEXIS 157875 (S.D. Ill. July 14, 2011) ...............................21

*Meyer v. Portfolio Recovery Assocs., LLC,*

   707 F.3d 1036 (9th Cir. Cal. 2012) ...............................................18, 23

*Morey v. Louis Vuitton N. Am., Inc.,*

   2014 U.S. Dist. LEXIS 3331 (S.D. Cal. Jan. 9, 2014) ...............................20, 21

*Mullane v. Central Hanover Bank & Trust Co.,*

   339 U.S. 306 (1950) ......................................................................25

*National Rural Tele. Coop. v. DIRECTV, Inc.,*

   221 F.R.D. 523 (C.D. Cal. 2004) ........................................................23

*Newman v. Americredit Fin. Servs.,*

   2014 U.S. Dist. LEXIS 15728 (S.D. Cal. Feb. 3, 2014)............................19, 20

*Officers for Justice v. Civil Service Comm'n,*

   688 F.2d 615 (9th Cir. 1982) ........................................................12, 13

*Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.,*

   323 F. Supp. 364 (E.D. Pa. 1970) ......................................................13

*Ritchie v. Van Ru Credit Corp.,*

   2014 U.S. Dist. LEXIS 31934 (D. Ariz. Mar. 12, 2014) ...................................2

*Roberts v. PayPal, Inc,*

   WL 2384242 (N.D. Cal. May 30, 2013)..............................................16

*Satterfield v. Simon & Schuster, Inc.,*

   569 F.3d 946 (9th Cir. Cal. 2009) ....................................................16

Kazerouni Law Group, APC
Costa Mesa, California

*Sherman v. Yahoo! Inc.,*

    2014 U.S. Dist. LEXIS 13286 (S.D. Cal. Feb. 3, 2014)....................................16

*Silber v. Mabon,*

    18 F. 3d 1449 (9th Cir. 1994)...........................................................................25

*Smith v. Microsoft Corp.,*

    2014 U.S. Dist. LEXIS 12799 ....................................................................9, 17

*Torrisi v. Tucson Electric Power Co.,*

    8 F.3d 1370 (9th Cir. 1993) ..............................................................................27

*Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.,*

    401 F.3d 876 (8th Cir. 2005) ............................................................................16

*Utility Reform Project v. Bonneville Power Admin,*

    869 F.2d 437 (9th Cir. 1989) ............................................................................12

*Wojcik v. Buffalo Bills Inc.,*

    Case No. 8:12-cv-02414-SDM-TBM (M.D. Florida April 17, 2014)...............22

*Vizcaino v. Microsoft Corp.,*

    290 F.3d 1043 (9th Cir. 2002) ...........................................................................9

*Warner Communications,*

    618 F. Supp. 745 ................................................................................................5

*West Virginia v. Chas. Pfizer & Co.,*

    440 F.2d 1079 (2d Cir. 1971).............................................................................13

*Wilson v. Airborne, Inc.,*

    2008 U.S. Dist. LEXIS 110411 (C.D. Cal. Aug. 13, 2008)..............................27

*Young v. Polo Retail, LLC,*

    2007 U.S. Dist. LEXIS 27269 (N.D. Cal. Mar. 28, 2007)................................21

**Kazerouni Law Group, APC**
Costa Mesa, California

**Table Of Authorities**

**(continued)**

**Statutes**

28 U.S.C § 1715 ..................................................................................28

47 U.S.C § 227(a)(1) ........................................................................3, 15

47 U.S.C § 227(b) .......................................................................3, 14, 15

47 U.S.C § 227(b)(1)(A) ...................................................................3, 15

**Rules**

Fed. R. Civ. P. 23 .......................................................................passim

Fed. R. Civ. P. 23(b)(3) .......................................................................25

Fed. R. Civ. P. 23(c)(1)(B) ..................................................................25

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................7, 26

Fed. R. Civ. P. 23(c)(2)(B)(iii) ............................................................20

Fed. R. Civ. P. 23(c)(3) ........................................................................26

Fed. R. Civ. P. 23(e) ......................................................................11, 26

Fed. R. Civ. P. 23(e)(1)(B) ..................................................................26

**Table Of Authorities**

**(continued)**

**Other**

4 Herbert B. Newberg, *Newberg on Class Actions* (4 ed. 2002 and Supp. 2004)

§ 11.25 *et seq* .......................................................................................*12*

*Black's Law Dictionary* (8 ed. 2004) .................................................*16*

David R. Hodas*, Enforcement of Environmental Law in A Triangular Federal System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by the United States, the States, and Their Citizens? 54 Md. L. Rev. 1552 (1995)* .............*10*

Kazerouni Law Group, APC
Costa Mesa, California

Federal Judicial Center, *Manual for Complex Litigation* (4 ed. 2004)  § 21.63 *et seq.* ...........................................................................................................*12*

*In re Rules and Regulations Implementing the Telephone Consumer Protections Act of 1997* FCC Rcd 8752, 8769, 7 FCC Rcd 8752 (F.C.C. 1992) ...............................*16*

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* 23 F.C.C.R. 559, 565 (Dec. 28, 2007) ........................................................*18*

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* 27 F.C.C.R. 1830, 1844 (Feb. 15, 2012).........................................................*18*

James Wm Moore*, Moore's Fed. Practice - Civil* (3 ed. 2001) § 23.165 [3]...........*13*

## Congressional Record

*S. Rep. No. 102-178*, 102nd Cong., 1st Sess (1991) (as reprinted in 1991 U.S.C.C.A.N. 1968, 1973)...........................................................................................23

**Kazerouni Law Group, APC**
Costa Mesa, California

## I. INTRODUCTION

Plaintiffs Erik Knutson and Kevin Lemieux ("Plaintiffs") submit this application for preliminary approval of a proposed class action settlement (the "Settlement") of this action (the "Action"), which is unopposed by defendants, Schwan's Home Service, Inc. ("Schwan's," jointly the "Defendants") and Customer Elation Inc. ("Customer Elation," jointly the "Defendants").[1] The terms of the Settlement are set forth in the Settlement Agreement and Release (hereinafter the "Agreement") filed as Exhibit 1 to the Declaration of Abbas Kazerounian In Support of Preliminary Approval of Class Action Settlement ("Kazerounian Decl.").[2]

The Settlement, which is a result of a heavily litigated and contested action, which has been pending for two years, has involved considerable written discovery, a dozen depositions, class certification, and an pending appeal to the Ninth Circuit. In addition, this class action Settlement is a result, in no small part, of the efforts of the Parties participating before two (2) full days of mediation, one before the Honorable Leo Wagner (Ret.) and the other before the Honorable Judge Leo S. Papas (Ret.). The class action Settlement reached provides for substantial financial benefit to the Class Members, in light of the substantial risk of recovering nothing if the Court or the Ninth Circuit Court of Appeals were to reverse the grant of class certification or the Court were to grant Defendants' motion for either summary judgment or decertification. *See* Recitals to Agreement.

The Settlement will provide for substantial benefits to be paid by Defendants in a maximum of $2,535,280.00 (the "Settlement Benefits") from which an estimated 16,691 Class Members may make claims. *See* Agreement ("Agr."), §§ 1.8. and 4.2. The Settlement Benefits will be used to fund the settlement payments

---

[1] Plaintiffs and Defendants are collectively referred to as the "Parties."

