**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Attorneys for Plaintiffs*,
Erik Knutson and Kevin Lemieux

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERIK KNUTSON and KEVIN LEMIEUX, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SCHWAN'S HOME SERVICE, INC.; and CUSTOMER ELATION, INC.,<br><br>Defendants. | Case No.: 12-CV-00964-GPC (DHB)<br><br>**DECLARATION OF ABBAS KAZEROUNIAN IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date:** July 18, 2014<br>**Time:** 1:30 p.m.<br>**Place:** 2D<br>**Judge:** Hon. Gonzalo P. Curiel |

**DECLARATION OF ABBAS KAZEROUNIAN, ESQ.**

**I, ABBAS KAZEROUNIAN, declare:**

1. I am one of the attorneys for the plaintiffs in this action, Erik Knutson and Kevin Lemieux ("Plaintiffs"). I submit this declaration in support of the Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement in the action against defendants, Schwan's Home Service, Inc. and Customer Elation, Inc. (jointly referred to as the "Defendants"). I am over the age of 18 and am fully competent to make this declaration. I was admitted to the State Bar of California in 2007 and have been a member in good standing ever since that time. I have litigated cases in both state and federal courts in California, Washington, Ohio, Nevada, Colorado and Texas. I am admitted in every federal district in California and have handled federal litigation in the federal districts of California. I am also admitted to the Ninth Circuit Court of Appeals and the United States Supreme Court. If called as a witness, I would competently testify to the matters herein from personal knowledge.

2. The declaration is based upon my personal knowledge, except where expressly noted otherwise.

3. This action was commenced on April 18, 2012, against Schwan's Home Service, Inc., by filing a putative class action complaint asserting causes of action for: (1) negligent violation of Section 227(b)(3)(B) of the Telephone Consumer Protection Act ("TCPA"), codified at 47 U.S.C. § 227 et seq., and (2) willful violation of Section 227(b)(3)(B) of the TCPA.

4. Plaintiffs filed a First Amended Complaint on December 4, 2012, and on February 20, 2013, Plaintiffs filed a Second Amended Complaint ("SAC") to add Customer Elation as a defendant.

5. The SAC alleges that Defendants, Schwan's Home Service, Inc., and Customer Elation, Inc., violated the TCPA by calling Erik Knutson's and Kevin Lemieux's

Kazerouni Law Group, APC
Costa Mesa, California

cellular telephones while attempting to advertise their products and/or services without obtaining prior express consent to do so.

6. Plaintiffs' motion for class certification was granted by the Court on September 5, 2013 (Dkt. No. 99).

7. The Court appointed Plaintiffs Erik Knutson and Kevin Lemieux as Class Representatives on December 9, 2013 (Dkt. No. 119).

8. The Court appointed Kazerouni Law Group, APC and Hyde and Swigart as Class Counsel on December 9, 2013 (Dkt. No. 119).

9. The Plaintiffs and Defendants (collectively the "Parties") have engaged in settlement discussions and negotiations regarding this action. As a result of this process and the Parties' representations to each other, the Parties believe that they are fully apprised of the relative strengths and weaknesses of each other's claims and defenses and the potential risks to each party of pursuing further litigation in this matter.

10. On September 6, 2012, Plaintiffs' Counsel and counsel for Defendants attended an Early Neutral Evaluation Conference with the Honorable Magistrate Judge David H. Bartick. With Judge Bartick, progress was made toward informally determining the parameters of discovery. Subsequent Case Management Conferences on November 7, 2012, and December 11, 2013, presided over by Judge Bartick, further regulated discovery and other pretrial proceedings. Counsel for the Parties then continued negotiations among themselves for several months, culminating in a settlement of this case at an early stage of the proceedings in January 2014, with a settlement agreement finalized in early May of 2014.

11. The Parties to the action also engaged in two (2) mediation sessions, one before the Honorable Leo S. Papas (Ret.) and one before the Honorable Leo Wagner (Ret.), which helped the Parties progress towards a settlement on a class basis.

