# PLAINTIFFS′ EXHIBIT 1

Class Action Settlement Agreement and Exhibits Thereto

---

**In The Case Of**

*Erik Knutson and Kevin Lemieux, Individually and On Behalf of All Others Similarly Situated*

**v.**

*Schwan's Home Service, Inc. and Customer Elation, Inc.*

**12-CV-00964-GPC (DHB)**

**KAZEROUNI LAW GROUP, APC**
**2700 NORTH MAIN STREET, SUITE 1000, SANTA ANA, CA 92705**
**(800) 400−6808**

# SETTLEMENT AGREEMENT

This Settlement Agreement is made by and between Plaintiffs Erik Knutson and Kevin Lemieux, on behalf of themselves and the Class (as hereinafter defined), on the one hand, and Defendants Schwan's Home Service, Inc. ("Schwan's," jointly the "Defendants") and Customer Elation, Inc. ("Customer Elation," jointly the "Defendants") (collectively the "Parties"), on the other hand.  This Agreement fully and finally compromises and settles any and all Telephone Consumer Protection Act ("TCPA") claims that were or could have been asserted in the lawsuit styled as *Knutson, et al. v. Schwan's Home Service, Inc., et al.*, Case No. 3:12-cv-00964-GPC-DHB (S.D. Cal.).

WHEREAS, on April 18, 2012, Plaintiff Erik Knutson, individually and on behalf of a putative class of "all persons within the United States who received any telephone call from Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system or with an artificial or prerecorded voice, which call was not made for emergency purposes or within the recipient's prior express consent, within the four years prior to the filing of this Complaint," filed a Complaint in the United States District Court for the Southern District of California alleging violations of the TCPA.

WHEREAS, Knutson filed a First Amended Complaint on December 4, 2012, adding Plaintiff Kevin Lemieux, and a Second Amended Complaint on February 20, 2013, adding Defendant Customer Elation.  Each amended complaint brought claims on behalf of the same putative class.

WHEREAS, Plaintiffs alleged that calls made by Defendants violated the TCPA when made to cellular telephones without prior express consent.

WHEREAS, Plaintiffs alleged that they and other similarly situated individuals suffered various injuries as a result of the calls, including incurring certain telephone charges, a reduction in the cellular telephone time for which they

had previously paid, and the inconvenience of having to retrieve or administer messages left by Defendants.

WHEREAS, Defendants answered the Second Amended Complaint and denied Plaintiffs' claims of liability and damages.

WHEREAS, on September 5, 2013, the Court entered an Order granting Plaintiffs' motion for class certification.  The Court certified a class consisting of "[a]ll persons who are past or present customers of NutriSystem, Inc. who had or have a number assigned to a cellular telephone service, which number was called by Defendants using an automatic telephone dialing system and/or prerecorded voice between April 18, 2008 and August 31, 2012.  Excluded from the class are persons who Defendants called for emergency purposes and persons who gave express consent to Defendants to call their cellular telephone number prior to Defendants first placing a call using an automatic telephone dialing system and/or an artificial or prerecorded voice."

WHEREAS, on December 9, 2013, the Court appointed Erik Knutson and Kevin Lemieux as class representatives.

WHEREAS, on December 9, 2013, the Court appointed the law firms of Kazerouni Law Group, APC and Hyde & Swigart as Class Counsel.

WHEREAS, Class Counsel have conducted investigations relating to the claims and the underlying events and transactions alleged in the Action, have analyzed the evidence adduced during extensive discovery, including nine depositions, and have researched the applicable law with respect to Plaintiffs' claims against Defendants and the potential defenses thereto.

WHEREAS, the Parties have engaged in significant motions practice. Plaintiffs filed a motion for summary judgment as to their individual claims on July 5, 2013.  Defendants filed a motion for summary judgment as to the entire class on December 2, 2013, arguing that Plaintiffs gave their prior express consent to receive the telephone calls at issue.  On December 11, 2013, Defendants filed a motion to

decertify the class or, in the alternative, amend the class definition based on forum selection and arbitration clauses in NutriSystem, Inc.'s terms and conditions and privacy policy.

WHEREAS, the Parties determined that a resolution of the Action is beneficial from the point of view of all Parties.

WHEREAS, this Agreement resulted from good faith, arm's length settlement negotiations over several months, including two mediation sessions, one before the Honorable Leo Papas, retired Magistrate Judge of the U.S. District Court for the Southern District of California, and one before the Honorable Leo Wagner, retired Magistrate Judge of the U.S. District Court for the Northern District of Oklahoma.   Prior to these mediations, Defendants provided Plaintiffs with extensive information concerning their claims, including data regarding telephone calls placed to putative class members, and such information was analyzed by a third party expert engaged by Plaintiffs.   The Parties also participated in direct discussions about possible resolution of this litigation, including numerous telephonic meetings.

WHEREAS, based upon their investigation and discovery as set forth above, the Class Representatives and Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate to Plaintiffs, and are in their best interests, and the Class Representatives have agreed to settle the claims raised in the Action pursuant to the terms and provisions of this Agreement, after considering (a) the substantial benefits that the Class Members will receive from a settlement of the Action, (b) the uncertain outcome and attendant risks of litigation, (c) the delays inherent in litigation, and (d) the desirability of permitting the Settlement of this litigation to be consummated as provided by the terms of this Agreement.

