# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIK KNUTSON AND KEVIN LEMIEUX, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>     PLAINTIFFS,<br>V.<br><br>SCHWAN'S HOME SERVICE, INC.; AND CUSTOMER ELATION, INC.,<br><br>     DEFENDANTS. | Case No.: 3:12-cv-00964-GPC-DHB<br><br>CLASS ACTION<br><br>ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT AND PROVIDING FOR NOTICE TO THE SETTLEMENT CLASS<br><br>HON. GONZALO P. CURIEL |

From April 18, 2008 through August 31, 2012, Defendants Schwan's Home Service, Inc. ("Schwan's") and Customer Elation, Inc. ("Customer Elation") (collectively, "Defendants") placed calls to past or present customers of NutriSystem, Inc. ("NutriSystem").  Plaintiffs Erik Knutson and Kevin Lemieux alleged that Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), by placing automated and/or prerecorded telephone calls to persons without their prior express consent, using an automatic telephone dialing system ("ATDS").

Plaintiff Erik Knutson, initiated this lawsuit (the "Action") on April 18, 2012. Knutson later filed a First Amended Complaint to add Plaintiff Kevin Lemieux. [Dkt. No. 28].  On January 25, 2013, Plaintiffs filed a motion for leave to file a Second Amended Complaint. [Dkt. No. 30]. The Court granted Plaintiffs' Motion on February 20, 2013, which added Defendant Customer Elation.  [Dkt. No. 38]. The Second Amended Complaint alleges (1) negligent violation of the TCPA and (2) knowing and/or willful violation of the TCPA.  On May 8, 2013, Plaintiffs moved to certify a class, which was ultimately granted in part by the Court on September 5, 2013.  [Dkt No. 99].  The Court certified the following Rule 23(b)(3) class ("Class"):

> All persons who are past or present customers of NutriSystem, Inc., who had or have a number assigned to a cellular telephone service, which number was called by Defendants using an automatic telephone dialing system and/or an artificial or prerecorded voice between April 18, 2008 and August 31, 2012. Excluded from the Class are persons who Defendants called for emergency purposes and persons who gave express consent to Defendants to call their cellular telephone number prior to Defendants first placing a call using an automatic telephone dialing system and/or artificial or prerecorded voice.  Also excluded from the Class are Defendants, their officers and directors, families and legal representatives, heirs, successors or assigns and any other entity in which Defendants have a

controlling interest, any judge assigned to this case and their immediate families.  [Dkt. No. 119]

Plaintiffs sought $500 per negligent violation and $1,500 per willful violation as well as injunctive relief.

Presently before the Court is Plaintiffs' Motion for Preliminary Approval of a Class Action Settlement. Pursuant to the Parties' Settlement Agreement, Defendants do not oppose this Motion.

## DISCUSSION

Prior to granting approval of a class action settlement, a court (1) assesses whether a class exists and (2) determines whether the proposed settlement is "fundamentally fair, adequate, and reasonable."  *Stanton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (internal quotations omitted).  Here, the Court already granted class certification pursuant to Fed. R. Civ. P. 23(b)(3) on September 5, 2013 [Dkt. No. 99], and will therefore examine the fairness of the Settlement Agreement ("SA") followed by the questions of a claims administrator and Class Notice.

## I.     THE SETTLEMENT

Rule 23(e) requires the Court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable." *Stanton*, 327 F.3d at 959 (internal quotations omitted).  In making this determination, a court may consider: (1) the strength of the plaintiff's case; (2) "the risk, expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" (5) "the extent of discovery completed and the stage of the proceedings;" (6) "the experience and views of counsel;" (7) "the presence of a governmental participant;" and (8) "the reaction of the class members to the proposed settlement." *See id*. (internal quotations omitted).  Moreover, the settlement may not be the product of collusion among the negotiating parties. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

Because some of these factors cannot be fully assessed until the Court conducts the Final Fairness Hearing, "a full fairness analysis is unnecessary at this stage." *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotations omitted). At the preliminary approval stage, a court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible approval" and thus, whether the notice to the class and the scheduling of formal fairness hearing is appropriate. *Id*. at 666.

