# PLAINTIFFS' EXHIBIT 6

Settlement Agreement in
*Friedman v. LAC Basketball Club, Inc.*,
13-cv-00818-CBM-AN (C.D. Cal.)

---

**In The Case Of**

*Erik Knutson and Kevin Lemieux, Individually and On Behalf of All Others Similarly Situated*

**v.**

*Schwan's Home Service, Inc. and Customer Elation, Inc.*

**12-CV-00964-GPC (DHB)**

**KAZEROUNI LAW GROUP, APC**
**2700 NORTH MAIN STREET, SUITE 1000, SANTA ANA, CA 92705**
**(800) 400-6808**

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into by and between Plaintiff Ari Friedman ("Plaintiff"), on behalf of himself and all other members of the Settlement Class (as defined below in Paragraph 1(A)), by and through his counsel and class counsel, Law Offices of Todd M. Friedman, P.C. ("Class Counsel"), on the one hand, and, on the other hand, LAC Basketball Club, Inc. ("LAC"), by and through its counsel, Manatt, Phelps & Phillips, LLP, compromising on a class wide basis all claims in the case entitled *Ari Friedman v. LAC Basketball Club, Inc., et al.,* United States District Court for the District of California, Case No. CV13-00818 CBM (ANx) (the "Action"), subject to Court approval. The "Date of Settlement" shall be the date on which all parties hereto have executed this Agreement.

## RECITALS

A.     Plaintiff commenced the Action on February 6, 2013. The Action alleges a nationwide class action of all recipients who received one or more unsolicited text messages from LAC from February 6, 2009, to the present. The Action alleges that such text messages were sent by LAC to recipients' cellular telephone using an automated telephone dialing system, and without the recipients' prior express consent, violating the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). The complaint has been amended to add additional defendants who allegedly provided the technology through which the text messages at issue were sent, FanDrive Media, LLC, Mobivity Holdings Corp., and Mobivity Inc., and asserts two purported causes of action for negligent and willful violations of the TCPA. Mobivity Holdings Corp. and Mobivity Inc. were subsequently dismissed from the Action with prejudice.

B.     LAC denies all of Plaintiff's allegations in the Action and maintains, among other things, that any text messages that were allegedly sent on its behalf were sent with the recipients'

1

prior express consent, and were not violations of the TCPA. LAC believes that it has meritorious defenses to all of the claims asserted in the Action, and specifically denies that it has engaged in any improper or unlawful actions of any type or nature. This Agreement does not constitute and shall not be construed as an admission by LAC of any liability or wrongdoing and LAC expressly denies any liability or wrongdoing, of any type or nature.

      C.     The Plaintiff and LAC (the "Parties") in the Action have engaged in substantial discovery. Specifically, among other things, Plaintiff has received lists of all cellular telephone numbers to which a text message has been sent by or on behalf of LAC during the Class Period (defined in Paragraph 1(D) below) that were available to LAC. In addition, Plaintiff has received lists of all cellular telephone numbers who have opted-out of receiving text messages from LAC during the Class Period.

      D.     Plaintiff filed a "placeholder" Motion for Class Certification on August 1, 2013, that specifically represented Plaintiff's intention to amend such motion pending further discovery. A hearing on the motion is currently scheduled for February 24, 2014.

      E.     The Parties have conducted arms-length negotiations in an attempt to resolve the Action, and have participated in a mediation before the Honorable Leo S. Papas (Ret.) on October 15, 2013. The Parties also continued to negotiate the terms of the Settlement with the help of Judge Papas in the two months subsequent to the October 15 mediation.

      F.     Based upon the investigation, analysis, and discovery conducted by Class Counsel, Plaintiff and Class Counsel have agreed to settle the claims raised in the Action on a nationwide basis under the terms and conditions memorialized in this Agreement, believing the settlement to be fair, reasonable, adequate, and in the best interests of Plaintiff and the Settlement Class Members (as defined in Paragraph 1(C) below). Although Plaintiff and Class

Counsel believe that the claims asserted in the Action are meritorious, they have concluded that this Settlement is in the best interests of the class after considering the benefits that the class will obtain in relation to the risks of pursuing further litigation.

   G.  The Parties wish to avoid the expense, risk and uncertainty of further litigation, to resolve all disputes that have arisen between them, and to settle any and all claims that do or may exist in the past, present or future, and therefore have agreed to enter into this Agreement.

   NOW, THEREFORE, for and in consideration of the promises, covenants, and undertakings described below, and intending to be mutually bound thereby, and for other good and sufficient consideration, the Parties hereby agree, subject to the Court's approval, as follows:

**PROPOSED CLASS FOR SETTLEMENT PURPOSES**

   1.  **Class Definition and Certification, Class Representative, and Class Counsel.**

   **(A) Settlement Class Definition and Certification.** For purposes of this Agreement, the Parties hereby stipulate to the certification of the following Settlement Class:

> All persons within the United States who received an unsolicited text message from LAC, which text message was not made for emergency purposes or with the recipient's prior express consent during the Class Period (as defined in Paragraph 1(D) below). (The "Settlement Class Definition.")