[2] Unless otherwise specified, defined terms used in this memorandum are intended to have the meaning ascribed to those terms in the Agreement.

to Class Members. *Id*. at § 4.1. The Settlement Benefits will also be used to fund: (1) Notice and Administration Expenses; (2) any incentive payments that the Court may award to the two Class Representatives; and (3) any attorneys' fees, costs, or expenses that the Court may award to Class Counsel ("collectively "Settlement Costs"). *See* Agr., §§ 4.1-4.2, 7.2, 10.1 and 11.1. Thus, after the Settlement Costs are deducted from the Settlement Benefits, the amounts remaining will be available to pay all approved claims. Plaintiffs' counsel have obtained sufficient class relief that Class Member that makes a timely and valid claim will receive both an $80.00 merchandise voucher as well as a check for $20.  No pro rata reduction will take place, irrespective of the number of claims made.  *See id*. at § 4.3. Any amount up to $38,000.00 of any Class Notice and Administrative Expenses will be paid for by the maximum cash payment of $1,200,000.00. *See id*. at §§ 4.1-4.2 and 7.2. Notice and Administration Expenses shall not exceed $38,000.00. *Id*. at § 7.2.

While named Plaintiffs are confident of a favorable determination on the merits, they have determined that the proposed Settlement provides significant benefits to the Class and is in the best interests of the Class, in light of many risks, including risks of reversal of class certification and/or possible dismissal based on Defendants' motion for summary judgment as to the entire class. *See* Declaration of Erik Knutson ("Knutson Decl."), ¶ 10; Declaration of Kevin Lemieux ("Lemieux Decl."), ¶ 10; *see also* Kazerounian Decl., ¶¶ 24-35.

Plaintiffs also believe that the Settlement is appropriate because they recognize the expense and amount of time required to continue to pursue the Action, as well as the uncertainty, risk, and difficulties of proof inherent in prosecuting their Telephone Consumer Protection Act ("TCPA") claims, and the risk of being able to maintain this action as a class action, through trial. *See* Knutson Decl., ¶¶ 7 and 11; Lemieux Decl., ¶¶ 7 and 11; *see also* Kazerounian Decl., ¶¶ 36-40. "Settlement curtails further expense, as well as shortens and simplifies the proceedings." *Ritchie v. Van Ru Credit Corp.*, 2014 U.S. Dist. LEXIS 31934, *11 (D. Ariz. Mar. 12,

2014). Similarly, Defendants have stated that they have substantial and meritorious defenses to Plaintiffs' claims and deny all liability with respect to any and all claims and facts alleged in this Action, but have determined that it is desirable to settle the Action on the terms set forth in the Agreement. *See generally*, Agr., § 14.

Named Plaintiffs and Class Representatives, Mr. Knutson and Mr. Lemieux, move the Court for an order preliminarily approving the Settlement (the Court having already certified a Class pursuant to Federal Rule of Civil Procedure 23(b)(3) (Dkt. Nos. 99)), directing dissemination of notice to the Class, and scheduling a final approval hearing.  Mr. Knutson and Mr. Lemieux request that the Court provide Preliminary Approval of the proposed Settlement because the proposed Settlement provides for substantial benefit to the Class, accounts for the significant litigation risks of proceeding and satisfies all of the criteria for preliminary approval. Defendants have agreed to not oppose this motion. Agr., § 8.1.

## II.     STATEMENT OF FACTS

### A.     Factual Background

The certified Class in the "thousands"[3] represents a class of persons who placed at least one order for frozen food goods for NutriSystem, Inc., which was ultimately delivered by Schwan. Defendants allegedly placed calls using prerecorded voice messages or automatic telephone dialing systems the cellular telephones of the Class, on behalf of Schwan, for what Plaintiffs believe were for marketing purposes.  During the certified Class Period, April 18, 2008 through and including the date of August 31, 2012, Plaintiffs allege that Defendants called Plaintiffs and the Class on their cellular telephones using either an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) and/or with a prerecorded voice as prohibited by § 227(b)(1)(A) without consent. *See* Second Amended Complaint ("SAC"), ¶¶ 13, 14, 20 and 25. Plaintiffs allege that they did

---

[3] *See Lemieux v. Schwan's Home Serv.*, 2013 U.S. Dist. LEXIS 127032, *15 (S.D. Cal. Sept. 5, 2013).

Kazerouni Law Group, APC
Costa Mesa, California

1   not provide their cell phone number to Defendants, yet Plaintiffs received one or
2   more unsolicited prerecorded voice messages or calls with an automatic telephone
3   dialing system on their cellular telephones from Defendants, without prior express
4   consent. *See* SAC, ¶ 15.

5        In filing suit, Mr. Knutson and Mr. Lemieux allege that Defendants violated
6   the TCPA by calling cellular telephones of persons without "prior express consent"
7   using an "automatic telephone dialing system" and/or with an "artificial or
8   prerecorded voice." SAC, ¶¶ 10-22. Plaintiffs contend that they are entitled to
9   statutory damages pursuant to the TCPA. *Id.* at ¶¶ 34 and 39. Defendants have
10  denied and continue to deny that they violated the TCPA, and deny all charges of
11  wrongdoing or liability. *See generally,* Agr., § 14.

12      **B.    Proceedings To Date**
13       On April 18, 2012, Plaintiff Erik Knutson filed a class action complaint
14  against Defendant Schwan's (Dkt. No. 1). Plaintiff Erik Knutson filed the First
15  Amended Complaint for damages and injunctive relief against Defendant
16  Schwan's on December 4, 2012, adding Plaintiff Kevin Lemieux (Dkt. No. 28).
17  Plaintiffs filed the SAC on February 20, 2013, adding Defendant Customer Elation
18  (Dkt. No. 39). Defendants answered the Complaint and denied Plaintiffs' claims of
19  liability and damage on March 11, 2013 (Dkt. No. 41).   An Early Neutral
20  Evaluation was held on September 6, 2012, by telephone with Magistrate Judge
21  David H. Bartick (Dkt. No. 16).  A telephonic Case Management Conference was
22  held November 7, 2012 (Dkt. No. 24).   This action was heavily litigated with
23  multiple discovery disputes, over 10 depositions taken, including both named
24  Plaintiffs, before Plaintiffs filed a motion for class certification.  This motion was
25  contested, with the Court ultimately certifying a Class.  After Plaintiffs certified a
26  Class, the Parties began several months of negotiations.  The Parties then attended
27  two (2) all-day mediation sessions.  One before the Honorable Judge Leo Wagner
28  (Ret.) and the second before Honorable Judge Leo Papas (Ret.). *See* Declaration of

**Kazerouni Law Group, APC**
Costa Mesa, California

1   Abbas Kazerounian ("Kazerounian Decl."), ¶ 11.  During the pendency of these
2   mediation sessions, Defendants filed a Motion for Summary Judgment (Dkt. No.
3   113) and a Motion to Decertify the Class (Dkt. No. 121).  In addition, Defendants
4   also filed an appeal of the certification decision with the Ninth Circuit Court of
5   Appeals.[4]  After the second mediation session before Judge Papas, the Parties were
6   able to reach an agreement on a class basis.  Negotiations continued for several
7   months with regard to many open issues surrounding the Settlement.  Eventually
8   the Parties were able to agree on all the terms of a Settlement and this Motion for
9   Preliminary Approval of Class Action Settlement follows.

10      This has been a heavily litigated case through both discovery and motion
11  practice.  The litigation, with little doubt, has reached the stage where "the parties
12  certainly have a clear view of the strengths and weaknesses of their cases." *Warner*
13  *Communications*, 618 F. Supp. at 745.  Further, considering that the disputed
14  issues between the Parties are legal, and not factual, in nature, the Parties have
15  exchanged sufficient information to make an informed decision about settlement.
16  *See Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998).