12. In an attempt to put the settlement details in writing, and in projecting the implementation of its terms, the Parties negotiated for a few additional months after mediation before agreeing on how the Settlement details would be resolved, including how best to identify the persons in the Settlement Class. The Parties agreed to settle on the terms in the Settlement Agreement as set forth therein, on behalf of a Settlement Class of all past or present NutriSystem, Inc. customers whose names are associated with cellular telephone numbers called by Defendants using an automatic telephone dialing system and/or prerecorded voice between April 18, 2008 and August 31, 2012. Pursuant to the Settlement Agreement (the "Agreement"), those persons in the Settlement Class will receive a cash payment of $20.00 in the form of a check and a voucher for Schwan's products in the amount of $80.00, paid on a claims made basis. The voucher shall not be redeemable for cash, shall be non-transferable, and shall expire two years after it is issued. Also, the check shall be non-transferable, and shall expire one hundred and twenty days after it is issued. Attached hereto as **Exhibit 1** is a true and correct copy of the executed Settlement Agreement. Also, **Exhibits A** through **D** to the Settlement Agreement are true and correct copies of those documents as described in the Settlement Agreement itself.

13. As part of that Agreement, Defendants will pay a maximum of $2,535,280.00 as the settlement benefits (the "Settlement Benefits") for all approved claims. Defendants will also pay all attorneys' fees and expenses, and costs of notice and claims administration from the Settlement Benefits. Further, Defendants will pay for the Class Action Fairness Act Notice.

14. It is my opinion that the Class as defined satisfies the requirements of Rule 23 because all persons in the Settlement Class are persons with names associated with cellular telephone numbers that Defendants called at least once using an automatic telephone dialing system and/or prerecorded voice during the Class Period.

15. All of the members of the Class will be sent a direct mail notice in the form of a postcard explaining they are entitled to make a claim and how to file such claim. They are part of the members of the Class and are entitled to a monetary payment via the aforementioned check and the voucher for Schwan products through Schwan's online store. Attached hereto as **Exhibit 2** is a true and correct copy of the webpage located at http://www.schwans.com), accessed on May 5, 2014. Additionally, this settlement serves as a deterrent to future violations of the TCPA.

16. The claims administrator shall establish and maintain a Settlement Website that (i) enables Class Members to submit a claim and access and download the Class Notice and Claim Form, (ii) provides contact information for Class Counsel, (iii) and provides access to relevant documents. Such documents shall include the Settlement Agreement and Class Notice, the Preliminary Settlement Approval Order, a downloadable Claim Form for anyone wanting to print a hard copy and mail in the Claim Form, the Second Amended Complaint, a list of frequently asked questions and answers, and when filed, the Final Settlement Approval Order. The Class Notice shall include the address (URL) of the Settlement Website. The claims administrator shall maintain the Settlement Website until at least 30 days following final approval of the Settlement. Class Members will be permitted to submit a claim via the Settlement Website.

17. By the date required by the Court to send out notice, the claims administrator shall set up a toll-free telephone number for receiving toll-free calls related to the Settlement. That telephone number shall be maintained until thirty (30) days after the Claims Deadline. Class Members will not be permitted to submit a claim by calling the toll-free telephone number established by the claims administrator. After that time, and for a period of ninety (90) days thereafter, either a person or a recording will advise any caller to the toll-free telephone

1 number that the Claims Deadline has passed and the details regarding the Settlement may be reviewed on the related settlement website.

18. Class Counsel may issue a neutrally worded press release, the contents of which have been agreed to in advance by all Parties. If issued, the purpose of the press release will be to facilitate Class Members learning about the settlement, and to provide instructions on how they may obtain additional information about the settlement.

## CLASS DEFINITION

19. The Settlement Class is defined as follows:

> All persons who are past or present customers of NutriSystem, Inc., who had or have a number assigned to a cellular telephone service, which number was called by Defendants using an automatic telephone dialing system and/or an artificial or prerecorded voice between April 18, 2008 and August 31, 2012. Excluded from the Class are persons who Defendants called for emergency purposes or persons who gave express consent to Defendants to call their cellular telephone number prior to Defendants first placing a call using an automatic telephone dialing system and/or artificial or prerecorded voice. Also excluded from the Class are Defendants, their officers and directors, families and legal representatives, heirs, successors or assigns and any other entity in which Defendants have a controlling interest, any judge assigned to this case and their immediate families.