WHEREAS, Defendants deny any wrongdoing whatsoever, and this Agreement shall in no event be construed or deemed to be evidence of or an

admission or concession on the part of any Defendant with respect to any claim of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the Defendants have asserted or would assert.

WHEREAS, it is the intention of the Parties to resolve the disputes and claims which they have between them on the terms set forth below.

NOW, THEREFORE, the Parties, in consideration of the promises, covenants, and agreements herein described and for other good and valuable consideration acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree as follows:

1.    **Definitions.**

As used in this Settlement Agreement, the following terms shall have the meanings indicated.

1.1.   "Action" means the action captioned as *Erik Knutson, et al. v. Schwan's Home Service, Inc., et al.*, Case No. 3:12-cv-00964-GPC-DHB in the United States District Court for the Southern District of California.

1.2.   "Administrative Expenses" means all of the expenses incurred in the administration of this Settlement, including, without limitation, all expenses or costs associated with providing notice to the Class, locating Class Members, the fairness hearing, notice of final approval of the Settlement, claims processing, and mailing of claimed settlement proceeds.

1.3.   "Agreement" or "Settlement Agreement" means this Settlement Agreement.

1.4.   "Claim Form" means the document to be submitted by Class Members seeking cash or product vouchers pursuant to this Settlement Agreement.  The Claim Form will be mailed to Class Members and available online at the Settlement Website.  It will be substantially the

same as the attached Exhibit D.

1.5.   "Claims Deadline" means 90 days from the date Class Notices are mailed to Class Members.

1.6.   "Class" means the class certified in this Action on September 5, 2013 by Judge Curiel consisting of:

All persons who are past or present customers of NutriSystem, Inc., who had or have a number assigned to a cellular telephone service, which number was called by Defendants using an automatic telephone dialing system and/or an artificial or prerecorded voice between April 18, 2008 and August 31, 2012. Excluded from the Class are persons who Defendants called for emergency purposes or persons who gave express consent to Defendants to call their cellular telephone number prior to Defendants first placing a call using an automatic telephone dialing system and/or artificial or prerecorded voice. Also excluded from the Class are Defendants, their officers and directors, families and legal representatives, heirs, successors or assigns and any other entity in which Defendants have a controlling interest, any judge assigned to this case and their immediate families. [Dkt. No. 119]

1.7.   "Class Counsel" means the law firms of Kazerouni Law Group, APC and Hyde & Swigart.

1.8.   "Class List" means the list of Class Members provided by Defendants, subject to agreement by all Parties as to the accuracy of the list.  Such list shall include the telephone numbers identified as wireless by Defendants' consultant from the telephone numbers produced by Defendants on August 26, 2013. Defendants represent for settlement purposes that the estimated size of the Class includes 16,691 cellular telephone numbers dialed.

1.9.   "Class Member" means any person who is a member of the Class as identified by the Class List, including but not limited to named Plaintiffs Erik Knutson and Kevin Lemieux.

1.10. "Class Notice" means the Notice of Proposed Settlement of Class Action, which is to be sent to Class Members substantially in the form attached hereto as Exhibit C-1.

1.11. "Class Period" means from April 18, 2008 through August 31, 2012.

1.12. "Class Representatives" means Erik Knutson and Kevin Lemieux.

1.13. "Complaint" means the Second Amended Complaint for Damages and Injunctive Relief Pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. filed on February 20, 2013 in the Action.

1.14. "Court" means the United States District Court for the Southern District of California.

1.15. "Defendants" means Schwan's Home Service, Inc. and Customer Elation, Inc.

1.16. "Effective Date" means the date upon which the Settlement contemplated by this agreement shall become effective as set forth in Section 12 hereof.

1.17. "Fee and Expense Award" means the amount awarded to Class Counsel by the Court for attorneys' fees, costs, and expenses, up to $750,000 (30% of total settlement) for attorneys' fees and $30,000 for costs and expenses.

1.18. "Final Fairness Hearing" means the hearing to be conducted by the Court to determine the fairness, adequacy, and reasonableness of the Settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure and whether to issue the Final Settlement Approval Order and Judgment.

1.19. "Final" or "Finality," with respect to the Final Settlement Approval Order and Judgment means: (1) if no appeal is filed, the first business day after the last date on which any appeal from the Final Settlement Approval Order and Judgment can be timely filed or noticed under the

corresponding rules of the applicable court or legislation for filing or noticing appeals; or (2) if there is an appeal from the Final Settlement Approval Order and Judgment, whether timely or untimely, the first business day after the later of the date on which (a) any appeal from the Final Settlement Approval Order and Judgment is finally dismissed, (b) if the Final Settlement Approval Order and Judgment is affirmed, a petition for writ of *certiorari* or other form of review is denied or the time for filing such a petition expires, or (c) if *certiorari* or other form of review is granted, final affirmance of the Final Settlement Approval Order and Judgment following review pursuant to that grant is ordered.   Any proceeding or order, or any appeal or petition for a writ of *certiorari* or other form of review pertaining solely to any application for attorneys' fees, costs, or expenses shall not in any way delay or preclude the Final Settlement Approval Order and Judgment from becoming Final.