### A. THE STRENGTH OF PLAINTIFFS' CASE AND THE RISK, EXPENSE, COMPLEXITY AND LIKELY DURATION OF FURTHER LITIGATION, AND THE RISK OF MAINTAINING CLASS ACTION STATUS THROUGHOUT THE TRIAL

Both sides recognize that there are risks to continuing litigation of this Action. Class Counsel understands that there are uncertainties associated with complex class action litigation. Defendants argued in their Motion for Summary Judgment that, due to the circumstances surrounding the Class Members' relationships with NutriSystem and Schwan's, all of the Class Members consented to receive calls. The law interpreting the TCPA and its consent requirement has been in flux, making it difficult for Class Members to prove lack of consent under the TCPA. *See, e.g., Baird v. Sabre Inc.*, No. CV 13-999 SVW, 2014 WL 320205 (C.D. Cal. Jan. 28, 2014).

Moreover, Defendants filed a separate motion to decertify Plaintiffs' Class or amend the Class definition based on arbitration and forum selection clauses in Terms and Conditions agreed to by individuals purchasing products from NutriSystem. Defendants argue that the arbitration and forum selection clauses fracture the Class and create individualized issues that defeat the requirements for class certification or call for this Court to reconsider the Class definition. Although now withdrawn, Defendants also filed an appeal of this Court's class certification Order. Both the motion to decertify and the appeal present risks regarding the continued certification of the Class.

On the other hand, Defendants also understand the risks of litigation. Even if only a small percentage of Class Members recover damages, a large demand award could result. Further litigation would be very expensive. Defendants have already expended considerable resources on discovery and motions practice, as well as to ascertain the 16,691 unique cellular telephone numbers, which represent the certified Class. (Kazerounian Decl. ¶ ___.)

Taken together, the costs, the risks to both sides, and delays of continued litigation weigh in favor of preliminary approval of the proposed settlement.

B.  **THE EXTENT OF DISCOVERY AND THE STAGE OF THE PROCEEDINGS**

In regards to class action settlements, "formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (internal quotations omitted).

Here, the Parties appear to have engaged in substantial discovery. In addition to participating in formal discovery (including the exchange of requests for admissions, interrogatories, and document requests), the Parties have taken extensive depositions. Defendants have taken both named Plaintiffs' depositions. [Decl. Kazerounian ¶ ___.] Plaintiffs have taken nine depositions of Defendants and there have been numerous discovery disputes over call data. [Decl. Kazerounian ¶ ___.] Plaintiffs also took the deposition of non-party NutriSystem regarding telephone numbers provided by NutriSystem to Schwan's. Moreover, the Parties engaged in multiple lengthy direct negotiations, as well as two full days of mediation before the Honorable Leo S. Papas (ret.) and one full day of mediation before the Honorable Leo Wagner. (Kazerounian Decl. ¶ ___.)

In addition, the Parties engaged in formal discovery, (*Id.* ¶ 4), to determine the Class size. (*Id.* ¶ 9). Plaintiffs requested information on not only Class size, but how Defendants identified the Class certified by the Court. (*Id.*) To do this, Defendants obtained a list of unique mobile numbers associated with NutriSystem

customers that received calls on their cellular telephones using an ATDS or prerecorded messages and compared that list of numbers against its system of record, which stores profile information for all of Defendants' customers. (*Id*.) That compiled list constitutes the Class list (*Id*.)

The Parties appear to have thoroughly investigated, litigated and evaluated the factual strengths and weaknesses of this case and engaged in sufficient discovery to support the Settlement. Accordingly, the extent of discovery and stage of the proceedings weigh in favor of preliminary approval.

### C. EXPERIENCE OF CLASS COUNSEL

Class Counsel have experience prosecuting class actions relating to privacy and consumer rights, including TCPA actions. Class Counsel were recently approved as class counsel in a TCPA action in *Barani v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 49838 (S.D. Cal. April 9, 2014). Counsel on both sides believe that this is a fair and reasonable settlement in light of the uncertainties of continued certification and litigation. Accordingly, this factor weighs in favor of preliminary approval. *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 18 (N.D. Cal. 1980); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." (internal quotations omitted.))