   **(B) Stipulation Regarding Conditional Certification.** The Parties stipulate and agree that, for the purposes of the settlement embodied in this Agreement only, and subject to Court approval, the Settlement Class described in Paragraph 1(A) above should be certified. If, for any reason, this Agreement is not approved by the Court, the stipulation for certification and all of the agreements contained herein shall be considered null and void, and may not be referred to or used as evidence or for any other purpose whatsoever in the Action or any other action or proceeding.

3

(C)   **Settlement Class Members.**   All persons residing in the United States who fit within the Class Definition are "Settlement Class Members."

(D)   **Class Period.**   The Class Period is from February 6, 2009 until the date on which the Court grants preliminary approval of this settlement.

(E)   **Class Representative.**   Subject to Court approval, Plaintiff Ari Friedman shall be appointed by the Court as the Class Representative of this Settlement Class.

(F)   **Class Counsel.**   Todd M. Friedman, Esq. and Nicholas J. Bontrager, Esq. of Law Offices of Todd M. Friedman, P.C., shall be appointed as Class Counsel.

## BENEFITS TO THE CLASS

2.      **Free Ticket(s) and/or Savings Vouchers to Settlement Class Members.**

(A)      Settlement Class Members with Valid Claims (as described in Paragraph 3 below) shall be eligible to receive *either*:

(i)      Two (2) free tickets to one (1) Los Angeles Clippers' home game at the Staples Center in Los Angeles, California for a game to be played on October 8, 17, 22 or 24, 2014 (located predominantly in Sections 301-334) ("Two Ticket Option").  The Two Ticket Option has a fair market value of between $30-$50; *or*

(ii)      One (1) free ticket to one (1) Los Angeles Clippers' home game at the Staples Center in Los Angeles, California for a game to be played on October 8, 17, 22 or 24, 2014 (located predominantly in Sections 301-334) (the single ticket has a fair market value of between $15-25), *and* a savings voucher in the amount of twenty dollars ($20) that can be used toward the purchase of merchandise at the Team LA Store located in the Staples Center, or at www.clippersstore.com ("Single Ticket Option").

**(B)**     The free tickets claimed pursuant to the Two Ticket Option and Single Ticket Option will be distributed on a first come first serve basis, and will be filled beginning with the highest valued tickets in the specified sections (approximately 8,000 tickets are available for the October 2014 home games).  If more free tickets are claimed than are available in the October 2014 home games in the Sections specified in Paragraphs (2)(A)(i) and (2)(A)(ii) above (*i.e.* more than 8,000 tickets), then LAC will have the election to either (1) make additional tickets available in the October 2014 home games in order to fulfill the claims, or (2) roll the claims for free tickets above the 8,000 cap over into Los Angeles Clippers' home games in October 2015 (at an approximate cap of an additional 6,000 tickets).  (The dates of the October 2015 home games have not yet been determined.)  If more free tickets are claimed than are available in the October 2014 and 2015 home games combined (*i.e.,* more than 14,000 tickets), then LAC will have the option to either: (1) make more tickets available in the October 2014 and/or 2015 home games; or (2) have the excess claims default to an award of a savings voucher in the amount of forty dollars ($40) ("Savings Voucher Alternative").  The savings voucher in the amount of forty dollars ($40) pursuant to the Savings Voucher Alternative can be used toward the purchase of merchandise at the Team LA Store located in the Staples Center, or on www.clippersstore.com.  LAC must make the foregoing elections within thirty (30) days after the Settlement Administrator (defined in Paragraph 7 below) provides the Parties with a final list of the number of claims made and the options selected in accordance with Paragraph 3(E) below.

**(C)**     If the Settlement is not given final approval by the Court with sufficient time to distribute free tickets for the 2014 season in accordance with Paragraph 14 below, then the provision of benefits described in Paragraph 2(B) above will be advanced by one year (*i.e.,*

free tickets pursuant to the Two Ticket Option and the Single Ticket Option will be for home games in October 2015 and, if necessary, will roll over into home games in October 2016.

(D) The savings vouchers claimed pursuant to the Single Ticket Option and Savings Voucher Alternative will be valid through June 30, 2015. The savings vouchers may not be redeemed for cash. Any unused portions of the savings vouchers issued pursuant to the Single Ticket Option and/or the Savings Voucher Alternative will expire after June 30, 2015. If the Settlement is not given final approval by the Court with sufficient time to distribute the savings vouchers by September 15, 2014 (in accordance with Paragraph 14 below), then the savings voucher will be distributed within thirty (30) days of the date on which the Court grants final approval of the Settlement and will be valid through, and any unused portion will expire after, October 31, 2015.