17  **III.   THE SETTLEMENT**

18      **A.   The Settlement Class**

19      Prior to reaching this Settlement, the Court granted certification of the
20  following Class of persons:

> All persons who are past or present customers of NutriSystem,
> Inc., who had or have a number assigned to a cellular
> telephone service, which number was called by Defendants
> using an automatic telephone dialing system and/or an artificial
> or prerecorded voice between April 18, 2008 and August 31,
> 2012. Excluded from the Class are persons who Defendants
> called for emergency purposes or persons who gave express

--------

[4] This appeal was later withdrawn after settlement negotiations, but would no
doubt be renewed if the case were to proceed and Defendant's Motion to
Decertify the Class was denied.

Kazerouni Law Group, APC
Costa Mesa, California

consent to Defendants to call their cellular telephone number prior to Defendants first placing a call using an automatic telephone dialing system and/or artificial or prerecorded voice. Also excluded from the Class are Defendants, their officers and directors, families and legal representatives, heirs, successors or assigns and any other entity in which Defendants have a controlling interest, any judge assigned to this case and their immediate families.

Dkt. No. 119; Agr., § 1.6. Plaintiffs seek settlement of the same Class previously certified by this Court.

The "Class Period" included in the Settlement is the same class period previously certified by the Court (*see* Dkt. No. 99), ranging from April 18, 2008 through August 31, 2012. *Id*. at § 1.11.  The Class List will consist of all Class Members whose cellular telephone numbers were called by Defendants, and will be produced in an electronically searchable and reachable format to be provided to the Claims Administrator prior to mailing the Class Notice. *Id*. at §§ 1.8 and 6.1.

Based upon the Class List Defendants will produce, the Class consists of an estimated 16,691 unique cell phone numbers. *Id*. at § 1.8. Upon receiving notification from the Claims Administrator, each Class Member who does not timely and validly request exclusion from the Settlement shall be entitled to make a claim, which will result in compensation including both a merchandise voucher and a check. *See id*. at § 5.3.

**B.     Class Size**

There are 16,691 unique cell phone numbers contained in Defendants' records that are associated with accounts of past or present NutriSystem, Inc. customers that were called by Defendants using an automated dialer or prerecorded voice between April 18, 2008 and August 31, 2012. *See* Agr., 1.8.[5]

---

[5] The number of Class Members was originally obtained through discovery, prior to class certification.  After class certification and in preparation of producing the Class Notice Database to the Claims Administrator the number of class members

Kazerouni Law Group, APC
Costa Mesa, California

**Kazerouni Law Group, APC**
Costa Mesa, California

### C.   Class Notice

The notice to the Class is designed to reach each member of the Class to inform them of their rights regarding this proposed Settlement, as Defendants have name and address information for the Class Members to whom Defendants have, at one point in time, delivered NutriSystem products. Direct mail notice is the most efficient and practical way to provide individualized notice to all 16,691 Class Members. *Id*. at § 6.1; Kazerounian Decl., ¶¶ 14-15, and 20; Swigart Decl., ¶ 15.

The Class Notice will be mailed by the proposed Claims Administrator, Kurtzman Carson Consultants ("KCC"), to the 16,691 known Class Members, by direct mail post-card notice, within thirty (30) days of preliminary approval. Class Notice will include, in easily understandable language, the nature of the action, the class definition, class claims, issues and defenses of this TCPA action, the ability to appear by individual counsel, the procedure for exclusion and objecting to settlement, and the binding nature of the class judgment. *See* Fed. R. Civ. P. 23(c)(2)(B). *See* Class Notice, Exhibit C-1 to Agr. (Exhibit 1 to Kazerounian Decl., ¶ 12). The notice summarizes the Settlement, instructs how to make a claim, opt out or object, and directs the recipient to a toll-free telephone number and a Settlement Website maintained by the Claims Administrator to learn the details of the Settlement. *See id*. at § 6.1. If the potential Class Members' cell phone number is listed, the Claims Administrator will assist the Class Member in downloading the form from the Settlement Website. *See* Agr., §§ 6.3 and 7.1. The Class Member may submit a Claim Form online via the Settlement Website or by mailing the form to the Claims Administrator. *Id*. § 6.2.

Class Counsel may also issue a neutrally worded press release, the contents of which have been agreed to in advance by the Parties in order to facilitate Class Members learning about the Settlement, and to provide instructions on how they may

---

increased slightly to 16,691.  Confirmatory discovery was sent to Defendants to verify this number.

obtain additional information about the Settlement. *Id*. at § 6.6.  Each Class Member will be mailed personal direct mail notice (the Class Notice) within thirty (30) days of preliminary approval.  *Id*. § 6.1.

### D.   The Claims Process

Class Members must submit a valid and timely Claim Form to receive Settlement Benefits by the Claims Deadline, which is 90 days after the Class Notice is mailed. *See* Agr. §§ 1.5 and 5.2-5.4.  Claim Forms will be made available to Class Members on the Settlement Website. *Id*. § 6.2.  Claims can be submitted by merely submitting a Claim Form by mail or online, and a toll-free number will be provided for Class Members to call with questions or for assistance in obtaining and/or downloading a Claim Form. *Id*. § 6.2; *see also id*. § 1.8; Decl. Kazerounian, ¶¶ 16 and 17. Claims may not be submitted by calling the toll-free numbers. On the Claim Form, a Class Members is required to affirm he or she is a past or present NutriSystem, Inc. customer and did not provide consent to be called by Defendants at the cellular telephone number provided on the Claim Form. Agr. §§ 5.1-5.2. Provided the Class Member's cellular telephone number matches a cell phone number in the Claims Administrator's records, the Class Member, who is a past or present customer of NutriSystem, Inc., may file one claim, including both cash and voucher, per cell phone number actually called. *See id*. § 5.03.

### E.   Settlement Payment/Compensation to Class Members

Defendants will provide a maximum Settlement Benefit of $2,535,280, which is comprised of $1,200,000 in cash and $1,335,280 in merchandise vouchers for additional Schwan's products.  Each claiming Class Member will receive both a merchandise voucher in the amount of $80.00 and a check in the amount of $20.00. Agr. §§ 4.1- 4.3.[6]  Plaintiffs' counsel have successfully negotiated a class

---

[6] Under the terms of the Settlement Agreement, the check issued must be cashed within 120 days of issuance and the merchandise voucher must be used by the Class Member, to expire two years after issuance, if not used.

Kazerouni Law Group, APC
Costa Mesa, California

benefit allowing each of the 16,691 Class Members the ability to make a claim to receive the same settlement benefit, without dilution, irrespective of the number of claims filed. In other words, if all 16,691 Class Members make valid and timely claims they will all receive a merchandise voucher in the amount of $80.00 and a check in the amount of $20.00.