Settlement Agreement, § 1.6; Docket No. 119.

20. Based on the representations from Defendants, there are an estimated 16,691 unique cell phone numbers of past or present customers of NutriSystem, Inc. contained in Defendants' records that were called by Defendants using an automatic telephone dialing system and/or prerecorded voice between April 18, 2008 and August 31, 2012.

21. Settlement will be terminable at the option of the Parties if: (a) any objections to the proposed settlement are sustained, which results in changes to the settlement described in this Agreement that the withdrawing Party deems in good faith to be material (e.g., because it increases the cost of settlement or deprives the withdrawing Party of a benefit of the settlement); (b) the final approval of the settlement described in this Agreement results in changes that the withdrawing Party did not agree to and that the withdrawing Party deems in good faith to be material (e.g., because it increases the cost of settlement or deprives the withdrawing Party of a benefit of the settlement); (c) more than 1% of the Class Members exclude themselves from the settlement described in this Agreement; or (d) the final approval of the settlement described in this Agreement is (i) substantially modified by an appellate court and the withdrawing Party deems any such modification in good faith to be material (e.g., because it increases the cost of settlement or deprives the withdrawing Party of a benefit of the settlement) or (ii) reversed by an appellate court. The Agreement also shall be terminable upon the mutual agreement of the Plaintiffs, Class Counsel and Defendants.

22. In order to receive a monetary payment from the Settlement Benefits, a Class Member must be a member of Class – those past or present customers of NutriSystem, Inc. actually called on their cellular telephones by Defendants without consent. Based on data to be provided to the claims administrator, which will be prepared using the information in Defendants' records, the Settlement Class Members will be sent personal direct mail notice (the "Class Notice"). There are an estimated 16,691 unique cellular telephone numbers contained in Defendants' records which may have been called by an automated dialer or prerecorded voice during the class period. Plaintiffs are in the process of conducting confirmatory discovery regarding this figure.

23. After approval of Preliminary Approval of Settlement, the pertinent cellular telephone numbers will be disclosed by Defendants to the claims administrator approved by the Court. The Parties propose that Kurtzman Carlson Consultants ("KCC") be appointed as claims administrator. KCC specializes in providing administrative services in class action litigation, and has extensive experience in administering consumer protection and privacy class action settlements.

### ADEQUACY OF SETTLEMENT

24. Defendants shall provide class benefits for a maximum of $2,535,280.00, consisting of a maximum cash contribution of $1,200,000 and a maximum contribution of $1,335,280 of in Schwan's product vouchers. Those Settlement Class Members will receive a cash payment of $20.00 in the form of a check and a voucher for Schwan's products in the amount of $80.00, paid on a claims made basis for approved claims.

25. Costs of litigation, notice, claims administration and attorneys' fees are being paid by the Defendants from the Settlement Benefits.

26. Any incentive payment awarded to the Representative Plaintiffs (Erik Knutson and Kevin Lemieux), any attorneys' fees and costs awarded to Class Counsel and certain expenses including Claims Administration Costs, are to be paid from the Settlement Benefits by Defendants as follows:

   (1) Administration Expenses and payment of notice, estimated at just under $38,000, paid from Defendants' maximum cash payment of $1,200,000 portion of the Settlement Benefits, which will not exceed $38,000 according to representations by KCC to Plaintiffs' counsel;

   (2) Attorneys' fees and costs to Class Counsel, as approved by the Court, up to $780,000, paid from Defendants' maximum cash payment of $1,200,000 portion of the Settlement Benefits;

(3) Incentive/Service Award to Representative Plaintiffs in an amount up to $1,500 each, paid from Defendants' maximum cash payment of $1,200,000 portion of the Settlement Benefits; and,

(4) Payment of reasonable and appropriate costs of litigation (to be itemized), and not to exceed $30,000, paid from Defendants' maximum cash payment of $1,200,000 portion of the Settlement Benefits.