1.20.   "Final Settlement Approval Order and Judgment" means an Order by the United States District Court for the Southern District of California finally approving the Settlement and the terms of this Agreement substantially in the form attached hereto as Exhibit A and a Judgment dismissing with prejudice all claims against Defendants Schwan's Home Service, Inc. and Customer Elation, Inc., substantially in the form attached hereto as Exhibit B.

1.21.   "Parties" means Erik Knutson, Kevin Lemieux, the Class, Schwan's Home Service, Inc., and Customer Elation, Inc.

1.22.   "Person" means an individual or legal entity or their respective successors or assigns.

1.23.   "Plaintiff" or "Plaintiffs" means Erik Knutson, Kevin Lemieux, and the Class.

1.24.   "Preliminary Settlement Approval Order" means an order by the Court preliminarily approving this Agreement, including the forms and procedure for providing notice to the Class, establishing a procedure for Class Members to follow in order to object to the Settlement set forth in this Agreement, and setting a date for a hearing for final Settlement approval substantially in the form attached as Exhibit C.

1.25.   "Released Claim" means any claim, liability, right, demand, suit, obligation, damage, including consequential damages, losses or costs, punitive damages, attorneys' fees and costs, actions or causes of action, of every kind or description that any Class Members, individually or collectively, have, had, or may have against the Released Parties, whether known or Unknown (as the term "Unknown Claims" is defined herein), suspected or unsuspected, asserted or unasserted, accrued or which may hereafter accrue, regardless of legal or equitable theory and the type of relief or damages claimed, based upon, arising out of, or related in any way to the Released Parties using any "automatic telephone dialing system" and/or any "artificial or prerecorded voice" to make any call, or attempt to make any call, to any telephone number assigned to a cellular telephone service, to the fullest extent those terms are used, defined, or interpreted by the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, and any other statutory or common law claim arising from the use of automatic telephone dialing systems and/or an artificial or prerecorded voice to call cellular telephones.  "Released Claim" does not include all claims, rights or causes of action or liabilities whatsoever related to the enforcement of the Settlement, including, without limitation, any of the terms of this Agreement or orders or judgments issued by courts in connection with the Settlement.

1.26.  "Released Parties" means Schwan's Home Service, Inc. and Customer Elation, Inc. and their past, present, and future successors, predecessors, parents, related organizations, subsidiaries, divisions, departments, or affiliates and any of their past, present, and future officers, directors, stockholders, partners, agents, attorneys, servants, subrogees, insurers, employees, representatives, assigns, consultants, principals, and advisors.

1.27.  "Settlement" means the settlement of the Action by and between the Parties, and the terms thereof as stated in this Settlement Agreement.

1.28.  "Settlement Class" means all Settlement Class Members collectively.

1.29.  "Settlement Class Member" means any Class Member who has not timely elected to "opt out" of the settlement described in this Settlement Agreement.

1.30.  "Settlement Website" means the website operated pursuant to Paragraph 6.2.

1.31.  "Unknown Claims" means any and all Released Claims that any of the Plaintiffs does not know or suspect to exist in his, her, or its favor as of the Effective Date and which, if known by him, her, or it, might have affected his, her, or its decision(s) with respect to the Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, Plaintiffs shall have waived any and all provisions, rights, and benefits conferred by Cal. Civ. Code § 1542, and any similar, comparable, or equivalent law of any state of the United States, or principle of common law or otherwise.   Cal. Civ. Code § 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Class Representatives and Class Counsel acknowledge, and each Class Member by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement.

**2.     Settlement Purposes Only.**

2.1.   This Agreement is for settlement purposes only, and to the fullest extent permitted by law, neither the fact of, nor any provision contained in this Agreement, nor any actions taken hereunder, shall constitute, be construed as, or used as, or be admissible in evidence as, an admission of the validity of any claim or any fact alleged by Plaintiffs in this action or in any other pending or subsequently filed action, or of any wrongdoing, fault, violation of laws, or liability of any kind on the part of Defendants, or admission by any of the Parties of the validity, or lack thereof, of any claim, allegation, or defense asserted in the Action or any other action.

2.2.   Class Representatives, Defendants, and their respective counsel shall limit public comments regarding the terms of the Settlement to disclosure of such information as is necessary to implement this Agreement.

**3.     Representations.**

3.1.   Each Party represents that (i) such Party has full legal right, power, and authority to enter into and perform this Agreement, subject to Court approval, (ii) the execution and delivery of this Agreement by such Party and the consummation by such Party of the transactions

contemplated by this Agreement have been duly authorized by such Party, (iii) this Agreement constitutes a valid, binding, and enforceable agreement, and (iv) such Party has not assigned any of the claims referred to herein to any other person or entity and no consent or approval of any person or entity is necessary for such Party to enter into this Agreement.