### D. THE AMOUNT OFFERED IN SETTLEMENT

A settlement is not judged against only the amount that might have been recovered had the plaintiff prevailed at trial, nor must the settlement provide 100% of the damages sought to be fair and reasonable. *Linney*, 151 F.3d at 1242. There is a "range of reasonableness" in determining whether to approve settlements "which recognizes the uncertainties of law and fact in any particular cause and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (*quoting Newman v. Stein*, 464 F.2d 689, 693 (2d. Cir. 1972)). The adequacy of the

amount recovered must be judged as "a yielding of absolutes. . . . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (internal quotations omitted). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Id*. at 628.

Here, the Second Amended Complaint alleges: (1) negligent violation of the TCPA; and (2) knowing and/or willful violation of the TCPA. The TCPA provides for statutory damages of $500 for each negligent violation and $1,500 for each willful violation.

Defendants have agreed to establish a maximum benefit in the amount of:

(1) Up to $1,200,000 in cash for the payment of:
   (a) all valid claims for cash benefits in the amount of $20 per claiming Class Member;
   (b) up to $38,000 for Notice and other Administrative Expenses; and
   (c) the Fee and Expense Award; and
(2) Up to $1,335,280 in Schwan's merchandise vouchers, entitling each claiming class member to a voucher in the amount of $80

(SA § 4.1).

The Class settlement, as reached, allows for a maximum recovery by each claiming Class Member of a $20 settlement check plus a merchandise voucher in the amount of $80 that may be used to purchase products from Schwan's website. This recovery amount will not be diluted based on the number of claims submitted, as the settlement benefit is large enough to cover 100% participation without a pro rata reduction. (SA § 4 Generally). Each Settlement Class Member shall be entitled to make only one claim per cellular telephone number, regardless of the number of calls received by each cellular telephone number. (*Id*. §§ 4 and 5.)

The Settlement award that each Class Member will receive is fair, appropriate, and reasonable given the purposes of the TCPA and in light of the anticipated risk, expense, and uncertainty of continued litigations, as discussed above. In addition, the proposed Settlement may be acceptable even though it amounts to only a percentage of the potential recovery that might be available to Class Members at trial. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Accordingly, the Court finds the amounts offered in the settlement to be adequate, at least at this stage of the proceedings. *See e.g., Arthur v. Sallie Mae*, Inc., 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012) (approving a TCPA settlement where each claiming class member was estimated to receive recovery between $20 and $40); *Gutierrez v. Barclays Grp.*, 10-CV-1012, Docket No. 58 (S.D. Cal., Mar. 12, 2012) (approving a TCPA settlement were each of the approximate 66,000 class members received approximately a $100 credit or settlement check); *Adams v. AllianceOne*, 08-CV-0248 JAH, Docket No. 137 (S.D. Cal. Sept. 28, 2012) (approving a TCPA class settlement where each claiming class member received $40); *Bellows v. NCO Financial Systems, Inc.*, 07-CV-1413 W(AJB), Docket No. 53 and 54 (S.D. Cal. July 13, 2009) (approving a TCPA class settlement where each claiming class member received $70); *In Re-Jiffy Lube International, Inc.*, 11-md-02261, Docket No. 97 (S.D. Cal., Feb. 20, 2013) (approving a TCPA class settlement where class members received merchandise certificates for the approximately value of $20); *Malta v. Wells Fargo Home Mortgage, et al.*, 10-CV-1290 BEN(NLS), Docket No. 91 (S.D. Cal., June 21, 2013) (approving a TCPA class settlement where each claiming class member received pro rata recovery in the amount of approximately $84.82).

The voucher component of this proposed settlement is similar to the preliminarily approved class action settlement in *Wojcik v. Buffalo Bills, Inc.*, 12-CV-2414-SDM-TBM (M.D. Fla. April 17, 2014) [Dkt. No. 73] (relying on the

Parties' Joint Motion for Preliminary Approval [Dkt. No. 72]). In *Wojcik*, a maximum settlement fund of $2,487,745 was created for class members to make claims for debit cards redeemable for merchandise purchases at the official online retail store or in person at the retail store. The tiered claim amounts ranged from merchandise debit cards in the amount of $57.50 to $75.00. [Dkt. No. 72, p. 6]. The district court in *Wojcik* preliminarily approved the settlement on April 17, 2014. In this case, Plaintiffs and the Class Members will recover not only $80 in merchandise certificates, but also a $20 settlement check for each Class Member.