(E)     **Distribution of Benefit Options.**  The Two Ticket Option, Single Ticket Option, and the Savings Voucher Alternative shall be provided to Settlement Class Members with Valid Claims through electronic mail.

3.     **Claims Process.**  Each Settlement Class Member shall be entitled to submit one (1) claim.

(A)     To be eligible for the Two Ticket Option, the Single Ticket Option, or the Savings Voucher Alternative pursuant to this Agreement, a Settlement Class Member must submit a claim either online or by U.S. mail that: (i) is postmarked (if by mail), or submitted (if online), no later than thirty (30) days after the Fairness Hearing (defined in Paragraph 9(E) below) (the "Claims Deadline"); (ii) contains all of the required information set forth in the claim form; (iii) satisfies the requirements of this Settlement and the terms of the claim form; (iv) provides the cellular telephone number(s) that received any text message from LAC during the

Class Period (which must be verified from records available to LAC); and (v) is signed (physically or electronically) by the Settlement Class Member submitting the claim. A claim that satisfies all of the terms of this Paragraph 3(A) shall be a "Valid Claim" and shall be considered for distribution of benefits pursuant to the Two Ticket Option, the Single Ticket Option, or the Savings Voucher Alternative according to Paragraphs 2(A)-(D) .

      **(B)**    Settlement Class Members who submit a Valid Claim providing the cellular telephone number(s) on which they received a text message from LAC, and complete and sign the claim form attached as **Exhibit A** hereto, shall be entitled to receive benefits pursuant to the Two Ticket Option, the Single Ticket Option, or the Savings Voucher Alternative as described in Paragraph 2 above, at their own election, **provided that** LAC is able to verify from the records available to it that a text message was indeed sent to the cellular telephone number by or on behalf of LAC, as specified in Paragraph 3(A)(iv) above.

      **(C)**    The Settlement Administrator shall review and adjudicate all claims no later than seventy-five (75) days after the Effective Final Judgment Date (as defined in Paragraph 13 below). Timing of distribution of benefits to Settlement Class Members shall be in accordance with Paragraph 14 below.

      **(D)**    Settlement Class Members may submit one (1) claim. If a claimant submits more than one claim, only the first claim will be considered for the Two Ticket Option, the Single Ticket Option (whichever was elected by the claimant) and the remaining claims will be denied.

      **(E)**    No later than seventy-five (75) days after the Effective Final Judgment Date, the Settlement Administrator shall provide a final report to the Parties stating the total number of Two Ticket Options and Single Ticket Options that were selected.

(F)     **Donation of Unclaimed Tickets.**   If less than a total of 1,000 Valid Claims are made by Settlement Class Members, LAC will donate free tickets to a youth-oriented charity or charities, which may include, without limitation, Junior Achievement of Southern California, Salvation Army Siemon Family Youth and Community Center, City of Los Angeles Department of Recreation and Parks, and Boy Scouts of America, in an amount equal to 1,000 less the total number of Valid Claims.  (For example, if 400 total Valid Claims are made by Settlement Class Members [regardless of which option is selected], LAC will donate 600 free tickets to charity.  If 900 total Valid Claims are made by Settlement Class Members, LAC will donate 100 free tickets to charity.)  The free tickets will be for games to be played on October 8, 17, 22 or 24, 2014, and will be located predominantly in Sections 301-334.  If the Settlement is not given final approval by the Court with sufficient time to distribute the donated tickets for the home games in October 2014, then the tickets will be donated according to these same terms for home games in October 2015.  The charity or charities selected to receive any balance of free tickets will be selected at LAC's sole discretion, and shall have no formal business relationship with LAC or Plaintiff, but may be a charity to which LAC has donated in the past.  The donation of unclaimed tickets is designed to benefit the Settlement Class as a whole.

4.     <u>**Injunction Against Unsolicited Text Messages.**</u>

Following entry of the Final Judgment and Order (as defined in Paragraph 12 below), for a period of two (2) years from October 15, 2013, LAC shall be enjoined from sending a "non-confirmatory" text message to anyone who has not affirmatively opted-in to receiving such messages.  For the purposes of this injunction, a "confirmatory" text message shall mean a text message sent in response to a text message received by LAC (including messages sent to any short codes assigned to LAC) confirming receipt of the text message, or confirming that the

8

recipient has won a prize or other benefit as part of an LAC promotion. A "non-confirmatory" text message shall mean any text message that does not fall within the definition "confirmatory."

     **5.**      **Award of Attorneys' Fees and Costs.**  At the Fairness Hearing (defined in Paragraph 9(E) below), Class Counsel shall petition the Court in the Action to enter an order for an award of attorneys' fees and costs not to exceed $600,000. LAC agrees not to oppose Class Counsel's request for fees and costs if limited to such amount. The payment shall be made within 10 business days of the Effective Final Judgment Date, as defined in Paragraph 13 below.