In addition to paying each Class Member making a valid claim $20.00, the cash component of the settlement will be used to pay 1) costs of notice and Administrative Expenses, not to exceed $35,000, 2) attorneys' fees, not to exceed $750,000, 3) actual litigation costs, not to exceed $30,000, 4) attorney fees, not to exceed $750,000, and 5) actual litigation costs not to exceed $30,000. Payment of these amounts, if approved by the Court, will not reduce the amount of compensation received by each claiming Class Member. These Settlement Costs include:

1. Notice and Administrative Expenses estimated at $38,000, paid as part of the Settlement Benefits, and such costs will not exceed $38,000;

   Attorneys' fees and costs to Class Counsel, as approved by the Court, up to $780,00, paid as part of the Settlement Benefits, which consists of $750,000 in attorneys' fees and $30,000 in litigation costs. Defendants have agreed not to oppose an application for an award of attorneys' fees up to $750,000, which represents approximately 29.58% of $2,535,280. Agr. § 10.1. This amount is above the 25% benchmark in the Ninth Circuit (*see Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-1050 (9th Cir. 2002) (recognizing the 25% benchmark for attorneys' fees in consumer class actions in the Ninth Circuit)); however, Courts have awarded more than the benchmark for excellent results obtained. *See Graham et al. v. Overland Solutions, Inc.*, 10-CV-00672-BEN-BLM (S.D. Cal. Jan. 30, 2013); *Boyce v. Sports and Fitness*, 03-CV- 2140-BEN (BLM) (S.D. Cal.

Kazerouni Law Group, APC
Costa Mesa, California

Jan. 24, 2006); *Adams v. AllianceOne*, 08-CV-0248-JAH (S.D. Cal. Sept. 28, 2012);

2. Incentive/Service Award to Representative Plaintiffs in an amount up to $1,500, for each named Plaintiff paid as part of the Settlement Benefits. Agr. § 11.1. Defendants agreed not to oppose a request of $1,500 as an incentive award. *Id*. This amount is in line with other TCPA class actions. *See Lo v. Oxnard European Motors, LLC*, 2012 U.S. Dist. LEXIS 73983, *10 (S.D. Cal. May 29, 2012) (approving $1,500 incentive award).

Agr. §§ 7.2 and 10.01; Kazerounian Decl., ¶¶ 24-30; Swigart Decl., ¶¶ 24-30.

Defendants shall issue compensation to those Settlement Class Members making timely and valid claims within 60 days of the later of (i) the Effective Date or (ii) receipt of such completed Claim Form. Agr. § 5.4. A Class Member is only entitled to recovery and compensation after submitting a valid and timely Claim Form (Agr. § 5.1), and Defendants will be permitted to maintain that they deny liability. *See generally*, Agr. § 14.

### F.   Non-Monetary Award To Class Members

If the Claims Administrator determines that an individual's cell phone number is not on the Class List of called cell phone numbers, that person will not be entitled to file a claim for a monetary payment or for a voucher; nevertheless, those persons also benefit from the Settlement because the Settlement will serve as a deterrent to future violations of the TCPA. *See Lo v. Oxnard European Motors, LLC*, 2012 U.S. Dist. LEXIS 73983, *5 (S.D. Cal. May 29, 2012). This Settlement creates an incentive for other businesses to comply with the TCPA, which benefits the Class Members, consumers in general, as well as compliant competitive businesses. *See* David R. Hodas, *Enforcement of Environmental Law in A Triangular Federal System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by the United States, the States, and Their Citizens?*, 54 Md. L.

Kazerouni Law Group, APC
Costa Mesa, California

Rev. 1552, 1657 (1995) ("[A]llowing a violator to benefit from noncompliance punishes those who have complied by placing them at a competitive disadvantage. This creates a disincentive for compliance.").

### G. Claims Deadline

The Claims Deadline is 90 days from the date Class Notices are mailed to Class Members. *Id*. at § 1.5.

### H. Opt Out/Objection Deadline

Under the terms of the proposed Settlement, Class Members will have the right to opt out of the Settlement or to object to its terms. *Id*. at §§ 6.4 and 6.5. The Class Notice (i.e., the direct mail notice), the Settlement Website and information available by calling the toll-free number, will inform Class Members of these rights. *See id*. §§ 6 and 7.1; Exhibit C-1 to Agr.; *see also* Kazerounian Decl., ¶ 15-17. There will be ninety (90) days to opt-out of the Settlement or object. Agr. § 6.5. Any Class Member who does not validly request exclusion within 90 days from the date the Class Notice is sent shall be a Settlement Class Member and shall be bound by the terms of this Agreement. *Id*. at § 6.4. Objections must be received within 90 days from the date the Class Notice is sent. *Id*. at § 6.5.

### I. Scope of Release

The scope of the Release by all Class Members (other than those who elect to opt out) is the scope of Plaintiff's allegations in the Second Amended Complaint relating to the prohibition against the use of an automatic dialing system or an artificial or prerecorded voice as used in the TCPA. The Plaintiffs will provide a global Release to the Released Parties. Agr. § 13.1.

## IV. LEGAL STANDARDS FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT

A class action may not be dismissed, compromised or settled without the approval of the court. *See* Fed. R. Civ. Proc. 23(e).  Judicial proceedings under Rule 23 have led to a defined procedure and specific criteria for settlement

approval in class action settlements, described in the *Manual for Complex Litigation (Fourth) (Fed. Judicial Center 2004) ("Manual")* § 21.63, et seq., including preliminary approval, dissemination of notice to class members, and a fairness hearing. Manual, §§ 21.632, 21.633, 21.634. The purpose of the Court's preliminary evaluation of the settlement is to determine whether it is within the "range of reasonableness," and thus whether notice to the class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile. *See* 4 Herbert B. Newberg, *Newberg on Class Actions* § 11.25 et seq., and § 13.64 (4th ed. 2002 and Supp. 2004) ("Newberg"). The Court is not required to undertake an in-depth consideration of the relevant factors for final approval. Instead, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Manual*, § 21.632 (4th ed. 2004).

As a matter of public policy, settlement is a strongly favored method for resolving disputes. *See Utility Reform Project v. Bonneville Power Adm*in., 869 F.2d 437, 443 (9th Cir. 1989). This is especially true in class actions such as this. *See Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982). As a result, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995). To make the preliminary fairness determination, courts may consider several relevant factors, including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel…" *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

Courts must give "proper deference to the private consensual decision of the

Kazerouni Law Group, APC
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

1  parties," since "the court's intrusion upon what is otherwise a private consensual

2  agreement negotiated between the parties to a lawsuit must be limited to the extent

3  necessary to reach a reasoned judgment that the agreement is not the product of

4  fraud or overreaching by, or collusion between, the negotiating parties, and that the

5  settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

6  *Hanlon*, 150 F.3d at 1027. Preliminary approval does not require a final

7  determination that the settlement is fair, reasonable, and adequate, as that decision

8  is made only at the final approval stage, after notice of the settlement has been

9  given to the class and they have had an opportunity to voice their views of the

10  settlement or to exclude themselves from the settlement. *See James Wm. Moore,*

11  *Moore's Federal Practice – Civil* § 23.165[3] (3d ed.). Thus, in considering a

12  potential settlement, the Court need not reach any ultimate conclusions on the

13  issues of fact and law, which underlie the merits of the dispute, *West Va. v. Chas.*

14  *Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971), and need not engage in a trial on

15  the merits, *Officers for Justice v. Civil Service Comm'n*, 688 F.2d at 625.

16       Preliminary approval is merely the prerequisite to giving notice so that "the

17  proposed settlement…may be submitted to members of the prospective class for

18  their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator &*

19  *Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970). Preliminary

20  approval of the settlement should be granted if there are no "reservations about the

21  settlement, such as unduly preferential treatment of class representatives or

22  segments of the class, inadequate compensation or harms to the classes, the need

23  for subclasses, or excessive compensation for attorneys." *Manual*, § 21.632, at 321.

24       The opinion of experienced counsel supporting the settlement is entitled to

25  considerable weight.[7]  The decision to approve or reject a proposed settlement "is

26  committed to the sound discretion of the trial judge[.]" *See Hanlon*, 150 F.3d at

27

28  ------------------------------------
[7] *See e.g.*, *Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal.1988) (opinion of experienced counsel carries significant weight regarding fairness of settlement).