27. Defendants will be permitted to maintain that they deny liability. If the claims administrator approved by the Court determines that a Class Member's cell phone number was not called because it is not on the list of called cell phone numbers according to the information to be provided by Defendants to the claims administrator, that person will not be entitled to file a claim for a monetary payment.

28. The costs of notice by mail and claims administration will be paid as part of the Settlement Benefits.

29. The proposed Settlement contemplates that Class Counsel will request an incentive award in the amount of $1,500 each to be distributed to the two Class Representatives, Erik Knutson and Kevin Lemieux, as proposed by Class Counsel, subject to Court approval. Defendants have agreed not to oppose a request for such incentive award in the agreed-upon amount.

30. The proposed Settlement contemplates that Class Counsel shall be entitled to apply to the Court for an award of attorneys' fees, costs, and expenses to be paid from within the Settlement Benefit. Defendants have agreed not to oppose an application by Class Counsel for an award of attorneys' fees up to $750,000 from the Settlement Benefits, which represents 29.58% of $2,535,280. I believe the excellent results of this Settlement warrant attorneys fees in this amount. Class Counsel also intend to request that the costs of litigation and any costs of Notice and Claims administration, to be paid from the Settlement Benefits.

Class Counsel further intend to also ask for costs of litigation not to exceed $30,000 to be paid from the Settlement Benefit.

31. The attorneys' fees and costs application will be prepared solely by Class Counsel, and any attorneys' fees and costs shall be paid to all counsel through Class Counsel.

32. As Defendants do not necessarily have correct address information for all the past or present customers of NutriSystem, Inc. called by Defendants, Class Notice is to be provided by mail to persons in the class for which Defendants have addresses.

33. The $2,535,280 in Settlement Benefits shall pay for the Settlement. Class Counsel have prepared a direct mail notice and also a formal lengthy Notice in a Question & Answer format to be posted on the Settlement Website that will be created upon preliminary approval of this class action settlement by the Court. Those notices adequately inform the Class Members about the settlement and their rights to opt out or object to the Settlement. I believe the proposed notice complies with any notice requirements. KCC, the Parties' proposed claims administrator, will use the Class List from Defendants containing all Class Members' names and addresses, to send out the direct mail notice within thirty (30) days of preliminary approval, where possible.

34. The claims process requires that the members of the Settlement Class: (i) provide his or her name and current address to which the compensation may be sent; and (ii) provide the telephone number on which he or she received the allegedly unlawful call. Claims may be rejected at Defendants' option if the cell number does not match a number actually called by or on behalf of Defendants. Claims may be submitted via mail or the Settlement Website, as well as by calling the toll-free telephone number.

35. I am unaware of any competing litigation.

///

**RISKS OF CONTINUED LITIGATION**

36. Taking into account the burdens, uncertainty and risks inherent in this litigation, Class Counsel have concluded that further prosecution of this action could be protracted, unduly burdensome, and expensive, and that it is desirable, fair, and beneficial to the class that the action now be fully and finally compromised, settled and terminated in the manner and upon the terms and conditions set forth in the Settlement Agreement, especially since Defendants have filed a motion for summary judgment as to the entire class and a motion to decertify class action.

37. The named Plaintiffs and their counsel believe that the claims asserted in the action have merit. However, taking into account the risks of continued litigation, as well as the delays and uncertainties inherent in such litigation including the risks in any subsequent appeal, they believe that it is desirable that the action be fully and finally compromised, settled and terminated now with prejudice, and forever barred pursuant to the terms and conditions set forth in this Settlement Agreement. Class Counsel have concluded that with the Settlement Benefit and with the deterrent effects of the this Settlement, Class Counsel believe the terms and conditions of this Settlement Agreement are fair, reasonable and adequate to the proposed class, and that it is in the best interests of the proposed class to settle the Action.

38. Additionally, further developments in case law under the TCPA show substantial risks that these types of cases may not be certified. *See Smith v. Microsoft Corp.*, 2014 U.S. Dist. LEXIS 12799 (Class certification denied); *Connelly v. Hilton Grand Vacations Co.*, LLC, 2013 U.S. Dist. LEXIS 157951 (Class certification denied); *Newman v. Americredit Fin. Servs.*, 2014 U.S. Dist. LEXIS 15728, *20 (S.D. Cal. Feb. 3, 2014) (denying renewed motion for preliminary approval of class action settlement).