**4. Settlement Consideration.**

4.1.   Defendants will provide benefits to or on behalf of the Settlement Class as follows:

(a)   Defendants will pay up to $1,200,000 in cash for the payment of the following: (i) valid claims for cash benefits submitted by Settlement Class Members pursuant to Section 5 below; (ii) up to $38,000 for Notice and other Administrative Expenses; and (iii) the Fee and Expense Award, as described in Section 10 below; and

(b)   Defendants will provide up to $1,335,280 in vouchers for those Settlement Class Members who claim vouchers for Schwan's products pursuant to Section 5 below.

4.2.   Defendants' total financial commitment under this Settlement Agreement, including but not limited to Paragraphs 4.1(a) and 4.1(b), shall not exceed a total of $2,535,280, consisting of a maximum cash contribution of $1,200,000 and a maximum in Schwan's product vouchers of $1,335,280.

4.3.   <u>Cash Payment.</u>  Each Settlement Class Member may file a claim that will, if valid, entitle him or her to $20 in the form of a check.  Each Settlement Class Member will be limited to one cash payment.  There shall be no restrictions imposed by the issuer that would prevent a Settlement Class Member from depositing the check to a checking or

other bank account.  If the claims made by the Class would otherwise cause the total cash payout to Settlement Class Members to exceed $385,000, then the amount of each cash payment will be reduced proportionately such that the total payout will not exceed $385,000. The check shall be non-transferrable and shall expire 120 calendar days after it is issued.

4.4.    Vouchers.  Each Settlement Class member may file a claim that will, if valid, entitle him or her to a voucher for Schwan's products in the amount of $80.  Each Settlement Class Member will be limited to one voucher.   The Schwan's voucher shall not be redeemable for cash, shall be non-transferrable, and shall expire two years after it is issued. There shall be no issuer fees imposed on the recipient of a voucher.

4.5.    The value of any check or voucher shall remain the property of the issuer, Defendants or any of them, unless and until it is expended by the Settlement Class Member.   Upon expiration of any check or voucher, any unexpended funds shall become the permanent property of the issuer.

4.6.    The Parties acknowledge and agree that any and all provisions, rights, or benefits conferred by any law of any state or territory of the United States, or any principle of common law, that provides for how residual amounts in a settlement fund should be distributed, including, but not limited to, California Code of Civil Procedure section 384(b), are not applicable to this Settlement Agreement.   Although the parties expressly agree that this settlement is not governed by California Code of Civil Procedure section 384(b) or any other similar laws and does not create a settlement fund nor any "unpaid residue," the Class Representatives on behalf of themselves and the Settlement Class Members nonetheless expressly acknowledge and agree that, to the

extent permitted by law, they are waiving any protections of California Code of Civil Procedure section 384(b) and of any comparable statutory or common law provision of any other jurisdiction.

4.7. The Parties acknowledge and agree that the forms of compensation set forth in Section 4 do not constitute gift cards, gift certificates, or member rewards cards under any federal and/or state laws.

**5.     Claims Process.**

5.1. Each Settlement Class Member shall be entitled to submit a claim for both a cash payment and a voucher for Schwan's products, subject to the limitations described below.

5.2. In order to make a claim, a Settlement Class Member must either (i) submit a claim online at the Settlement Website or (ii) submit a completed Claim Form to the addressee identified on the Claim Form. All claims must be submitted at the Settlement Website or postmarked by the Claims Deadline as set forth in the Class Notice. Any Claim Form submitted or postmarked after the Claims Deadline shall be deemed untimely and an invalid claim.

5.3. Each Settlement Class Member will be required to (i) provide his or her name and current address to which the compensation may be sent; (ii) attest that he/she received a call on his/her cellular telephone without his/her consent; and (iii) provide the telephone number on which he or she received the allegedly unlawful call. If the claimant's name and cellular telephone number match the name and number on the Class List, and the claimant validly completes the attestation, that claim will be approved, subject to the limitation that only one claim, including both cash and voucher, will be paid to each Settlement Class Member.

5.4. To the extent that the claims administrator receives a correctly completed Claim Form from a qualifying Settlement Class Member, the claims administrator shall issue compensation to that Settlement Class Member within 60 days of the later of (i) the Effective Date or (ii) receipt of such completed Claim Form.  The claims administrator will provide written verification to the Parties within 10 days of mailing out the settlement compensation to each class member making a valid claim.   Such verification will include the name of each qualifying Settlement Class Member.

6. **Class Notice.**

6.1. <u>Class Notice.</u>   A copy of the Notice of Class Action Settlement substantially in the form attached hereto as Exhibit C-1 (the "Class Notice"), shall be mailed by first class mail to every Class Member within 30 days after the entry of the Preliminary Settlement Approval Order.  Such mailing shall be completed by a claims administrator at the expense of Schwan's.   Defendants shall provide the claims administrator with the list of Class Members used for this mailing.