Accordingly, the Court finds the amounts offered in the settlement to be adequate at this stage of the proceedings.

## II.   APPOINTING THE CLAIMS ADMINISTRATOR

The Parties propose that the Court appoint Kurtzman Carson Consultants ("KCC") as the claims administrator for this Action. *See generally*, SA § 7.1. KCC specializes in providing administrative services to class action litigation and has experience in administering consumer protection and privacy class action settlements. (Kazerounian Decl. ¶ __.) Accordingly, the Court GRANTS Plaintiffs' motion to appoint KCC as the Claims Administrator.

## III.   APPROVING CLASS NOTICE

Class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Moreover, the Class Notice must satisfy the content requirements of Rule 23(c)(2)(B), which provides that the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the

class any member who requests exclusion; (v) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the proposed notice provides: (1) information on the meaning and nature of the Class; (2) the terms and provisions of the proposed settlement; (3) the costs and fees to be paid out of the settlement benefit; (4) the procedures and deadlines for submitting claim forms, objections, and/or requests for exclusion; and (5) the date, time and place of the Final Fairness Hearing. (*See* Kazerounian Decl., Exs. __, __, __, __.) In addition, the methods of Notice, more fully set forth below are reasonable.

## CONCLUSION

**THEREFORE IT IS HEREBY ORDERED:**

1. <u>JURISDICTION</u>: The Court has jurisdiction over the subject matter of the Action and over all settling parties hereto.

2. <u>PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT</u>: The Court preliminarily finds that the settlement of the Action, on the terms and conditions set forth in the Agreement, including all exhibits thereto, is in all respects, fundamentally fair, reasonable, adequate, and in the best interests of the Class Members, taking into consideration the benefits to Class Members; the strengths and weaknesses of Plaintiffs' case; the complexity, expense, and probable duration of further litigation; and the risk and delay inherent in possible appeals. The Court finds that Notice of the settlement should be given to persons in the Class and a full hearing should be held on approval of the settlement.

3. <u>CAFA NOTICE</u>:  The Court acknowledges the declaration filed by the Claims Administrator, KCC, on _____, providing notice to the Court of compliance with the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4.  Written notice of the proposed settlement was served on the U.S. Attorney

General and the Attorney General of each state within ten days of the Parties filing the Motion for Preliminary Approval of the Class Action Settlement.

   4. <u>CLASS MEMBERS</u>: Pursuant to Federal Rule of Civil Procedure 23(b)(3), the Action was certified as a class action on behalf of the following Class Members:

   a. All persons who are past or present customers of NutriSystem, Inc., who had or have a number assigned to a cellular telephone service, which number was called by Defendants using an automatic telephone dialing system and/or artificial or prerecorded voice between April 18, 2008 and August 31, 2012.

   b. Excluded from the Class are persons who Defendants called for emergency purposes and persons who gave express consent to Defendants to call their cellular telephone number prior to Defendants first placing a call using an automatic telephone dialing system and/or artificial or prerecorded voice.  Also excluded from the Class are Defendants, their officers and directors, families and legal representatives, heirs, successors or assigns and any other entity in which Defendants have a controlling interest, any judge assigned to this case and their immediate families.

   5. <u>CLASS REPRESENTATIVES AND CLASS COUNSEL APPOINTMENT</u>:   For purposes of the Court considering preliminary approval, the Court continues the appointment of Plaintiffs Erik Knutson and Kevin Lemieux as the Class Representatives and Abbas Kazerounian of Kazerouni Law Group, APC and Joshua B. Swigart of Hyde & Swigart as Class Counsel.