     LAC shall not object to Class Counsel's petition for attorneys' fees or the class representative incentive award indicated below, provided that the requests do not exceed the amounts set forth in this Agreement.

     **6.**      **Class Representative Incentive Payment.**  Subject to Court approval, LAC will pay Plaintiff Ari Friedman $1,000 for his role as Class Representative in the Action.

**SETTLEMENT ADMINISTRATION**

     **7.**      **Settlement Administration.**   The Parties agree that Kurtzman Carson Consultants LLC shall serve as the third-party administrator of the settlement ("Settlement Administrator"). The Settlement Administrator will work under the direction of Class Counsel and counsel for LAC. The Settlement Administrator shall be responsible for: (i) setting up a settlement website in both English and Spanish, where Settlement Class Members can, among other things: review a Notice of Settlement with "Frequently Asked Questions" substantially in the form attached hereto as **Exhibit D,** which shall set forth details of the settlement and the rights of Class Members to participate in the settlement, exclude themselves, or object to the settlement; fill out the claim form, and view this Agreement; (ii) distributing the Notice of Settlement (as described in Paragraph 8 below); (iii) administering the Settlement, including

9

confirming cellular telephone number verifications, if any; (iv) determining Valid Claims; (v) maintaining proper records of the settlement administration; and (vi) providing information and reports to counsel for LAC and Class Counsel.  The Settlement Administrator also will provide a complete list of the Settlement Class Members who submitted Valid Claims (with email addresses) to LAC.  LAC will distribute the tickets to the Settlement Class Members via email in accordance with Paragraph 14 below.  All costs related to such claims administration shall be borne by LAC.  LAC will be responsible for preparing and serving notice of the settlement as required by 28 U.S.C. § 1715 of the Class Action Fairness Act ("CAFA Notice").

      **8.**     **<u>Notice of Settlement</u>.**  Within twenty-one (21) days after entry of the Preliminary Approval Order (defined in Paragraph 9 below) by the Court, the Settlement Administrator shall provide notice to the Settlement Class by: (i) mailing the Notice of Settlement (attached to this Agreement as **Exhibit C)** in post-card form to addresses of putative class members that have been determined by "reverse look up" of cellular telephone numbers (within seven (7) days of the entry of the Preliminary Approval Order, LAC shall cause the "reverse look-up" to be conducted by a third party vendor, Full House Marketing, and will provide the results of the "reverse look-up" to the Settlement Administrator within two (2) business days of receiving the results from Full House Marketing); (ii) arranging for publication of the Notice of Settlement, attached to this Agreement as **Exhibit B**, in *USA Today* in the earliest possible issue(s), which shall be published on two (2) consecutive Mondays in the "Legal Monday" editions; and (iii) posting on the settlement website (URL to be provided by LAC) a more detailed version of the Notice of Settlement, attached to this Agreement as **Exhibit D**, and a downloadable claim form, which may be submitted to the Settlement Administrator via mail in paper format or online through the settlement website.  The Parties agree to the content of the Notices of Settlement,

subject to Court approval, published in *USA Today*, mailed to Settlement Class Members, and published on the settlement website (collectively, "Class Notice") substantially in the forms attached to this Agreement as **Exhibits B, C,** and **D** respectively, and agree that the size of the Class Notice published will be only as large as necessary to accommodate the content of the Class Notice, in accordance with the standard legal notice formatting and font size.  The Class Notice will include the dates by which: (i) Settlement Class Members must choose to be excluded from the Settlement Class, which will be thirty (30) days from the date Class Notice is transmitted, or (ii) file objections, if any, to the Settlement, which will be thirty (30) days from the date the Class Notice is transmitted.  Class Notice shall be considered "transmitted" on the last date of publication in *USA Today*, which shall be determined by the date the publication is made available to the public.

## SETTLEMENT APPROVAL PROCESS

9.      **Preliminary Approval Order.**  As soon as practicable after execution of this Agreement, the Parties shall file a motion for preliminary approval of the Settlement seeking entry of the Order Preliminarily Approving Class Action Settlement, Notice of Settlement, and Scheduling a Final Settlement Hearing ("Preliminary Approval Order") substantially in the form attached as **Exhibit E** to this Agreement.  The Preliminary Approval Order shall provide, *inter alia,* that:

(A)   There is probable cause to believe that the Settlement proposed in this Agreement has been negotiated at arm's-length and is preliminarily determined to be fair, reasonable, and adequate, free of collusion among the Parties or any other indicia of unfairness, falling within the range of possible final judicial approval sufficient to warrant sending notice to the Class, and is in the best interest of the Settlement Class for settlement purposes;