1026. This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations omitted). Based on these standards, Class Counsel respectfully submit that, for the reasons detailed herein, the Court should preliminarily approve the proposed Settlement as fair, reasonable and adequate. Defendants will not oppose this request. Agr. § 8.1.

## V. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE PRELIMINARILY APPROVED

As with similar TCPA class action settlements (*see Barani v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 49838, *31 (S.D. Cal. Apr. 9, 2014); *Malta v. Fed. Home Loan Mortg. Corp.*, 2013 U.S. Dist. LEXIS 15731, *34 (S.D. Cal. Feb. 4, 2013)), this proposed Settlement should be preliminarily approved. Class Members will receive compensation worth $100 in value merely by submitting a claim, without the risks and expense of an individual lawsuit. Moreover, Settlement avoids the risks of the Plaintiffs and the Class Members receiving nothing should the class certification decision be reversed and/or Defendants' motion for summary judgment be granted.

### A. Liability Is Highly Contested and Both Sides Face Significant Challenges In Litigating The Action

Defendants have vigorously contested the claims asserted by Plaintiffs in the Action. While both sides strongly believe in the merits of their respective cases, there are risks to both sides of continuing the Action, especially since the TCPA is essentially a strict liability statute.[8] "Courts have split on class certification in TCPA

---

[8] *See Alea London Ltd. v. Am. Home Servs.*, 638 F.3d 768, 776 (11th Cir. Ga. 2011); *CE Design Ltd. v. Prism Bus. Media, Inc.*, 2009 U.S. Dist. LEXIS 70712, *8-9 (N.D. Ill. Aug. 12, 2009) ("The TCPA is a strict liability statute, but the court has discretion to award treble damages for a willful or knowing violation of 47 U.S.C. 227(b).").

Kazerouni Law Group, APC
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

1 cases, increasing the risk of maintaining the class action through trial." *Arthur v.*

2 *Sallie Mae, Inc.*, 2012 U.S. Dist. LEXIS 132413, *4 (W.D. Wash. Sept. 17, 2012).

3 Class Counsel understand there are uncertainties associated with complex class

4 action litigation and that no one can predict the outcome of the case.

5      If the Action were to continue, challenges would likely continue to be made to

6 the class certification decision by the Court.  Defendants filed a Motion to Decertify

7 the Class (Dkt. No. 121), which if granted would leave the Class Members with no

8 relief. As a basis for their motion to decertify, Defendants cite arbitration and forum

9 selection clauses that may apply to some of the Class Members.  Defendants argue

10 that those clauses fracture the class and create additional individualized issues that

11 may defeat the requirements for class certification or call for this Court to

12 reconsider the Class definition. *See e.g.*, *Labou v. Cellco Partnership*, 2014 WL

13 824225, at *4 (E.D. Cal. March 3, 2014) (striking class allegations due to, among

14 other things, presence of arbitration clause).

15      However, Defendants have to recognize that since a Class has been certified,

16 the potential amount of damages could be substantially higher than the Settlement

17 here (at least $500 per call) if this case went to trial.  Each Class Member allegedly

18 received an automated and/or prerecorded call from Defendants. SAC, ¶¶ 10, 14,

19 21, 27. Defendants have admitted to using an ATDS as defined by 47 U.S.C. §

20 227(a)(1)).[9] Also, Class Members who were called with a prerecorded voice need

21 not show the calls were made using an ATDS because the statute is written in the

22 disjunctive (*see* 47 U.S.C. § 227(b)(1)(A)).

23      Defendants have also filed a motion for summary judgment as to the entire

24 Class (Dkt. No. 113), potentially ending the case in favor of Defendants.  In their

25 motion, Defendants argue that Plaintiffs' claims fail as a matter of law because Class

26 Members gave their prior express consent to receive the calls at issue.[10]  Class

27 _____

28 [9] *See* Dkt. No. 84-1, 10:22-26.
[10] Plaintiffs do not concede this point.

1   Members allegedly provided their phone numbers to NutriSystem, Inc. with the
2   express understanding that they would receive calls and other communications
3   relating to the shipment and fulfillment of their orders.  Defendants rely on cases
4   from within the Ninth Circuit finding that the provision of a telephone number alone
5   is sufficient to establish express consent to receive calls and constitutes a defense to
6   TCPA claims.  *See Baird v. Sabre Inc.*, No. CV 13-999 SVW, 2014, WL 320205
7   (C.D. Cal. Jan. 28, 2014) (granting summary judgment where plaintiff "provided
8   her cellphone number . . . voluntarily" and therefore "consented to be contacted on
9   her cellphone"); *Roberts v. PayPal, Inc.*, No. C. 12-0622 PJH, 2013 WL 2384242, at
10  *5 (N.D. Cal. May 30, 2013) (finding individual consented to receive calls under the
11  TCPA "simply by providing his cell phone number").  Defendants also cite a decision
12  of the Federal Communications Commission ("FCC") stating that "persons who
13  knowingly release their phone numbers have in effect given their invitation or
14  permission to be called at the number which they have given, absent instructions to
15  the contrary."  *Rules & Regulations Implementing the Tel. Consumer Prot. Act of*
16  *1991*, 23 FCC Rcd 559, 565 (Jan. 4, 2008).  Defendants therefore maintain that the
17  Named Plaintiffs and Class Members expressly consented to receive telephone
18  calls and have no claims under the TCPA.

19       By contrast, Plaintiffs would argue that Defendants failed to obtain the
20  requisite prior express consent as opposed to implied consent from the provision of
21  a cell phone number to NutriSystem rather than to Defendants directly.  *See*
22  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. Cal. 2009)
23  ("Express consent is '[c]onsent that is clearly and unmistakably stated.'" (quoting
24  Black's Law Dictionary 323 (8th ed. 2004)); *see also Sherman v. Yahoo! Inc.*,
25  2014 U.S. Dist. LEXIS 13286, 13 (S.D. Cal. Feb. 3, 2014) ("even assuming,
26  *arguendo*, Plaintiff had provided the unidentified Yahoo! user his mobile phone
27  number, it cannot be interpreted as consent to receive Yahoo!'s Messenger Service
28  messages."); *but see In re Rules and Regulations Implementing the Telephone*

Kazerouni Law Group, APC
Costa Mesa, California

*Consumer Protection Act of 1991* 7 FCC Rcd 8752, 8769 , 7 FCC Rcd 8752 (F.C.C. 1992) ("persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."). Nevertheless, a mistaken belief that prior express consent was obtained is no excuse. *See Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 882 n.3 (8th Cir. 2005) (noting "'[t]he Act makes no exception for senders who mistakenly believe that the recipients' permission or invitation existed.'" (internal citation omitted)).

Thus, the Settlement avoids that risk of determining possible individualized issues of prior express consent that may result in dismissal or decertification of the Class and the Class Members, therefore, receiving nothing. *See e.g.*, *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 578 (S.D. Cal. 2013) ("HGV has set forth a fairly strong argument that the differing circumstances under which putative class members provided their cell phone numbers to Hilton are, at the very least, relevant to a determination of prior express consent. The context of class members' interactions with Hilton is sufficiently varied to provide dissimilar opportunities for the expression of consent."); *but see Dunn v. City of Chicago*, 231 F.R.D. 367, 375-76 (N.D. Ill. 2005) ("the existence of individualized defenses does not preclude class certification.").