39. A settlement was finalized, agreed upon by all Parties and counsel and a formal Settlement Agreement was executed. This motion for preliminary approval of class action settlement followed, which Defendants have agreed in the Settlement Agreement not to oppose.

40. The Plaintiffs and the Class will provide a global release to the Released Parties as outlined in the Agreement, § 13. Attached hereto as **Exhibit 1** is a true and correct copy of said global release, which is found in § 13 of the Settlement Agreement.

## CLASS COUNSEL'S EXPERIENCE

41. Kazerouni Law Group, APC and Hyde & Swigart have already been preliminarily confirmed as Class Counsel for purposes of this action. As will be reflected in both my declaration and the declaration to be submitted by Joshua B. Swigart, I am informed and believe that Class Counsel are qualified and able to conduct this litigation as a class action. It is my understanding that Hyde & Swigart is submitting a separate declaration with this unopposed submission in support of their adequacy to continue to serve as Class Counsel.

42. I am an attorney admitted to practice in the State of California and am a partner at Kazerouni Law Group, APC ("KLG"), which has been retained to represent Plaintiffs Erik Knutson and Kevin Lemieux in the above-captioned matter. I am a Partner of the law firm of Kazerouni Law Group, APC, co-counsel of record for Plaintiffs.

43. Since my admission to the California bar in 2007, I have been engaged exclusively in the area of consumer rights litigation, primarily in the area of fair debt collections, the defense of debt collection lawsuits, and class action litigation under the Telephone Consumer Protection Act and California's invasion of privacy statutes, under Penal Code § 630 et seq.

44. Kazerouni Law Group, APC has been preliminarily confirmed as class counsel for purposes of this action. My firm, Kazerouni Law Group, APC, in which I

am a principal, has litigated over 1000 cases in the past six years. My firm has three offices in Orange County, California, San Luis Obispo, California and Las Vegas, Nevada. Kazerouni Law Group, APC has extensive experience in consumer class actions and other complex litigation. My firm has a history of aggressive, successful prosecution of consumer class actions, specifically under California's invasion of privacy statutes and Telephone Consumer Protection Act.

### EXPERIENCE RELEVANT TO THE TELEPHONE CONSUMER PROTECTION ACT

45. I have filed and litigated numerous other class actions based on the Telephone Consumer Protection Act in the past three years. The following is a list of other TCPA class actions which I am or have been personally involved in:

   a. *Lemieux v. EZ Lube, LLC, et al.,* 12-CV-01791-JLS-WYG (S.D. Cal.) (Currently serving as co-lead counsel; motion for preliminary approval of class action settlement filed on February 27, 2014);

   b. *Malta, et al. v. Wells Fargo Home Mortgage, et al*., 10-CV-1290-IEG (BLM) (Served as co-lead counsel for a settlement class of borrowers in connection with residential or automotive loans and violations of the TCPA in attempts to collect on those accounts; obtained a common settlement fund in the amount of $17,100,000; final approval granted in 2013);

   c. *Conner v. JPMorgan Chase Bank, et al*., 10-CV-1284 DMS (BGS) (S.D. Cal.) (Currently serving as co-lead counsel for the settlement class of borrowers in connection with residential loans and TCPA violations stemming from the collection of those accounts);

   d. *In Re: Midland Credit Management, Inc., Telephone Consumer Protection Act Litigation*, 11-md-2286 MMA (MDD) (S.D. Cal.) (Counsel for a Plaintiff in the lead action, prior to the action being recategorized through the multi-district litigation process; still actively involved in the MDL litigation and settlement process);

e. *In Re: Portfolio Recovery Associates, LLC Telephone Consumer Protection Act Litigation*, 11-md-02295-JAH (BGS) (Counsel for a Plaintiff in the lead action, prior to the action being recategorized through the multi-district litigation process; still actively involved in the MDL litigation and settlement process);