6.2. <u>Settlement Website.</u>   A claims administrator shall establish and maintain a Settlement Website that (i) enables Class Members to submit a claim and access and download the Class Notice and Claim Form, (ii) provides contact information for Class Counsel, (iii) and provides access to relevant documents. Such documents shall include the Settlement Agreement and Class Notice; the Preliminary Settlement Approval Order; a downloadable Claim Form for anyone wanting to print a hard copy and mail in the Claim Form; the Second Amended Complaint; a list of frequently asked questions and answers, attached hereto as Exhibit C-2; and when filed, the Final Settlement Approval Order.  The Class Notice shall include the address (URL) of

the Settlement Website.   The claims administrator shall maintain the Settlement Website until at least 30 days following final approval of the Settlement pursuant to Paragraph 1.19.

6.3.  Toll-Free Telephone Number.   By the date required by the Court to send out notice, the claims administrator shall set up a toll-free telephone number for receiving toll-free calls related to the Settlement. That telephone number shall be maintained until 30 days after the Claims Deadline.   After that time, and for a period of 90 days thereafter, either a person or a recording will advise any caller to the toll-free telephone number that the Claims Deadline has passed and the details regarding the Settlement may be reviewed on the related Settlement Website.

6.4.  Opt-Out.  The Class Notice shall provide a procedure whereby Class Members may exclude themselves from the Class by mailing a request for exclusion.   Any Class Member who does not validly request exclusion within 90 days from the date the Class Notice is sent shall be a Settlement Class Member and shall be bound by the terms of this Agreement.

6.5.  Objections.  The Class Notice shall also provide a procedure for Class Members to object to the settlement set forth herein and/or to the attorneys' fees and costs for which Class Counsel will petition the Court.  Objections must be received within 90 days from the date the Class Notice is sent.

6.6.  Press Release.   Class Counsel may issue a neutrally worded press release, the contents of which have been agreed to in advance by all Parties.  If issued, the purpose of the press release will be to facilitate Class Members learning about the settlement, and to provide instructions on how they may obtain additional information about the

settlement.   The press release will announce that the Action has been settled and will include the URL for the Settlement Website.

6.7.   <u>CAFA Notice.</u>   Defendants, or a representative entity that they retain, will serve the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, at Defendants' expense.

**7.    Settlement Administration**

7.1.   A claims administrator, to be agreed upon by both parties and paid for by Defendants, shall be responsible for administrative tasks, including, without limitation, (a) arranging for distribution of the Class Notice and Claim Forms to Settlement Class Members, (b) making any mailings to Settlement Class Members required under the terms of this Agreement, (c) answering written inquiries from Settlement Class Members and/or forwarding such inquiries to Class Counsel or their designee, (d) receiving and maintaining on behalf of the Court and the Parties any Settlement Class Member correspondence regarding requests for exclusion from the Settlement, (e) establishing the Settlement Website that posts notices, Claim Forms, and other related documents, (f) establishing the toll-free telephone number, (g) receiving and processing claims and distributing payments to Settlement Class Members, and (h) otherwise assisting with implementation and administration of the Settlement Agreement terms. Defendants shall have the right to approve all communications between the claims administrator and class members.

7.2.   Up to $38,000 of any Administrative Expenses shall be taken from Defendants' maximum cash payment of $1,200,000 to defray Defendants' costs of administering the settlement.   The administrative costs shall not exceed $38,000.

**8.      Obtaining Court Approval of the Agreement.**

8.1.    Promptly upon the execution of this Agreement, Class Counsel will file a motion for preliminary approval of the Settlement with the Court.  Defendants agree not to oppose such motion.

8.2.    Class Counsel shall apply to the Court for entry of a Preliminary Settlement Approval Order, substantially in the form attached hereto as Exhibit C.   Such Order shall include approval for the mailing of a Class Notice substantially in the form of Exhibit C-1 attached hereto.

8.3.    Class Counsel shall request that, after Class Notice is given, the Court hold a hearing and enter a Final Settlement Approval Order and Judgment for the litigation.

8.4.    If the Court does not preliminarily approve the settlement described in this Agreement, the Agreement shall terminate and be of no force or effect, unless the Parties voluntarily agree to modify this Agreement in the manner necessary to obtain preliminary approval of the settlement described herein.

8.5.    If the Court does not grant final approval of the settlement described in this Agreement, the Agreement shall terminate and be of no force or effect, unless the parties voluntarily agree to modify this Agreement in the manner necessary to obtain final approval of the settlement described herein.

**9.      Withdrawal from Settlement.**

9.1.    If any of the conditions set forth below occurs and either (a) all Class Representatives or (b) Defendants give notice that such party or parties wish to withdraw from this Agreement, then this Agreement shall terminate and be null and void:

(a) any objections to the proposed settlement are sustained, which results in changes to the settlement described in this Agreement that

the withdrawing Party deems in good faith to be material (e.g., because it increases the cost of settlement or deprives the withdrawing Party of a benefit of the settlement);

(b) the final approval of the settlement described in this Agreement results in changes that the withdrawing Party did not agree to and that the withdrawing Party deems in good faith to be material (e.g., because it increases the cost of settlement or deprives the withdrawing Party of a benefit of the settlement);

(c) more than 1% of the Class Members exclude themselves from the settlement described in this Agreement;

(d) the final approval of the settlement described in this Agreement is (i) substantially modified by an appellate court and the withdrawing Party deems any such modification in good faith to be material (e.g., because it increases the cost of settlement or deprives the withdrawing Party of a benefit of the settlement) or (ii) reversed by an appellate court.