   6. <u>NOTICE AND CLAIMS PROCESS</u>: The Court approves the form and method of Notice as set forth in the Settlement Agreement. Defendants shall provide the Class list for Class Members whose cellular telephone numbers were identified from its databases to the claims administrator, KCC, and Class Counsel. KCC shall mail a postcard-type Direct Mail Notice to each known Class Member at

the address provided by Defendants, based on the information contained in Defendants' databases, and update those addresses for which a postcard is returned with a forwarding address. The Direct Mail Notice shall reference a website established for this settlement, and that website shall contain the full details of the settlement and permit the filing of claims on the website. The mailed Notices shall also contain the claims administrator's toll free telephone number so that Class Members can inquire about the settlement and be directed on how to download claim forms, fill them out and submit them. At least ten (10) days prior to the Final Fairness Hearing, the claims administrator shall file a declaration of compliance with the Notice procedures set forth in the Agreement. The Court finds that the form and methods of Notice set forth in the Agreement satisfy the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), due process, and constitute the best practicable procedure under the circumstances.

7. SETTLEMENT AND CLAIMS PROCESS: The Court preliminarily approves the $2,535,280 settlement as fair, reasonable and adequate for members of the class. The Court preliminarily approves the process set forth in the Agreement for reviewing, approving and paying claims after deducting the settlement costs.

8. EXCLUSIONS: Any Class Member who desires to opt-out of the Class must send a written request for exclusion to the claims administrator, postmarked no later than ninety (90) days after Notice is mailed to Class Members. The claims administrator's address shall be provided in the Notice to the Class Members and shall be posted on the website. The claims administrator shall provide a list of those persons requesting exclusion to Class Counsel and Defendants' counsel after the deadline for exclusions passes, but no later than ten (10) days prior to the Final Fairness Hearing. A copy of that list will be filed with the Motion for Final Approval of the Class Action Settlement.

9. To be effective, a written request for exclusion must contain the Class Member's full name, address, telephone number, and be signed by the Class

Order of Preliminary Approval
of Class Action Settlement                     - 12 of 14 -                     3:12-cv-00964-GPC-DHB

Member. The request must also state generally that the person wishes to be excluded from the Settlement.

10. Any Class Member who submits a valid and timely request for exclusion shall not be a Settlement Class Member and shall not be bound by the Settlement Agreement.

11. OBJECTIONS: Any Class Member who intends to object to the fairness of the Settlement must file a written objection with the Court, at United States District Court, Southern District of California, Office of the Clerk, 333 West Broadway, Suite 420, San Diego, CA 92101, no later than ninety (90) days after Notice is mailed to Class Member.  Further, any such Class Member must within the same period, provide a copy of the written objection to Class Counsel and Defense counsel, whose addresses shall be set forth in the website's Notice advising the Class Members about objections.

12. To be considered, the written objection must be signed by the Class Member and state: the Class Members full name, address, telephone number, the reasons for objecting, and whether the objector intends to appear at the Final Fairness Hearing on their own behalf or through counsel. Further, the Class Member must attach to the written objection any documents supporting the objection.

13. Any Class Member who does not file a valid and timely objection to the settlement shall be barred from seeking review of the settlement by appeal or otherwise.

14. <u>FINAL FAIRNESS HEARING</u>:  The Court shall conduct a hearing ("Final Fairness Hearing") on _____ at _____ a.m./p.m. at 221 West Broadway, Courtroom 2D, San Diego, CA 92101. The Final Fairness Hearing may be rescheduled or continued by the Court without further notice to the Class Members. At the hearing, the Court will consider the following issues:

a. Whether the proposed settlement is fundamentally fair, reasonable, adequate, and in the best interest of the Settlement Class Members and should be approved by the Court;

b. Whether the Final Judgment and Order of Dismissal With Prejudice, as provided under the Agreement, should be entered, dismissing the Action with prejudice and releasing the Released Parties;

c. Such other issues, as the Court deems appropriate.

15. Attendance at the Final Fairness Hearing is not necessary. Class Members need not appear at the hearing or take any other action to indicate their approval of the proposed class action settlement. However, Class Members wishing to be heard are required to indicate in their written objection whether they intend to appear at the Final Fairness Hearing.

16. If the Agreement is not finally approved for any reason, then this Order shall be vacated, the Agreement shall have no force and effect, and the Parties' rights and defenses shall be restored, without prejudice, to their respective positions as if the Agreement had never been executed and this Order never entered.

IT IS SO ORDERED.

Dated: _____      _____
                                    HON. GONZALO P. CURIEL
                                    U.S. DISTRICT COURT JUDGE