11

**(B)**   The proposed Notice of Settlement fully complies with the requirements of Fed. R. Civ. Pro. 23 and due process, constitutes the best notice practicable under the circumstances, and is due and sufficient notice to all persons entitled to notice of this Settlement;

**(C)**   The deadline for Settlement Class Members (and if applicable, their attorneys) to postmark and file any objections, notices of intent to appear at the Fairness Hearing in support of any objection and (for attorneys) entry of appearances, is thirty (30) days after the date of transmission of the Notice of Settlement (as defined in Paragraph 8 above), and establishing the procedures for doing so, all as described in Paragraph 11 below;

**(D)**   The Settlement Class is conditionally certified, with Plaintiff serving as Class Representative, and the attorneys and law firm listed in Paragraph 1(F) serving as Class Counsel, on the condition that the certification and designations shall be automatically vacated if the Settlement is terminated or is disapproved in whole or in part by the Court, any appellate court, or any of the Parties pursuant to the terms of the Agreement; and

**(E)**   A final hearing on the Settlement proposed in this Agreement shall be held before the Court to determine whether it is fair, reasonable, and adequate, and whether it should be approved by the Court (the "Fairness Hearing").

**(F)**   Settlement Class Members are enjoined from filing, commencing, prosecuting, intervening in, participating in, maintaining as class members or otherwise, directly or indirectly through a representative or otherwise, or receiving any benefits from, any lawsuit, administrative or regulatory proceeding or order in any jurisdiction, asserting any claims released by this Agreement.   All persons are preliminarily enjoined from filing, commencing or prosecuting a lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction)

on behalf of Settlement Class Members, asserting any claims released by this Agreement. Nothing in this subparagraph, however, shall require any Settlement Class Member to take any affirmative action with regard to other pending class action litigation in which they may be absent class members; and

   **(G)** Any attorney hired by a Settlement Class Member at the Settlement Class Member's expense for the purpose of objecting to this Agreement or the proposed Settlement, or any provision thereof, including the provisions relating to attorneys' fees, costs and litigation expenses, must file with the Clerk of the Court and deliver to Class Counsel and LAC's Counsel an entry of appearance and, if applicable, a notice of intention to appear at the Fairness Hearing, no later than thirty (30) days after the transmission of the Notice of Settlement (as defined in Paragraph 8 above).  Any argument at the Fairness Hearing by objectors and/or their counsel will be restricted to the matters raised in a timely and validly submitted written objection filed by such objectors, as provided in Paragraph 11 below.

   **10.** **Rights of Exclusion.** All Settlement Class Members who properly deliver to the Settlement Administrator a timely written request to opt-out of the Settlement shall be excluded from the Settlement Class, shall have no rights as members of the Settlement Class pursuant to this Agreement (including the right to object to the Settlement), and shall receive no benefits pursuant to the Two Ticket Option or Single Ticket Option , as provided herein.  A request for exclusion by a member of the Settlement Class must be in writing, identify the case name *Friedman v. LAC Basketball Club, Inc.,* No. CV13-00818, and state the name, address, and telephone number of the Settlement Class Member(s) seeking exclusion, as well as the number of the cellular telephone that received a text message from LAC.  Each request must also contain a signed statement that: "I/We hereby request to be excluded from the proposed Settlement Class

in *Friedman v. LAC Basketball Club, Inc.,*" or similar words to this effect.  The request must be mailed to the Settlement Administrator at the address provided in the Notice of Settlement and be postmarked no later than thirty (30) days from the date of the transmission of the Notice of Settlement (as defined in Paragraph 8 above).  A request for exclusion that does not include all of the foregoing information, that is sent to an address other than the one designated in the Notice of Settlement, or that is not postmarked within the time specified, shall be invalid and the person(s) serving such a request shall be deemed a member(s) of the Settlement Class, and shall be bound as a Settlement Class Member(s) by the Settlement.  The Settlement Administrator shall promptly forward copies of all requests for exclusion to Class Counsel and counsel for LAC.

     **11.**    <u>**Right to Object or Comment.**</u>  Any member of the Settlement Class may comment in support of or in opposition to the Settlement and may do so in writing, in person, or through counsel, at his or her own expense, at the Fairness Hearing.  Except as the Court may order otherwise, no Settlement Class Member objecting to the Settlement shall be heard and no papers, briefs, pleadings, or other documents submitted by any such Settlement Class Member shall be received and considered by the Court unless such Settlement Class Member files with the Court and mails to Class Counsel and counsel for LAC a written objection with the caption *Friedman v. LAC Basketball Club, Inc.,* No. CV13-00818, that includes: (i) the Settlement Class Member's full name and current address; (ii) the number of the cellular telephone that received a text message from LAC; (iii) a signed statement under penalty of perjury that he or she believes himself or herself to be a member of the Settlement Class; (iv) the specific grounds for the objection; (v) all documents or writings that such Settlement Class Member desires the Court to consider; and (vi) a notice of intent to appear, if applicable.  All objections must be filed and