**B.    Defendants' Agreement To Provide Up To $2,535,280.00 In Settlement Benefits Provides A Fair and Substantial Benefit To The Class**

As set forth above, Defendants will provide class benefits in the maximum amount of $2,535,280.00. Agr. § 4.2. The Class Members who submit valid Claim Forms, will be paid a merchandise voucher in the amount of $80.00, and a also receive check in the amount of $20.00, for a total of $100.00 in value paid on a claims made basis.  *Id*. §§ 4.3, 4.4.  Plaintiffs' Counsel was able to procure in Settlement a large enough amount that if every Class Member were to make a claim, they would all receive the same recovery.  In other words, irrespective of the

number of claims made, each claiming Class Member will receive a merchandise voucher for $80.00 and a check in the amount of $20.00.

### 1.   Plaintiffs Face Substantial Risk Even Though A Class Has Been Certified

Despite the fact a Rule 23(b)(3) class has been certified, Plaintiffs face substantial risk that the certification decision may be reversed in light of Defendants' motion to decertify class and demonstrating an intention to appeal if a non-favorable decision occurs. Additionally, Defendants have filed a motion for summary judgment as to the entire class. If either motion is granted by the Court, the Class Members receive nothing. This Settlement avoids this risk.

As this Court is aware, a number of TCPA cases have recently failed at the class certification stage. Current case law under the TCPA shows substantial risks that these types of cases may not be certified, or might serve as support to decertify TCPA class actions. *See Smith v. Microsoft Corp.*, 2014 U.S. Dist. LEXIS 12799, *28 (Class certification denied); *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 579 (S.D. Cal. 2013) (Class certification denied). Based on the current state of the law, there is a risk that Plaintiffs will not be able to maintain their case as a class through trial. If this were to occur, the Class Members would not receive any recovery.

In *Smith*, the court was highly concerned with the loss of data regarding evidence of prior express consent (*see Smith*, 2014 U.S. Dist. LEXIS 12799 at *20). Plaintiffs would argue here, however, that rather than a loss of data regarding prior express consent, Defendant Schwan's has admitted to not having documentary evidence of prior express consent, but instead relies upon an implied consent argument. *See Dkt. No. 84-1, 4:10-6:8.* Defendants would argue that the mere provision of Plaintiffs' cellular telephone numbers to NutriSystem in connection with a purchase from NutriSystem constitutes prior express consent and that no explicit documentations is required to prove prior express consent.

Also, the *Smith* Court opined that it was the TCPA plaintiff's burden to show lack of prior express consent, apparently following *dicta* in *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. Cal. 2012) stating consent is an element of a TCPA clais, despite the Ninth Circuit Court of Appeals' decision in *Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed. Appx. 598, 600 (9th Cir. Cal. 2011) holding that "'express consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof."[11] The argument over which party bears the burden of proof regarding the consent issue is an additional risk faced by the Parties that is avoided through settlement.

In *Connelly*, the court was concerned with a number of issues, including the non-standardized method of obtaining consumer's telephone numbers and alleged express consent to call those numbers. *See Connelly*, 294 F.R.D. at 578. Plaintiffs would argue, however, that unlike in *Connelly*, the cellular telephone numbers at issue were all obtained by NutriSystem through customer purchases and later provided to Defendant Schwan, who in turn provided the telephone numbers to Defendant Customer Elation to be called. *See* Dkt. No. 84-1, 3:13-4:8 (Plaintiffs' Motion For Summary Judgment). Defendants would argue that Plaintiffs consented to receive telephone calls from Defendants by providing their telephone numbers to NutriSystem in conjunction with their orders and/or agreeing to NutriSystem's Terms and Conditions and Privacy Policy.

---

[11] Notably, however, the FCC ruled as early as 2007 that "the creditor should be responsible for demonstrating that the consumer provided prior express consent." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, 565 (Dec. 28, 2007).  This was confirmed in the FCC's February 15, 2012 declaratory ruling explaining, "should any question about the consent arise, the seller will bear the burden of demonstrating that … unambiguous consent was obtained." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1844, (Feb. 15, 2012).

Kazerouni Law Group, APC
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

1   Recently, a renewed motion for preliminary approval of class action
2   settlement of a TCPA action was denied in *Newman v. Americredit Fin. Servs.*,
3   2014 U.S. Dist. LEXIS 15728, *20 (S.D. Cal. Feb. 3, 2014).[12]  The *Newman* Court
4   was concerned about several issues, including but not limited to, the typicality of
5   the claims given the proposed settlement included non-account holders as well as
6   account holders (*id*. at *11-12), the class members were not permitted to opt-out
7   as a group (*id*. at *17), and the notice did not adequately discuss the pros and cons
8   of each side's case or disclose the damages and attorneys' fees a prevailing
9   plaintiff could recover if the case were fully litigated (*id*. at *20).

10   Here, unlike in *Newman*, the proposed Settlement here is made up of only
11   past or present NutriSystem *customers* actually called by Defendants by the same
12   means (i.e., an ATDS and/or prerecorded voice), and therefore, the claims of the
13   named Plaintiffs are virtually identical in many ways to those of the Class
14   Members. Moreover, there is no language in the Agreement in this case that
15   would preclude Class Members from opting out as a group. Also, Class Counsel is
16   aware of no requirement that the class notice explain the pros and cons of each
17   side's case, as the Federal Rules of Civil Procedure require, among other things,
18   that the class notice state "the class claims, issues, or defenses" (*see* Fed. R. Civ.
19   P. 23(c)(2)(B)(iii)), which Plaintiffs have done here (*see* Exhibit C-2 to Agr., pp.
20   1-2, 4). Plaintiffs adequately explain the strengths and weaknesses of each side's
21   case throughout this memorandum in support of preliminary approval, and it is for
22   the Court to decide the fairness of the proposed Settlement. The notice to the
23   Class also explains the potential damages in this case, the fees sought and the
24   estimated costs. Consequently, the *Newman* decision should not dissuade the
25   Court from approving the Settlement.

26

27   [12] This Court, however, during the past month approved a motion for preliminary
28   approval of a TCPA class action settlement in *Barani,* 2014 U.S. Dist. LEXIS
     49838 at *31.

Thus, Plaintiffs have side stepped though risks and obtained monetary relief for the Class, which may not have otherwise been available. Class Counsel therefore seek the Court's approval of this Settlement. Due to the costs, risks to both sides, and delays and expense of continued litigation, including a potential appeal of the class certification decision, the Settlement presents a fair and reasonable alternative to continued litigation.

## 2. The Merchandise Voucher Aspect of The Settlement Is Appropriate

Here, the Settlement includes *both* a check and a merchandise voucher. Agr. §§ 4.1-4.5.[13] Each Settlement Class Member will receive an $80 voucher for Schwan products, which products are sold through Schwan's online store. *See* Exhibit 2 (http://www.schwans.com), accessed on May 5, 2014. Courts have approved the use of gift cards or vouchers as compensation in class action suits. *See Morey v. Louis Vuitton N. Am., Inc.*, 2014 U.S. Dist. LEXIS 3331, *22-23 (S.D. Cal. Jan. 9, 2014) (finally approving settlement comprised of $41 vouchers that could be used good for all purchases at stand-alone Louis Vuitton retail stores in California and have a one-year expiration); *In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2014 U.S. Dist. LEXIS 8289, *14 (C.D. Cal. Jan. 17, 2014) (finally approving settlement comprised of $5 to $30 vouchers, which are valid for six months after their issuance for use at Toys 'R' Us stores, based upon the number of check purchases made by the claimant); *Masters v. Lowe's Home Ctrs., Inc.*, 2011 U.S. Dist. LEXIS 157875, *7 (S.D. Ill. July 14, 2011) (finally approving settlement comprised of a $25-40 gift card based on number of payments made at a Lowe's store on a GE Money Bank Account).[14]

---

[13] "[A] voucher is more like a gift card or cash where there is an actual cash value, is freely transferable, and does not require the class members to spend any additional money in order to realize the benefits of the settlement." *Morey*, 2014 U.S. Dist. LEXIS 3331 at *22.