f. *Arthur v. SLM Corporation*, 10-CV-00198 JLR (W.D. Wash.) (Nationwide settlement achieving the then-largest monetary settlement in the history of the TCPA: $24.15; final approval granted in 2012);

g. *Lo v. Oxnard European Motors, LLC, et al.*, 11-CV-1009-JLS-MDD (S.D. Cal.) (Achieving one of the highest class member payouts in a TCPA action of $1,331.25 per claimant; final approval granted in 2012);

h. *Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*, 10-01777-AJB-NLS (S.D. Cal.) (Approved as co-lead counsel and worked to obtain a national TCPA class settlement where claiming class members each received payment in the amount of $70.00 per claimant; final approval granted in 2013);

i. *Barani v. Wells Fargo Bank, N.A.*, 12-CV-02999-GPC (KSC) (S.D. Cal.) (Class action settlement under the TCPA for the sending of unauthorized text messages to non-account holders in connection to wire transfers; preliminary approval granted);

j. *Mills v. HSBC Bank Nevada, N.A.*, Case No. 12-CV-04010-SI (N.D. Cal.);

k. *Martin v. Wells Fargo Bank, N.A.*, 12-CV-06030-SI (N.D. Cal.);

l. *Heinrichs v. Wells Fargo Bank, N.A.*, 13-CV-05434-WHA (N.D. Cal.);

m. *Newman v. ER Solutions, Inc.*, 11-CV-0592H (BGS);

n. *In Re Jiffy Lube International, Inc.*, MDL No. 2261 (Finally approved);

o. *Jaber v. NASCAR*, 11-CV-1783 DMS (WVG) (S.D. Cal.);

p. *Ridley v. Union Bank, N.A.*, 11-CV-1773 DMS (NLS) (S.D. Cal.);

q. *Ryabyshchuk v. Citibank (South Dakota) N.A., et al,* 11-CV-1236 IEG (WVG);

r. *Sherman v. Kaiser Foundation Health Plan, Inc.*, 13-CV-0981-JAH (JMA) (S.D. Cal.);

s. *Rivera v. Nuvell Credit Company LLC*, 13-CV-00164-TJH-OP (E.D. Cal);

t. *Karayan v. Gamestop Corp.,* 3:12-CV-01555-P;

u. *Foote v. Credit One Bank, N.A. et al.*, 13-cv-00512-MWF-PLA (C.D. Cal.);

v. *Abdeljalil v. GE Capital Retail Bank*, 12−CV−02078−JAH−MDD (S.D. Cal) (motion for class certification filed; decision pending); and

w. *Webb v. Healthcare Revenue Recovery Group*, 13-cv-00737–RS (N.D. Cal.).

46. Many of the cases listed above, which have settled, have resulted in the creation of combined common funds and/or distribution to class member in the tens of millions of dollars. The outstanding results mentioned above are a direct result of the diligence and tenacity shown by both myself and Kazerouni Law Group, APC, in successfully prosecuting complex class actions.

### KAZEROUNI LAW GROUP, APC'S OTHER CONSUMER RELATED EXPERIENCE AND RESULTS

47. Kazerouni Law Group, APC has extensive experience in other consumer related issues, including the Telephone Consumer Protection Act, the Fair Debt Collection Practices Act and other related consumer statutes. A brief summary of a non-inclusive list of notable published decisions are as follows:

a. *Knell, et al. v. FIA Card Services, N.A.*, 13-CV-01653-AJB-WVG (S.D. Cal.) (California class action settlement under Penal Code 632 et seq., for claims of invasion of privacy. Settlement resulted in a common fund in the amount of $2,750,000; preliminarily approved in January 2014);

b. *Hoffman v. Bank of America Corporation*, 12-CV-00539-JAH-DHB (S.D. Cal.) (California class action settlement under Penal Code 632 et

seq., for claims of invasion of privacy. Settlement resulted in a common fund in the amount of $2,600,000; preliminary approval set for February 18, 2014);

c. *Sherman v. Yahoo!, Inc.*, 2014 U.S. Dist. LEXIS 13286; 13-CV-0041-GPC-WVG (S.D. Cal.) (TCPA class action where Defendant's motion for summary judgment was denied holding that a single call or text message with the use of an ATDS may be actionable under the TCPA);