**10.    Attorneys' Fees and Expenses.**

10.1.  Class Counsel will petition the Court for an award of attorneys' fees and costs not to exceed a cumulative total of $780,000, including up to $750,000 in fees and $30,000 in costs.  The Fee and Expense Award shall be the total obligation of Defendants to pay Class Counsel for attorneys' fees, costs, and/or expenses of any kind (including, but not limited to, travel, filing fees, court reporter, and videographer expenses, expert fees and costs, and document review and production costs).  Defendants shall not object to fees and costs sought by Class Counsel to the extent fees and costs sought do not exceed a cumulative total of $780,000, including up to $750,000 in fees and $30,000 in costs.

10.2. Defendants shall pay the Fee and Expense Award by wire transfer or check to Class Counsel, specifically "Kazerouni Law Group, APC" within 10 business days after the later of (i) any Order awarding fees and costs to Class Counsel becoming Final, (ii) final approval of the Settlement pursuant to Paragraph 1.19, and (iii) the delivery to Defendants of all payment routing information and tax I.D. numbers for Class Counsel.

(a) Solely for purposes of this Paragraph, "Final" with respect to any Order awarding fees and costs to Class Counsel means: (1) if no appeal is filed, the first business day after the last date on which any appeal from such Order can be timely filed or noticed under the corresponding rules of the applicable court or legislation for filing or noticing appeals; or (2) if there is an appeal from the Order, whether timely or untimely, the first business day after the later of the date on which (a) any appeal from the Order is finally dismissed, (b) if the Order is affirmed in whole or in part, a petition for writ of *certiorari* or other form of review is denied or the time for filing such a petition expires, or (c) if *certiorari* or other form of review is granted, final judgment following review pursuant to that grant is ordered.

(b) Class Counsel shall be responsible for allocating and shall allocate all attorneys' fees, costs, and expenses that are awarded by the Court and paid by Defendants amongst and between Class Counsel, and Defendants shall have no responsibility, role, or liability in connection with such allocation.

**11. Incentive Award to Class Representatives.**

11.1. Class Counsel will petition the Court for incentive payments for the time and effort the named Plaintiffs have personally invested in this

Action.  Defendants shall not object to such incentive payments to be paid to the named Plaintiffs, Erik Knutson and Kevin Lemieux out of the maximum $1,200,000 to be paid in cash by Defendants, provided the incentive payments requested do not exceed up to $1,500 for each named Plaintiff, subject to Court approval.   Within 10 days of the Effective Date and after receipt of payees' completed W-9 forms, Defendants shall pay to Class Counsel the amount of any incentive payments awarded by the Court, and Class Counsel shall disburse such funds to the named plaintiffs.

**12.    Effective Date and Termination.**

12.1.   The Effective Date of the Settlement shall be the date on which all of the following conditions of settlement have occurred:

(a) entry by the Court of the Preliminary Settlement Approval Order substantially in the form attached as Exhibit C;

(b) approval by the Court of the Settlement, following Class Notice (substantially in the form attached as Exhibits C-1) to the Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

(c) entry by the Court of the Final Settlement Approval Order and Judgment substantially in the form attached as Exhibits A and B and such Order and Judgment becoming Final.

(d) Except as otherwise provided herein, in the event the Settlement is terminated or withdrawn, the Parties to this Agreement, including Class Members, shall be deemed to have reverted to their respective status in the Action immediately prior to the execution of this Agreement and, except as otherwise expressly provided, the Parties shall proceed in all respects as if this Agreement and any related Orders had not been entered.

---

Class Action Settlement Agreement

3:12-cv-00964-GPC-DHB

**13.  Release.**

13.1.  Plaintiffs absolutely and unconditionally release and discharge any and all Released Claims against any and all Released Parties, but such release shall become null and void if the Settlement does not become Final.

13.2.  The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes that risk of such possible difference in facts, and agrees that this Agreement shall remain effective notwithstanding such difference in facts.  The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief and knowledge and that each Party does not rely on inducements, promises or representations made by anyone other than those embodied herein.

13.3.  Notwithstanding any other provision of this Agreement (including, without limitation, this Section), nothing in this Agreement shall be deemed to in any way impair, limit, or preclude the Parties' rights to enforce any provision of this Agreement, or any court order implementing this Agreement, in a manner consistent with the terms of this Agreement.