postmarked no later than 30 days after the transmission of Notice of Settlement (as defined in Paragraph 8 above), or such date as the Court orders. Any Settlement Class Member who fails to object in the manner prescribed herein, or who does not restrict his or her argument at the Fairness Hearing to matters raised in a timely and validly submitted written objection, shall be deemed to have waived his or her objections and forever be barred from making any such objections in the Action or in any other action or proceeding. Plaintiff and/or LAC may take discovery regarding whether an individual making an objection to the Settlement pursuant to this Paragraph is a Settlement Class Member, subject to Court Approval.

12. **Order for Final Judgment.** If this Agreement is preliminarily approved by the Court, the Parties shall jointly request at the Fairness Hearing that the Court enter an order for final judgment that finally approves this Agreement and dismisses the claims of the Settlement Class Members without prejudice ("Final Judgment and Order") (but see Paragraph 12(C) below for clarification on the meaning of "without" prejudice for the purposes of dismissal). The Fairness Hearing shall be held no earlier than twenty-eight (28) days after the deadline for all Settlement Class Members to opt-out of, object to, or comment upon the Settlement under Paragraphs 10 and 11 of this Agreement. A copy of the form of the proposed Final Judgment and Order agreed to by the Parties is attached hereto as **Exhibit F**. The Final Judgment and Order shall provide, *inter alia,* that:

(A) The Agreement is fair, reasonable, and adequate, and in the best interest of the Settlement Class;

(B) The Notice of Settlement fully complied with the requirements of Fed. R. Civ. Pro. 23 and due process, constituted the best notice practicable under the circumstances, and was due and sufficient notice to all persons entitled to notice of this Settlement;

**(C)**   The Action is dismissed without prejudice and without costs.  Dismissal without prejudice shall not allow the Parties or any members of the Settlement Class to litigate or otherwise reopen issues resolved by the Final Judgment and Order, or included within the Released Claims, but is "without prejudice" so as to allow the Court to retain exclusive jurisdiction over this action, the Parties, and all Settlement Class Members to determine all matters relating in any way to the Final Judgment and Order, the Preliminary Approval Order, or the Agreement, including but not limited to the administration, implementation, interpretation, or enforcement of such orders or Agreement.   After the Effective Final Judgment Date (defined below in Paragraph 13), the dismissal of this action will convert from "without" prejudice to "with" prejudice; and

**(D)**   Plaintiff and Settlement Class Members are permanently enjoined and barred from commencing or prosecuting any collateral action either directly, representatively, derivatively, or in any other capacity, whether by a complaint, counterclaim, defense, or otherwise, in any local, state, or federal court, or in any agency, or other authority or forum wherever located.

13.   **Finality of Judgment**.  The Final Judgment and Order shall be deemed final on the later of (i) the expiration of the time to appeal the Final Judgment and Order with no appeal having been filed, or (ii) if any such appeal is filed, the termination of such appeal on terms which affirm the Final Judgment and Order or dismiss the appeal with no material modification of the Final Judgment and Order, and (iii) the expiration of the time to obtain any further appellate review of the Final Judgment and Order ("Effective Final Judgment Date").

14.   **Dates of Benefit Distribution Obligations**.  Distribution of all benefits pursuant to the Two Ticket Option, Single Ticket Option, and Savings Voucher Alternative, as well as any

unclaimed tickets (as described in Paragraph 3(F) above), shall be made on or before September 15, 2014, except that distribution of any tickets for October 2015 home games shall be made on or before September 15, 2015.  Attorneys' fees and costs awarded by the Court to Class Counsel, up to a maximum of $600,000, and the incentive payment to the Class Representative, up to a maximum of $1,000, shall be paid within ten (10) business days after the Effective Final Judgment Date.

     **15.**    **Option to Withdraw**.  Each Party shall have the option to withdraw from the Agreement, and thereby render this Settlement null and void, (i) if any other Party breaches any material provision of the Settlement Agreement or the Preliminary Approval Order, or fails to fulfill any material obligation hereunder or thereunder; (ii) if the attorney general or other authorized officer of the United States or any state, or any representative of any local, state, or federal agency or branch of government, shall have intervened in the Action to object to the Settlement or filed an objection with the Court in writing in opposition to the terms of the Agreement, and the withdrawing Party reasonably believes such intervention or opposition will materially delay or render impracticable or unlikely the final approval of the Settlement; (iii) if more than 2,500 individuals opt out of the Settlement Class; (iv) if a Settlement Class is conditionally certified on less than what is provided for in this Agreement; or (v) if upon such other grounds as may be agreed to by the Parties and permitted by the Court.  Any election made by a Party to terminate this Agreement pursuant to this Paragraph shall be made no later than seven (7) days prior to the Fairness Hearing.  To the extent that the election to terminate is made under subsection (iii) of this Paragraph, the Parties agree to meet and confer in good faith regarding such election for a period of no less than 14 days after the Party seeking to terminate notifies the other Parties of its intention to terminate.