[14] *See also Fernandez v. Vict. Secret Stores, LLC*, 2008 U.S. Dist. LEXIS 123546, *6 (C.D. Cal. July 21, 2008) (finally approving settlement comprised of a $67.50

Kazerouni Law Group, APC
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

### i.   *Vouchers were approved in Jiffy Lube*

Judge Miller in the case of *In re Jiffy Lube International, Inc. Text Spam Litigation*, 11-MD-02261-JM-JMA (S.D. Cal.), authorized and finally approved a similar TCPA class settlement where each class member received a single voucher for an oil change, valued at $20 (Final approval granted on February 20, 3013, Dkt. No. 97).[15]  Plaintiffs' recovery for claiming class members, here, is five times the class member recovery in *Jiffy Lube*.

### ii.   *Vouchers were approved in Wojcik*

Additionally, the recovery here in terms of the voucher is greater that what was provided for in *Wojcik v. Buffalo Bills Inc*. Case No. 8:12-cv-02414-SDM-TBM (M.D. Florida April 17, 2014), where the court very recently approved a gift card settlement in a TCPA action where Buffalo Bills allegedly sent excessive text messages to its fans and provided for gift cards of $57.50 to $75.00 redeemable at Buffalo Bills stores. *See* Exhibit 4.

### iii.   *Vouchers were approved in Friedman*

Furthermore, in *Friedman v. LAC Basketball Club, Inc.*, 13-cv-00818-CBM-AN (C.D. Cal. April 29, 2014), the court preliminarily approved a TCPA settlement providing for one or more ticket vouchers, with a fair market value between $15 and $50, that could be used to attend a Clippers' basketball game. *See* Exhibits 5 and 6. Therefore, the voucher aspect of the Settlement here should be

---

gift card that will not expire, is freely transferrable, and can be used to purchase products sold at any Victoria's Secret store or online); *Young v. Polo Retail, LLC*, 2007 U.S. Dist. LEXIS 27269, *4 (N.D. Cal. Mar. 28, 2007) (approving the use of gift cards in large part because they are transferrable; "this enables class members to obtain cash — something all class members will find useful"); *Kazami v. Payless Shoesource, Inc. et al.*, 3:09-cv-05142-EMC, Dkt. No. 94, ¶ 9 (N.D. Cal. April 2, 2012) (finally approving settlement comprised of a single merchandise certificate for Payless shoe stores; Exhibit 3).

[15] In the *Jiffy Lube* matter, the $20 voucher was automatically mailed to each class member, where here each claiming class member will receive a voucher over four times the amount, at $80.00 in addition to a $20.00 check.

---

approved, as in other similar TCPA class action settlements.

### C. The Monetary and Non-Monetary Recovery Amounting To $100 In Value Per Claiming Class Member Is Fair and Reasonable, and Settlement Serves To Deter Future Violations

The Settlement payment and form of compensation that each claiming Settlement Class Member will receive is fair, appropriate, and reasonable given the purposes of the TCPA, the vouchers may be used to purchase Schwan's product (both the named Plaintiffs and the putative class members are familiar with Schwan's as the food delivery company that delivered NutriSystem products to them[16]), and in light of the anticipated risks, expense, and uncertainty of continued litigation. The purpose of the TCPA is to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated calls.[17]

Although the TCPA provides for statutory damages of $500 for each violation, it is well settled that a proposed settlement may be acceptable even though it amounts to only a percentage of the potential recovery that might be available to the class members at trial. *See e.g.*, *National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery").[18]  The Class Members here will receive compensation

---

[16] *See* Dkt. N. 98, 2:16-3:13 (Defendants' Opposition to MSJ).

[17] S. REP. NO. 102-178, at 6 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1973; *see also Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1045 (9th Cir. Cal. 2012) ("Prohibiting the use of automatic dialers to call cellular telephones without express prior consent is a rational means of achieving" the objective of protecting consumer privacy.").

[18] *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of strength of the claims"); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) (court-approved settlement amount that was just over 9% of the maximum potential recovery); *In re Mego Fin'l Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000).

Kazerouni Law Group, APC
Costa Mesa, California

worth $100 for taking the brief amount of time necessary to submit a claim. The Class will also benefit from the deterrent effect of this TCPA Settlement on the placing of future calls to cellular telephones using an ATDS or prerecorded voice without prior express consent. Thus, the Action will provide substantial benefit to the Class Members, in the form of a check and voucher as well as through its deterrent effect on other businesses that engage in similar conduct.

### D. The Settlement Was Reached As The Result of Arms-Length Negotiation, Without Collusion, With The Assistance of The Court and Two Private Mediation Sessions

The proposed Settlement is the result of intensive arms-length negotiation, only after the case was heavily litigated and Plaintiffs certified a class. Subsequently, the Parties engaged in two (2) full days of mediation, one before Judge Leo Wagner (Ret.), and one before Judge Leo S. Papas (Ret.), followed by further negotiations between the Parties on their own. Kazerounian Decl., ¶¶ 10 and 11. With the guidance of Judge Papas (Ret.), and working independently of the Court, the Parties were able to reach a Settlement after the mediation.[19]

After reaching an agreement in principle to settle the case, Class Counsel and counsel for Defendants engaged in additional extensive discussions to finalize all the outstanding material terms of a class action settlement. Further settlement discussions helped to work out the many details surrounding data production, and settlement details, including claims process. The time and effort spent on settlement negotiations, as well the time spent with Judge Papas (Ret.) and Judge Wagner (Ret.) in the settlement process, militate in favor of preliminary approval of the proposed Settlement, as they strongly indicate there was no collusion. *See* Kazerounian Decl., ¶¶ 10-11; *see also In re Wireless Facilities, Inc. Sec. Litig. II*,

---

[19] This Court granted preliminary approval (and later granted final approval) of a similar TCPA class action where the parties reach a settlement after mediation before Judge Papas (Ret.) and Judge Howard B. Wiener (Ret.). *See Malta v. Fed. Home Loan Mortg. Corp.*, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 4, 2013).

Kazerouni Law Group, APC
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

1  253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient

2  discovery and genuine arms-length negotiation are presumed fair.").  Should the

3  Court grant Preliminary Approval, the complete updated lists regarding the Class

4  Members and cell phone numbers in the class will be provided to the Claims

5  Administrator in Excel or other electronic format. Agr. § 6.1.

**E.    Experienced Counsel Have Determined That The Settlement Is Appropriate and Fair To The Class**

8  Plaintiffs hired counsel experienced in complex class action litigation.  Class

9  Counsel has extensive experience in class actions, as well as particular expertise in

10  class actions relating to consumer protection and specifically the TCPA. *See*

11  Kazerounian Decl., ¶¶ 41-53; Swigart Decl. ¶¶ 41-49; *Barani*, 2014 U.S. Dist.

12  LEXIS 49838 at *7 (approving Abbas Kazerounian and Joshua B. Swigart as class

13  counsel in provision class action settlement of a TCPA text message case). Counsel

14  for Defendants similarly have a TCPA Working Group with extensive experience

15  in TCPA class actions and complex commercial litigation. *See*

16  http://www.hoganlovells.com/tcpa/.  Counsel for Defendants have vigorously

17  defended this Action since taking over as Defense counsel on or about September

18  2013, having assisted with the filing of a motion to decertify class action and a

19  motion for summary judgment. Plaintiffs' counsel believe that under the

20  circumstances, the proposed Settlement is fair, reasonable and adequate and in the

21  best interests of the Class Members. Defendants have agreed not to oppose this

22  motion. *See* Agr. § 8.1.