d. *Olney v. Progressive Casualty Insurance Company*, 13-CV-2058-GPC-NLS, 2014 U.S. Dist. LEXIS 9146 (S.D. Cal.) (Defendant's motion to dismiss or in the alternative to strike the class allegations was denied finding that debt collection calls were not exempt from coverage under the TCPA); and,

e. *Iniguez v. The CBE Group, Inc.*, 2013 U.S. Dist. LEXIS 127066 (E.D. Cal.); 13-CV-00843-JAM-AC (The court denied Defendant's motion to dismiss and to strike class allegations holding that the TCPA applies to any call made to a cellular telephone with an ATDS).

### ADDITIONAL RELEVANT TRAINING, SPEAKING/TEACHING ENGAGEMENTS AND ASSOCIATIONS

48. I have undergone extensive training in the area of consumer law and the Telephone Consumer Protection Act. The following is a list of recent training conferences I attended:

   a. Four-day National Consumer Law Center Conference; Nashville, TN – 2008;

   b. Three-day National Consumer Law Center Conference; Portland, OR - 2008;

   c. Three-day National Consumer Law Center Conference; San Diego, CA - 2009;

     d. Three-day National Consumer Law Center Conference; Seattle, WA - 2011; and

     e. Speaker ABA National Conference, Business Litigation Section; Trends in Consumer Litigation; San Francisco, CA - 2013.

49. As one of the main plaintiff litigators of consumer rights cases in the Southern of California, I have been requested to and have made regular presentations to community organizations regarding debt collection laws and consumer rights. These organizations include Whittier Law School, Iranian American Bar Association, Trinity School of Law and Chapman Law School, University of Southern California, Irvine, and California Western School of Law. I was the principle anchor on Time Television Broadcasting every Monday night, as a consultant on consumer law for over a year in 2012.

50. I am an adjunct professor at California Western School of Law where I teach a three credit course in consumer law.

51. I am a member in good standing of the following local and national associations:

     a. National Association of Consumer Advocates;

     b. Federal Bar Association;

     c. American Association for Justice;

     d. Orange County Bar Association.

52. I have been appointed class counsel in several class actions brought under the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 (TCPA). My practice involves significant TCPA litigation and I am or have been counsel in significant national TCPA class actions including, but not limited to, class actions against Bank of America, Chase and Wells Fargo, to mention a few.

53. In addition to my class action experience, I have experience in commercial litigation and large-scale products liability litigation including a $2.5 million dollar settlement in *Mei Lu Hwei, et al v. American Honda Motor Co., Inc.*, et

al. (Case No. BC401211 in Superior Court of California for County of Los Angeles). I have regularly litigated cases in state and federal courts, and have reached numerous confidential seven-figure settlements against internationally known companies.

### UNPUBLISHED DECISIONS

54. Attached hereto as **Exhibit 3** is a true and correct copy of the Final Judgment and Order of Dismissal With Prejudice in *Kazemi v. Payless Shoesource, Inc. et al.*, 3:09-cv-05142-EMC, Dkt. No. 94 (N.D. Cal. April 2, 2012).

55. Attached hereto as **Exhibit 4** is a true and correct copy of the Order granting preliminary approval of class action settlement in *Wojcik v. Buffalo Bills, Inc.*, 8:12-cv-2414-SDM-TBM (M.D. Florida April 17, 2014).

56. Attached hereto as **Exhibit 5** is a true and correct copy of the Order granting preliminary approval of class action settlement in *Friedman v. LAC Basketball Club, Inc.*, 13-cv-00818-CBM-AN (C.D. Cal. April 29, 2014).

57. Attached hereto as **Exhibit 6** is a true and correct copy of the settlement agreement in *Friedman v. LAC Basketball Club, Inc.*, 13-cv-00818-CBM-AN (C.D. Cal.), accessed on May 1, 2014 from the website located at www.lactcpasettlement.com.

I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on May 5, 2014.

By: /s/ Abbas Kazerounian
Abbas Kazerounian