**14.  No Admission of Wrongdoing.**

14.1.  This Agreement, whether or not consummated, and any proceedings taken pursuant to it:

(a) shall not be offered or received against any Defendant as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Defendant with respect to the truth of any fact alleged by any Plaintiff or the validity of any claim that has been or could have been asserted in the Action or in any

litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, breach of duty, or wrongdoing of any Defendant;

(b) shall not be offered or received against any Defendant as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by any Defendant;

(c) shall not be offered or received against any Defendant as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, breach of duty, or wrongdoing, or in any way referred to for any other reason as against any Defendant, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; provided, however, that if this Agreement is approved by the Court, the Parties may refer to it to effectuate the liability protection granted them hereunder;

(d) shall not be construed against any Defendant as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; and

(e) shall not be construed as or received in evidence as an admission, concession, or presumption against any Class Representative or any member of the Class that any of their claims are without merit, or that any defenses asserted by any Defendants have any merit, or that damages recoverable under the Action would not have exceeded the maximum amount to be paid through cash and voucher claims.

**15.   Miscellaneous Provisions.**

15.1.   <u>Further Steps.</u>  The Parties agree that each shall undertake any required steps to effectuate the purposes and intent of this Agreement.

15.2.   <u>Representation by Counsel.</u>   The Class Representatives and Defendants represent and warrant that they have been represented by, and have consulted with, the counsel of their choice regarding the provisions, obligations, rights, risks, and legal effects of this Agreement and have been given the opportunity to review independently this Agreement with such legal counsel and agree to the particular language of the provisions herein.

15.3.   <u>Contractual Agreement.</u>   The Parties understand and agree that all terms of this Agreement are contractual and are not a mere recital, and each signatory warrants that he or she is competent and possesses the full and complete authority to execute and covenant to this Agreement on behalf of the Party that he or she represents.

15.4.   <u>Change of Time Periods.</u>   The time periods and/or dates described in this Settlement Agreement with respect to the giving of notices and hearings are subject to approval and change by the Court or by written agreement of Class Counsel and Defendants' counsel, without notice to Settlement Class Members.   The Parties reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this Settlement Agreement.

15.5.   <u>Integration.</u>   This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof.   This Agreement supersedes all prior representations, agreements, understandings, both written and oral, among the Parties, or any of them, with respect to the subject matter of

this agreement.   No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein, and no Party is relying on any prior oral or written representations, agreements, understandings, or undertakings with respect to the subject matter of this Agreement.

15.6.   <u>Drafting.</u>   The Parties agree that no single Party shall be deemed to have drafted this Settlement Agreement, or any portion thereof, for purpose of the invocation of the doctrine of *contra proferentum*.   This Settlement Agreement is a collaborative effort of the Parties and their attorneys.

15.7.   <u>Modification or Amendment.</u>   This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by the Persons who executed this Agreement or their successors-in-interest.

15.8.   <u>Waiver.</u>   The failure of a Party hereto to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or remedies or a waiver by such Party of any default by another Party in the performance or compliance of any of the terms of this Agreement.   In addition, the waiver by one Party of any breach of this Agreement by another Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

15.9.   <u>Severability.</u>   Should any part, term, or provision of this Agreement be declared or determined by any court or tribunal to be illegal or invalid, the Parties agree that the Court may modify such provision to the extent necessary to make it valid, legal, and enforceable.   In any event, such provision shall be separable and shall not limit or affect the validity, legality, or enforceability of any other provision hereunder. Provided, however, that the terms of this Paragraph shall not apply

should any court or tribunal find any part, term, or provision of the release, as set forth in Section 12, to be illegal or invalid.

15.10. <u>Successors.</u>    This Settlement Agreement shall be binding upon and inure to the benefit of the heirs, successors, and assigns of the Parties thereto.

15.11. <u>Governing Law.</u>    All terms and conditions of this Settlement Agreement shall be governed by and interpreted according to the laws of the State of California, without reference to its conflict of law provisions, except to the extent the federal law of the United States requires that federal law governs.

15.12. <u>Interpretation.</u>

(a) Definitions apply to the singular and plural forms of each term defined.

(b) Definitions apply to the masculine, feminine, and neuter genders of each term defined.

(c) Whenever the words "include," "includes," or "including" are used in this Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

15.13. <u>No Precedential Value.</u>    The Parties agree and acknowledge that this Agreement carries no precedential value.

15.14. <u>Fair & Reasonable.</u>    The Parties and their counsel believe that this Agreement is a fair and reasonable compromise of the disputed claims, in the best interest of the Parties, and have arrived at this Agreement as a result of extensive arms-length negotiations.

15.15. <u>Retention and Jurisdiction.</u>    The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction over the Settlement and the Parties for the purpose of enforcing the terms of

this Agreement.

15.16. <u>Headings.</u>   Any headings contained herein are for informational purposes only and do not constitute a substantive part of this Agreement.   In the event of a dispute concerning the terms and conditions of this Agreement, the headings shall be disregarded.

15.17. <u>Exhibits.</u>   The Exhibits to this Agreement are expressly incorporated and made part of the terms and conditions set forth herein.

15.18. <u>Counterparts.</u>   This Agreement may be executed in one or more counterparts.   All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement shall exchange among themselves original signed counterparts.

15.19. <u>Facsimile and Electronic Mail.</u>   Transmission of a signed Agreement by facsimile or electronic mail shall constitute receipt of an original signed Agreement by mail.