**16.     Effect of Withdrawal/Rejection.**     In the event that (i) Plaintiff or LAC withdraws from the Agreement pursuant to Paragraph 15; (ii) the Agreement, Preliminary Approval Order, and Final Judgment and Order are not approved in all material respects by the Court; or (iii) the Agreement, Preliminary Approval Order, or Final Judgment and Order are reversed, vacated, set aside, overturned or modified in any material respect by the Court presiding over the Action, or by any other court; then (a) the Agreement shall become null and void; (b) LAC shall cease to have any obligation under this Agreement, except for all notice and administration costs incurred as of the date the Settlement Administrator is notified that the Agreement has become null and void; (c) the Action shall be deemed to revert to its status as of the date and time immediately prior to the execution of this Agreement, and the Action may continue as if this Agreement had never been executed (the Parties agree to jointly request that the Court set a status conference for the purposes of re-setting appropriate dates and deadlines, including but not limited to a deadline for Plaintiff to move for class certification); and (d) any and all orders entered pursuant to the Agreement shall be deemed vacated, including, without limitation, any order certifying or approving certification of the Settlement Class; provided, however, that if any Party hereto individually appeals such ruling and the Agreement and Final Judgment and Order are upheld on appeal, then the Agreement and Final Judgment and Order shall be given full force and effect according to their terms.  In the event that the Agreement is deemed null and void, the Parties shall not refer to the fact or terms of this Agreement to establish liability or otherwise support the Parties' substantive positions in the Action.

## RELEASES

**17.     Release.**     Upon final approval of this Settlement and entry of Judgment dismissing the Action, the Plaintiff and the Settlement Class (hereafter the "Plaintiff Releasing

Parties") fully, finally, and forever settle, release, relinquish and discharge any and all Released

Claims against the Released Parties.

      **(A)**  The "Plaintiff Releasing Parties" include the Plaintiff and all of the

Settlement Class Members, their spouses and former spouses, heirs, executors, administrators,

representatives, agents, and assigns.

      **(B)**  The "Released Parties" are LAC, FanDrive Media LLC, Mobivity

Holdings Corp., and Mobivity, Inc., including but not limited to their respective past and

present affiliated or related parent or subsidiary corporate entities, affiliates and related entities,

as well as their respective owners, shareholders, investors, attorneys, trustees, advisors,

members, agents, directors, scientists, officers, managers, agents, endorsers, advertisers and

employees whether in their individual or official capacities, and, as to any such individuals,

including their spouses, heirs, executors, administrators, representatives, agents, and assigns.

The "Released Parties" shall also include third party entities who have sponsored or

participated in any way in any in-arena text message promotions by LAC during the Class

Period, including such entities' respective directors, officers, managers, and employees,

whether in their individual or official capacities.

      **(C)**  The "Released Claims" are all claims, causes of action, demands,

judgments, damages, liabilities, whether known or unknown, contingent or non-contingent,

including but not limited to, any and all attorneys' fees, costs, expenses, disbursements and

interest, which the Plaintiff Releasing Parties now own or hold or have at any time owned or

held, against the Released Parties and which arise out of or are in any way connected with the

allegations raised in the complaint.  Released Claims specifically include, but are not limited

to, any claims based upon the TCPA, any other legal or equitable claims of any type or nature

that arise out of or are in any way connected with the allegations presented in the Action, and those claims that are based upon or related to receipt of a call (including text messages) from the Released Parties, including all claims for damages, interest, penalties, attorney's fees, costs, or disbursements, or any other claim for damages not specifically described above, that are based upon the foregoing Released Claims.

      **(D)**   Without limiting the foregoing, the Released Claims specifically extend to TCPA claims, or claims relating to calls received during the Class Period that the Plaintiff Releasing Parties do not know or suspect to exist in their favor as of the date of Preliminary Approval of this Settlement.  In connection with such waiver and relinquishment, Plaintiff, on behalf of himself individually and in his representative capacities, and all Settlement Class Members are deemed to acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to release fully, finally and forever all Released Claims, and in furtherance of such intention, the release of the Released Claims will be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.  **In addition, Plaintiff, individually and on behalf of the Plaintiff Releasing Parties, specifically understands that he may later discover additional injuries or damages that fall within the definition of "Released Claims" set forth above and that are not known to him at this time.  This Agreement specifically applies to such later discovered injuries or damages, and Plaintiff, individually and on behalf of the Plaintiff Releasing Parties, specifically accepts the risk that he may later discover such injuries or damages.**

**(E)**   With respect to the "Released Claims" as defined above, the Plaintiff Releasing Parties hereby expressly waive and release, upon this Agreement becoming final or effective, any and all provisions, rights and benefits conferred by section 1542 of the California Civil Code which provides:

> **Section 1542. General Release–Claims Extinguished.   A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Plaintiff Releasing Parties also expressly waive and release any and all provisions, rights and benefits conferred on them by a statute, regulation or ordinance of any other jurisdiction which is similar to Section 1542, with respect to the "Released Claims" as defined above.