**F.    The Court Has Already Certified A Rule 23(b)(3) Class**

24  The Court already determined on September 5, 2013, that a Fed. R. Civ. P.

25  23(b)(3) class action is appropriate (Dkt. No. 99) and issued an order pursuant to

26  Fed. R. Civ. P. 23(c)(1)(B) on December 9, 2013 (Dkt. No. 119). Therefore, the

27  Court has already determined that a class action is appropriate. The only change is

28  the identification of the estimated number of Class Members being 16,691, which

more than satisfies the numerosity prerequisite. *See* Agr. § 1,8; *see Lemieux,* 2013 U.S. Dist. LEXIS 127032 at \*15.

### G.     The Proposed Method of Class Notice Is Appropriate

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances.   Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabon*, 18 F. 3d 1449, 1454 (9th Cir. 1994). Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.

Pursuant to Fed. R. Civ. P. 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) also sets forth requirements as to the content of the notice.   The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

### 1.     <u>Direct Mail Notice (The Class Notice)</u>

The Settlement Administrator will mail individual Class Notice (*see* Exhibit C-1 to the Agr.) to the Class Members whose addresses are on the Class List, via first-class mail in postcard style form, after Defendants provide the Class List to the Claims Administrator. *See* Agr. § 6.1. This initial mailing of the Class Notice will occur within thirty (30) days after the Preliminary Approval. *Id*. at § 6.1.

Kazerouni Law Group, APC
Costa Mesa, California

## 2.   Settlement Website

In addition, the Parties have agreed to provide notice through the Settlement Website, which the Claims Administrator will establish and maintain. *Id*. at 6.2. The Settlement Website will allow visitors to access (and print) a complete copy of the Class Notice, the Agreement, and the Q&A Notice Form (*see* Exhibit C-2 to Agr.), the Second Amended Complaint, the Settlement Approval Order, and the Final Settlement Approval Order, and it will allow them to determine whether they are Class Members once they have provided identifying information as set forth in the Class Notice. Class Members will also be permitted to file a claim through the Settlement Website. *Id*. The Claims Administrator shall maintain the website until at least 30 days following final approval of the Settlement. Agr. at § 6.2.

The notices will be disseminated and also posted on the Settlement Website sufficiently prior to the final approval hearing or Fairness Hearing to give Class Members the opportunity to comment on the Settlement, or to opt out and preserve their rights. Agr. § 6.2; *see also Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1374-1375 (9th Cir. 1993) (31 days is more than sufficient, as Class as a whole had notice adequate to flush out whatever objections might reasonably be related to the settlement) citing *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) (approving timing of a notice mailed 26 days before opt-out deadline).

## 3.   Toll-Free Telephone Number

Additionally, anyone can obtain information about the Settlement through the toll-free number. Agr. § 6.3. That telephone number shall be maintained by the Claims Administrator until thirty (30) days after the Claims Deadline.  After that time, and for a period of ninety (90) days thereafter, either a person or a recording will advise any caller to the toll-free telephone number that the Claims Deadline has passed and the details regarding the Settlement may be reviewed on the related Settlement Website. *Id*.

///

Kazerouni Law Group, APC
Costa Mesa, California

**Kazerouni Law Group, APC**
Costa Mesa, California

### 4.   List of Class Members Provided To Claims Administrator

Pursuant to the proposed Settlement, Defendants have agreed to provide a Class List to the Claims Administrator to send out Class Notice. Agr. § 6.1. The Class List will contain the names, current or last known mailing addresses, and cell phone numbers called that are contained in Defendants' records pertaining to the Class Members. *See* Agr. at § 6.1. The Class List will be utilized by the Claims Administrator to provide Class Notice to the Class Members. *Id.* This notice program is designed to meaningfully reach the largest possible number of Class Members. Courts have approved settlements in which notice was calculated to reach over 95% of the Class Members. *See Wilson v. Airborne, Inc.*, 2008 U.S. Dist. LEXIS 110411, at *13-14 (C.D. Cal. Aug. 13, 2008).

Thus, the Class Notice here is calculated to reach every member of the Class identified in the Class List, who is a past or present customer of NutriSystem, Inc. contacted by Defendants during the Class Period who received an automated and/or prerecorded telephone call placed to their cellular telephone.  A very similar method of notice was preliminarily approved in *Barani*, *supra*, 2014 U.S. Dist. LEXIS 49838 at *25; and in *Malta*, *supra*, 2013 U.S. Dist. LEXIS 15731 at *26. The method of notice provided for in this Settlement will most certainly reach more than the 70% to 80% of Class Members found to be sufficient in other cases.  The mailing of the Class Notice combined with the posting of the formal Notice in the Q&A form on the website satisfies the requirements of due process, is the best notice practicable under the circumstances, and constitutes due and sufficient notice.[20]

---

[20] Prior to the Fairness Hearing, the Claims Administrator will file a declaration regarding compliance with the Preliminary Approval Order. The Claims Administrator is also to provide the required CAFA Notice for Defendants pursuant to 28 U.S.C. § 1715. No later than 10 days after filing this motion proposing Settlement of the class action, the Claims Administrator will provide the Attorney General for the United States and the Attorney General of each state, a copy of the Second Amended Complaint, a copy of the Class Notice (i.e., Ex. C-1 to the Agr.), as well as all other requirements under 28 U.S.C. § 1715. *See*

### H.   The Court Should Appoint KCC As The Claims Administrator

The Parties agree upon and propose that the Court appoint KCC as the Claims Administrator. *See* Agr. § 7.1. KCC specializes in providing administrative services in class action litigation, and has extensive experience in administering consumer protection and privacy class action settlements. *See* Kazerounian Decl. ¶ 23; *see also* http://www.kccllc.com/class-action/clients/representative-case-list.

### I.   A Final Approval Hearing Should Be Scheduled

The last step in the settlement approval process is the formal Fairness Hearing or final approval hearing, at which time the Court may hear all evidence and argument, for and against, to evaluate the proposed Settlement. Class Counsel request that the hearing be held not before 160 days after the date of entry of the Preliminary Approval Order to allow sufficient time for providing CAFA Notice, Class Notice and the 90-day claims period, plus an additional 10-days to allow for objections and opt-outs.

## VI.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter an order preliminarily approving the proposed Settlement, allowing Erik Knutson and Kevin Lemieux to continue to serve as Class Representatives, and continue to allow Class Counsel Abbas Kazerounian of Kazerouni Law Group, APC, and Joshua B. Swigart of Hyde & Swigart to serve in such capacity for the purposes of Settlement. This motion is unopposed by Defendants. Agr. § 8.1.

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

Date: May 5, 2014                By:/s/ Abbas Kazerounian, Esq.
                                   Abbas Kazerounian
                                   *Attorney for Plaintiffs*

*generally*, Agr. § 6.7. Defendants will pay for this notice. *Id*.

*Kazerouni Law Group, APC*
*Costa Mesa, California*