15.20. <u>No Assignment.</u>   Each Party represents and warrants that such Party has not assigned or otherwise transferred (via subrogation or otherwise) any right, title, or interest in or to any claims, causes of action, or demands which were or could have been, or ever could be asserted against any Party and that are released in this Agreement, or which were, could have been, or ever could be asserted against any Party.   Any Party that breaches the representations and warranties set forth in this Paragraph shall indemnify and hold harmless each other Party, its parents, subsidiaries, and affiliates, and their respective agents, attorneys, successors, heirs, assigns, administrators, officers, directors, employees, and all other persons acting in concert with them from any and every claim or demand of every kind or character arising out of a breach by any such breaching Party of its representations and

warranties in this Paragraph.

15.21. <u>Non-Disparagement.</u>  The Class Representatives, Defendants, and their respective counsel agree not to make any statements, written or verbal, or to cause or encourage any other Person to make any statements, written or verbal, that defame, disparage, or in any way criticize the personal or business reputation, practices, or conduct of the Parties, the Released Parties, and their respective counsel concerning all Released Claims, as well as the litigation of this Action, the Settlement, this Settlement Agreement, and any discussions, interactions, or negotiations of the Settlement by the Parties and their counsel; provided, however, nothing herein shall preclude any Party, its agents, its representatives, or its counsel from any good faith response to any inquiries under oath or in response to a government inquiry or from making statements in the course of legal proceedings, or from non-public privileged communications with Class Members with regard to the Settlement.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by themselves or by their duly authorized representatives:

PLAINTIFF ERIK KNUTSON, ON BEHALF OF HIMSELF AND THE CLASS

By: _____          _____
      Erik Knutson                                             Date

PLAINTIFF KEVIN LEMIEUX, ON BEHALF OF HIMSELF AND THE CLASS

By: _____          _____
      Kevin Lemieux                                           Date

warranties in this Paragraph.

15.21. <u>Non-Disparagement.</u>  The Class Representatives, Defendants, and their respective counsel agree not to make any statements, written or verbal, or to cause or encourage any other Person to make any statements, written or verbal, that defame, disparage, or in any way criticize the personal or business reputation, practices, or conduct of the Parties, the Released Parties, and their respective counsel concerning all Released Claims, as well as the litigation of this Action, the Settlement, this Settlement Agreement, and any discussions, interactions, or negotiations of the Settlement by the Parties and their counsel; provided, however, nothing herein shall preclude any Party, its agents, its representatives, or its counsel from any good faith response to any inquiries under oath or in response to a government inquiry or from making statements in the course of legal proceedings, or from non-public privileged communications with Class Members with regard to the Settlement.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by themselves or by their duly authorized representatives:

PLAINTIFF ERIK KNUTSON, ON BEHALF OF HIMSELF AND THE CLASS

By: _____       5/5/14
    Erik Knutson                                          Date

PLAINTIFF KEVIN LEMIEUX, ON BEHALF OF HIMSELF AND THE CLASS

By: _____       _____
    Kevin Lemieux                                        Date

warranties in this Paragraph.

15.21. <u>Non-Disparagement.</u> The Class Representatives, Defendants, and their respective counsel agree not to make any statements, written or verbal, or to cause or encourage any other Person to make any statements, written or verbal, that defame, disparage, or in any way criticize the personal or business reputation, practices, or conduct of the Parties, the Released Parties, and their respective counsel concerning all Released Claims, as well as the litigation of this Action, the Settlement, this Settlement Agreement, and any discussions, interactions, or negotiations of the Settlement by the Parties and their counsel; provided, however, nothing herein shall preclude any Party, its agents, its representatives, or its counsel from any good faith response to any inquiries under oath or in response to a government inquiry or from making statements in the course of legal proceedings, or from non-public privileged communications with Class Members with regard to the Settlement.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by themselves or by their duly authorized representatives:

PLAINTIFF ERIK KNUTSON, ON BEHALF OF HIMSELF AND THE CLASS

By: _____          _____
    Erik Knutson                        Date

PLAINTIFF KEVIN LEMIEUX, ON BEHALF OF HIMSELF AND THE CLASS

By: _____          5/5/14
    Kevin Lemieux                       Date

1

HYDE & SWIGART, COUNSEL FOR THE CLASS

2

By: _____       5/2/14
3          Joshua B. Swigart, Esq.            Date
           Class Counsel
4

5    KAZEROUNI LAW GROUP, APC, COUNSEL FOR THE CLASS

6

7    By: _____       _____
           Abbas Kazerounian, Esq.             Date
8          Class Counsel

9    //

10   //

11   //

12   //

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

SCHWAN'S HOME SERVICE INC.

By: _____                    _5/5/14_____
    Randy Sharbono                                   Date
    Assistant Secretary


CUSTOMER ELATION, INC.

By: _____                    _5/5/2014_____
    Pete Hajney                                      Date
    President

HOGAN LOVELLS US LLP, COUNSEL FOR DEFENDANTS

By: _____                    _5/5/14_____
    Mitchell E. Zamoff, Esq.                         Date
    Partner

Order of Preliminary Approval
of Class Action Settlement                    - 30 of 30 -                    3:12-cv-00964-GPC-DHB
                                        29   29