## MISCELLANEOUS PROVISIONS

**18.**   **Interpretation.**   This Agreement, and the Exhibits hereto, contain the entire agreement among the Parties hereto and supersedes any prior discussions, agreements or understandings among them.   All terms are contractual.   In the event of any alleged ambiguity, there will be no presumption or construction against either side as the drafter.

**19.**   **Headings.**   The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

**20.**   **No Rescission on Grounds of Mistake.**   The Parties acknowledge that they have conducted their own investigations of the matters covered by this Agreement to the extent they have deemed it necessary to do so.   Therefore, the Parties agree that they will not seek to set aside any part of this Agreement on the grounds of mistake.   Moreover, the Parties understand, agree, and expressly assume the risk that any fact not recited, contained, or embodied in the

Agreement may turn out hereinafter to be other than, different from, or contrary to the facts now known to them or believed by them to be true, and further agree that this Agreement shall be effective in all respects notwithstanding and shall not be subject to termination, modification, or rescission by reason of any such difference in facts.

21.    **Governing Law.**   This Agreement shall be interpreted in accordance with the laws of the State of California.

22.    **Execution in Counterparts.**   This Agreement may be executed in one or more counterparts and delivered by facsimile to counsel.  All executed counterparts, including those delivered to counsel by facsimile, and each of them shall be deemed to be one and the same instrument.  A facsimile copy shall be considered an original for all purposes.

23.    **No Admission.**   The Parties specifically understand that the promises made in accordance with this Agreement are not to be construed as an admission by any of the Parties or Released Parties for any purpose and understand that the Released Parties all deny any and all liability for any of the allegations set forth in the Action.  Plaintiff further understands that this settlement has been made for business reasons.  Nothing in this agreement is to be construed as LAC agreeing that this case was appropriate for class action status or certification.

24.    **Modifications Only in Writing and Authorization of Class Counsel.**   This Agreement, and the Exhibits attached hereto, may be amended or modified only by a written instrument signed by all of the undersigned parties or their successors-in-interest; except that Plaintiff, individually and as Class Representative, expressly authorize Class Counsel to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Agreement to effectuate its terms, and also expressly authorize Class Counsel to enter into such modifications or amendments to this Agreement on behalf of the Settlement Class as Class

Counsel deem appropriate. This Settlement Agreement, and the Exhibits attached hereto, reflect the entire agreement of Plaintiff, the Settlement Class and LAC relative to the subject matter hereof and supersedes all prior or contemporaneous oral or written understandings, statements, representations, or promises.

25. **Exhibits Incorporated by Reference.** Each and every exhibit to this Agreement is incorporated herein by this reference as though fully set forth herein.

26. **Legal Representation.** The Parties to this Agreement acknowledge that they have been represented by qualified legal counsel both in connection with the Action and in connection with the negotiation, drafting, and execution of this Agreement. Accordingly, the language used in this Agreement will be deemed to be language chosen by all parties hereto to express their mutual intent, and no rule of strict construction against any party hereto will apply to any term or condition of this Agreement.

27. **Commercially Reasonable Efforts.** The parties agree to cooperate in the execution of such documents and pleadings as are reasonably necessary and appropriate to obtain approval of and implementation of this Agreement, and to use commercially reasonable efforts to perform all terms of this Agreement.

28. **Confidentiality.** The Parties agree not to issue a press release or make any other statement orally or in writing regarding the Action or the resolution of the Action, other than as required to carry out the terms of this Agreement. If any Party is approached about, or asked by the media to comment upon the Action or the resolution of the Action, the Party may respond: "The matter has been settled."

IN WITNESS WHEREOF, the parties enter into this Agreement this 21 day of January, 2014.

ARI FRIEDMAN

_____
Plaintiff and Class Representative

_____

LAW OFFICES OF TODD M. FRIEDMAN, P.C.

_____
Todd M. Friedman, Esq.
Attorneys for Plaintiff Ari Friedman and the Settlement Class


LAC BASKETBALL CLUB, INC.

By _____
Andy Roeser, President


MANATT, PHELPS & PHILLIPS, LLP

By _____
Robert H. Platt, Esq.
Attorneys for Defendant LAC Basketball Club, Inc.


310703452.8

24