**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Attorneys for Plaintiffs*,
Erik Knutson and Kevin Lemieux

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERIK KNUTSON and KEVIN LEMIEUX, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SCHWAN'S HOME SERVICE, INC.; and CUSTOMER ELATION, INC.,<br><br>Defendants. | Case No.: 12-CV-00964-GPC (DHB)<br><br>**DECLARATION OF JOSHUA B. SWIGART IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date:** July 18, 2014<br>**Time:** 1:30 p.m.<br>**Place:** 2D<br>**Judge:** Hon. Gonzalo P. Curiel |

**DECLARATION OF JOSHUA B. SWIGART, ESQ.**

**I, JOSHUA B. SWIGART, declare:**

1. I am one of the attorneys for the plaintiffs in this action, Erik Knutson and Kevin Lemieux ("Plaintiffs"). I submit this declaration in support of the Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement in the action against defendants, Schwan's Home Service, Inc. and Customer Elation, Inc. (jointly referred to as the "Defendants"). I am over the age of 18 and am fully competent to make this declaration. I was admitted to the State Bar of California in 2003 and have been a member in good standing since that time. I am also admitted in every federal district in California and have handled federal litigation in Arizona, Washington and Texas. I am also a member of the bar for the District of Columbia. Additionally, I am a member admitted before the Ninth Circuit Court of Appeals and the United States Supreme Court. If called as a witness, I would competently testify to the matters herein from personal knowledge.

2. The declaration is based upon my personal knowledge, except where expressly noted otherwise.

3. This action was commenced on April 18, 2012, against Schwan's Home Service, Inc., by filing a putative class action complaint asserting causes of action for: (1) negligent violation of Section 227(b)(3)(B) of the Telephone Consumer Protection Act ("TCPA"), codified at 47 U.S.C. § 227 et seq., and (2) willful violation of Section 227(b)(3)(B) of the TCPA.

4. Plaintiffs filed a First Amended Complaint on December 4, 2012, and on February 20, 2013, Plaintiffs filed a Second Amended Complaint ("SAC") to add Customer Elation as a defendant.

5. The SAC alleges that Defendants, Schwan's Home Service, Inc., and Customer Elation, Inc., violated the TCPA by calling Erik Knutson's and Kevin Lemieux's

cellular telephones while attempting to advertise their products and/or services without obtaining prior express consent to do so.

6. Plaintiffs' motion for class certification was granted by the Court on September 5, 2013 (Dkt. No. 99).

7. The Court appointed Plaintiffs Erik Knutson and Kevin Lemieux as Class Representatives on December 9, 2013 (Dkt. No. 119).

8. The Court appointed Kazerouni Law Group, APC and Hyde and Swigart as Class Counsel on December 9, 2013 (Dkt. No. 119).

9. The Plaintiffs and Defendants (collectively the "Parties") have engaged in settlement discussions and negotiations regarding this action. As a result of this process and the Parties' representations to each other, the Parties believe that they are fully apprised of the relative strengths and weaknesses of each other's claims and defenses and the potential risks to each party of pursuing further litigation in this matter.

10. On September 6, 2012, Plaintiffs' Counsel and counsel for Defendants attended an Early Neutral Evaluation Conference with the Honorable Magistrate Judge David H. Bartick. With Judge Bartick, progress was made toward informally determining the parameters of discovery. Subsequent Case Management Conferences on November 7, 2012, and December 11, 2013, presided over by Judge Bartick, further regulated discovery and other pretrial proceedings. Counsel for the Parties then continued negotiations among themselves for several months, culminating in a settlement of this case at an early stage of the proceedings in January 2014, with a settlement agreement finalized in early May of 2014.

11. The Parties to the action also engaged in two (2) mediation sessions, one before the Honorable Leo S. Papas (Ret.) and one before the Honorable Leo Wagner (Ret.), which helped the Parties progress towards a settlement on a class basis.

12. In an attempt to put the settlement details in writing, and in projecting the implementation of its terms, the Parties negotiated for a few additional months after mediation before agreeing on how the Settlement details would be resolved, including how best to identify the persons in the Settlement Class. The Parties agreed to settle on the terms in the Settlement Agreement as set forth therein, on behalf of a Settlement Class of all past or present NutriSystem, Inc. customers whose names are associated with cellular telephone numbers called by Defendants using an automatic telephone dialing system and/or prerecorded voice between April 18, 2008 and August 31, 2012. Pursuant to the Settlement Agreement (the "Agreement"), those persons in the Settlement Class will receive a cash payment of $20.00 in the form of a check and a voucher for Schwan's products in the amount of $80.00, paid on a claims made basis. The voucher shall not be redeemable for cash, shall be non-transferable, and shall expire two years after it is issued. Also, the check shall be non-transferable, and shall expire one hundred and twenty days after it is issued.

13. As part of that Agreement, Defendants will pay a maximum of $2,535,280.00 as the settlement benefits (the "Settlement Benefits") for all approved claims. Defendants will also pay all attorneys' fees and expenses, and costs of notice and claims administration from the Settlement Benefits. Further, Defendants will pay for the Class Action Fairness Act Notice.

14. It is my opinion that the Class as defined satisfies the requirements of Rule 23 because all persons in the Settlement Class are persons with names associated with cellular telephone numbers that Defendants called at least once using an automatic telephone dialing system and/or prerecorded voice during the Class Period.

15. All of the members of the Class will be sent a direct mail notice in the form of a postcard explaining they are entitled to make a claim and how to file such claim. They are part of the members of the Class and are entitled to a monetary

1  payment via the aforementioned check and the voucher for Schwan products
2  through Schwan's online store. Additionally, this settlement serves as a
3  deterrent to future violations of the TCPA.

4  16. The claims administrator shall establish and maintain a Settlement Website that
5  (i) enables Class Members to submit a claim and access and download the Class
6  Notice and Claim Form, (ii) provides contact information for Class Counsel,
7  (iii) and provides access to relevant documents. Such documents shall include
8  the Settlement Agreement and Class Notice, the Preliminary Settlement
9  Approval Order, a downloadable Claim Form for anyone wanting to print a
10  hard copy and mail in the Claim Form, the Second Amended Complaint, a list
11  of frequently asked questions and answers, and when filed, the Final Settlement
12  Approval Order. The Class Notice shall include the address (URL) of the
13  Settlement Website. The claims administrator shall maintain the Settlement
14  Website until at least 30 days following final approval of the Settlement. Class
15  Members will be permitted to submit a claim via the Settlement Website.

16  17. By the date required by the Court to send out notice, the claims administrator
17  shall set up a toll-free telephone number for receiving toll-free calls related to
18  the Settlement.  That telephone number shall be maintained until thirty (30)
19  days after the Claims Deadline.  Class Members will not be permitted to submit
20  a claim by calling the toll-free telephone number established by the claims
21  administrator. After that time, and for a period of ninety (90) days thereafter,
22  either a person or a recording will advise any caller to the toll-free telephone
23  number that the Claims Deadline has passed and the details regarding the
24  Settlement may be reviewed on the related settlement website.

25  18. Class Counsel may issue a neutrally worded press release, the contents of which
26  have been agreed to in advance by all Parties.  If issued, the purpose of the
27  press release will be to facilitate Class Members learning about the settlement,
28

**Kazerouni Law Group, APC**
Costa Mesa, California

and to provide instructions on how they may obtain additional information about the settlement.

### CLASS DEFINITION

19. The Settlement Class is defined as follows:

> All persons who are past or present customers of NutriSystem, Inc., who had or have a number assigned to a cellular telephone service, which number was called by Defendants using an automatic telephone dialing system and/or an artificial or prerecorded voice between April 18, 2008 and August 31, 2012. Excluded from the Class are persons who Defendants called for emergency purposes or persons who gave express consent to Defendants to call their cellular telephone number prior to Defendants first placing a call using an automatic telephone dialing system and/or artificial or prerecorded voice. Also excluded from the Class are Defendants, their officers and directors, families and legal representatives, heirs, successors or assigns and any other entity in which Defendants have a controlling interest, any judge assigned to this case and their immediate families.

Settlement Agreement, § 1.6; Docket No. 119.

20. Based on the representations from Defendants, there are an estimated 16,691 unique cell phone numbers of past or present customers of NutriSystem, Inc. contained in Defendants' records that were called by Defendants using an automatic telephone dialing system and/or prerecorded voice between April 18, 2008 and August 31, 2012.

21. Settlement will be terminable at the option of the Parties if: (a) any objections to the proposed settlement are sustained, which results in changes to the settlement described in this Agreement that the withdrawing Party deems in good faith to be material (e.g., because it increases the cost of settlement or deprives the withdrawing Party of a benefit of the settlement); (b) the final approval of the settlement described in this Agreement results in changes that

the withdrawing Party did not agree to and that the withdrawing Party deems in good faith to be material (e.g., because it increases the cost of settlement or deprives the withdrawing Party of a benefit of the settlement); (c) more than 1% of the Class Members exclude themselves from the settlement described in this Agreement; or (d) the final approval of the settlement described in this Agreement is (i) substantially modified by an appellate court and the withdrawing Party deems any such modification in good faith to be material (e.g., because it increases the cost of settlement or deprives the withdrawing Party of a benefit of the settlement) or (ii) reversed by an appellate court. The Agreement also shall be terminable upon the mutual agreement of the Plaintiffs, Class Counsel and Defendants.

22. In order to receive a monetary payment from the Settlement Benefits, a Class Member must be a member of Class – those past or present customers of NutriSystem, Inc. actually called on their cellular telephones by Defendants without consent. Based on data to be provided to the claims administrator, which will be prepared using the information in Defendants' records, the Settlement Class Members will be sent personal direct mail notice (the "Class Notice"). There are an estimated 16,691 unique cellular telephone numbers contained in Defendants' records which may have been called by an automated dialer or prerecorded voice during the class period. Plaintiffs are in the process of conducting confirmatory discovery regarding this figure.

23. After approval of Preliminary Approval of Settlement, the pertinent cellular telephone numbers will be disclosed by Defendants to the claims administrator approved by the Court. The Parties propose that Kurtzman Carlson Consultants ("KCC") be appointed as claims administrator. KCC specializes in providing administrative services in class action litigation, and has extensive experience in administering consumer protection and privacy class action settlements.

///

**ADEQUACY OF SETTLEMENT**

24. Defendants shall provide class benefits for a maximum of $2,535,280.00, consisting of a maximum cash contribution of $1,200,000 and a maximum contribution of $1,335,280 of in Schwan's product vouchers. Those Settlement Class Members will receive a cash payment of $20.00 in the form of a check and a voucher for Schwan's products in the amount of $80.00, paid on a claims made basis for approved claims.

25. Costs of litigation, notice, claims administration and attorneys' fees are being paid by the Defendants from the Settlement Benefits.

26. Any incentive payment awarded to the Representative Plaintiffs (Erik Knutson and Kevin Lemieux), any attorneys' fees and costs awarded to Class Counsel and certain expenses including Claims Administration Costs, are to be paid from the Settlement Benefits by Defendants as follows:

    (1) Administration Expenses and payment of notice, estimated at just under $38,000, paid from Defendants' maximum cash payment of $1,200,000 portion of the Settlement Benefits, which will not exceed $38,000 according to representations by KCC to Plaintiffs' counsel;

    (2) Attorneys' fees and costs to Class Counsel, as approved by the Court, up to $780,000, paid from Defendants' maximum cash payment of $1,200,000 portion of the Settlement Benefits;

    (3) Incentive/Service Award to Representative Plaintiffs in an amount up to $1,500 each, paid from Defendants' maximum cash payment of $1,200,000 portion of the Settlement Benefits; and,

    (4) Payment of reasonable and appropriate costs of litigation (to be itemized), and not to exceed $30,000, paid from Defendants' maximum cash payment of $1,200,000 portion of the Settlement Benefits.

27. Defendants will be permitted to maintain that they deny liability. If the claims administrator approved by the Court determines that a Class Member's cell

1  phone number was not called because it is not on the list of called cell phone
2  numbers according to the information to be provided by Defendants to the
3  claims administrator, that person will not be entitled to file a claim for a
4  monetary payment.

5  28. The costs of notice by mail and claims administration will be paid as part of the
6  Settlement Benefits.

7  29. The proposed Settlement contemplates that Class Counsel will request an
8  incentive award in the amount of $1,500 each to be distributed to the two Class
9  Representatives, Erik Knutson and Kevin Lemieux, as proposed by Class
10 Counsel, subject to Court approval.  Defendants have agreed not to oppose a
11 request for such incentive award in the agreed-upon amount.

12 30. The proposed Settlement contemplates that Class Counsel shall be entitled to
13 apply to the Court for an award of attorneys' fees, costs, and expenses to be
14 paid from within the Settlement Benefit. Defendants have agreed not to oppose
15 an application by Class Counsel for an award of attorneys' fees up to $750,000
16 from the Settlement Benefits, which represents 29.58% of $2,535,280. I believe
17 the excellent results of this Settlement warrant attorneys fees in this amount.
18 Class Counsel also intend to request that the costs of litigation and any costs of
19 Notice and Claims administration, to be paid from the Settlement Benefits.
20 Class Counsel further intend to also ask for costs of litigation not to exceed
21 $30,000 to be paid from the Settlement Benefit.

22 31. The attorneys' fees and costs application will be prepared solely by Class
23 Counsel, and any attorneys' fees and costs shall be paid to all counsel through
24 Class Counsel.

25 32. As Defendants do not necessarily have correct address information for all the
26 past or present customers of NutriSystem, Inc. called by Defendants, Class
27 Notice is to be provided by mail to persons in the class for which Defendants
28 have addresses.

33. The $2,535,280 in Settlement Benefits shall pay for the Settlement. Class Counsel have prepared a direct mail notice and also a formal lengthy Notice in a Question & Answer format to be posted on the Settlement Website that will be created upon preliminary approval of this class action settlement by the Court. Those notices adequately inform the Class Members about the settlement and their rights to opt out or object to the Settlement. I believe the proposed notice complies with any notice requirements. KCC, the Parties' proposed claims administrator, will use the Class List from Defendants containing all Class Members' names and addresses, to send out the direct mail notice within thirty (30) days of preliminary approval, where possible.

34. The claims process requires that the members of the Settlement Class: (i) provide his or her name and current address to which the compensation may be sent; and (ii) provide the telephone number on which he or she received the allegedly unlawful call. Claims may be rejected at Defendants' option if the cell number does not match a number actually called by or on behalf of Defendants. Claims may be submitted via mail or the Settlement Website, as well as by calling the toll-free telephone number.

35. I am unaware of any competing litigation.

### RISKS OF CONTINUED LITIGATION

36. Taking into account the burdens, uncertainty and risks inherent in this litigation, Class Counsel have concluded that further prosecution of this action could be protracted, unduly burdensome, and expensive, and that it is desirable, fair, and beneficial to the class that the action now be fully and finally compromised, settled and terminated in the manner and upon the terms and conditions set forth in the Settlement Agreement, especially since Defendants have filed a motion for summary judgment as to the entire class and a motion to decertify class action.

37. The named Plaintiffs and their counsel believe that the claims asserted in the action have merit. However, taking into account the risks of continued litigation, as well as the delays and uncertainties inherent in such litigation including the risks in any subsequent appeal, they believe that it is desirable that the action be fully and finally compromised, settled and terminated now with prejudice, and forever barred pursuant to the terms and conditions set forth in this Settlement Agreement. Class Counsel have concluded that with the Settlement Benefit and with the deterrent effects of the this Settlement, Class Counsel believe the terms and conditions of this Settlement Agreement are fair, reasonable and adequate to the proposed class, and that it is in the best interests of the proposed class to settle the Action.

38. Additionally, further developments in case law under the TCPA show substantial risks that these types of cases may not be certified. *See Smith v. Microsoft Corp.*, 2014 U.S. Dist. LEXIS 12799 (Class certification denied); *Connelly v. Hilton Grand Vacations Co.*, LLC, 2013 U.S. Dist. LEXIS 157951 (Class certification denied); *Newman v. Americredit Fin. Servs.*, 2014 U.S. Dist. LEXIS 15728, *20 (S.D. Cal. Feb. 3, 2014) (denying renewed motion for preliminary approval of class action settlement).

39. A settlement was finalized, agreed upon by all Parties and counsel and a formal Settlement Agreement was executed. This motion for preliminary approval of class action settlement followed, which Defendants have agreed in the Settlement Agreement not to oppose.

40. The Plaintiffs and the Class will provide a global release to the Released Parties as outlined in the Agreement, § 13.

### CLASS COUNSEL'S EXPERIENCE

41. Hyde & Swigart and Kazerouni Law Group, APC, and have already been preliminarily confirmed as Class Counsel for purposes of this action. As will be reflected in both my declaration and the declaration to be submitted by Abbas

Kazerounian, I am informed and believe that Class Counsel are qualified and able to conduct this litigation as a class action. It is my understanding that Kazerouni Law Group, APC is submitting a separate declaration with this unopposed submission in support of their adequacy to continue to serve as Class Counsel.

42. I am an attorney admitted to practice in the State of California and am a partner at Hyde & Swigart, which has been retained to represent Plaintiffs Erik Knutson and Kevin Lemieux in the above-captioned matter. I am a Partner of the law firm of Hyde & Swigart, co-counsel of record for Plaintiffs.

43. Since my admission, I have been engaged exclusively in the area of consumer rights litigation, primarily in the area of fair debt collections, the defense of debt collection lawsuits, and class action litigation under the Telephone Consumer Protection Act. My firm, Hyde & Swigart, in which I am a principal, has litigated over one-thousand cases in the past ten years. My firm has three California offices in San Diego, Riverside, and San Francisco, as well as one office in Phoenix, Arizona.

44. I have filed and litigated several other class actions based on the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA") in the past three years. The following is a list of other TCPA class actions which I am or have been personally involved in:

   a. *Bellows v. NCO Financial Systems, Inc.*, 07-CV-01413-W (AJB);
   b. *Adams v. AllianceOne, Inc.*, 08-CV-0248-JAH;
   c. *Lemieux v. Global Credit & Collection Corp.*, 08-CV-1012-IEG (POR);
   d. *Malta v. Wells Fargo Home Mortgage, et al.*, 10-CV-1290-IEG (BLM);
   e. *Conner v. JPMorgan Chase Bank, et al.*, 10-CV-1284-DMS (BGS);
   f. *Robinson v. Midland Funding, LLC*, 10-CV-2261-MMA (AJB);
   g. *Arthur v. SLM Corporation*, 10-CV-00198-JLR;
   h. *Ryabyshchuk v. Citibank (South Dakota) N.A.*, 11-CV-1236-IEG (WVG);

    i. *Ridley v. Union Bank, N.A.*, 11-CV-1773-DMS (NLS);

    j. *Allen v. Wells Fargo Auto Finance, Inc.*, 10-CV-02657-W (JMA);

    k. *Gutierrez, et al. v. Barclays Group, et al.*, 10-CV-1012-DMS (BGS);

    l. *Lo v. Oxnard European Motors, LLC, et al.*, 11-CV-1009-JLS (MDD).

45. I have been appointed and approved by various courts as class counsel on similar TCPA class actions, including:

    a. *Bellows v. NCO Financial Systems, Inc.*, 07-CV-01413-W (AJB);

    b. *Lemieux v. Global Credit & Collection Corp.*, 08-CV-1012-IEG (POR);

    c. *Lo v. Oxnard European Motors, LLC, et al.*, 11-CV-1009-JLS (MDD) (Final approval granted);

    d. *Gutierrez, et al. v. Barclays Group, et al.*, 10-CV-1012-DMS (BGS);

    e. *Arthur v. SLM Corporation*, 10-CV-00198-JLR (Preliminarily approved, pending final approval);

    f. *Adams v. AllianceOne, Inc.*, 08-CV-0248-JAH (WVG) (Preliminarily approved, pending final approval);

    g. *Conner v. JPMorgan Chase Bank, et al.*, 10-CV-1284-DMS (BGS) (Preliminarily approved, pending final approval); and,

    h. *Barani v. Wells Fargo Bank, N.A.*, 12-CV-02999-GPC (KSC) (S.D. Cal.) (Class action settlement under the TCPA for the sending of unauthorized text messages to non-account holders in connection to wire transfers; preliminary approval granted).

46. To date, I am responsible for over twenty published decisions. A few of the more notable published decisions in the area of consumer collections for which I am responsible include:

    a. *Hosseinzadeh v. M.R.S. Assocs.,* 387 F.Supp.2d 1104 (C.D. Cal. 2005) (Summary judgment was granted *sua sponte* in favor of a debtor where debt collector violated the Fair Debt Collection

Practices Act, when its employees failed to disclose the debt collectors identity and the nature of its business in the messages left on the debtor's answering machine). This case has been followed in at least four different districts throughout the country.

b. *Bellows v. NCO Financial Systems, Inc.,* 07-CV-01413-W (AJB); TCPA action resolved on a class-wide basis with a maximum aggregate amount to be paid of $950,000.

c. *Edstrom v. All Servs. & Processing*, 2005 U.S. Dist. LEXIS 2773 (N.D. Cal. 2005) (Numerous omissions from a letter sent by a debt collector to members of a homeowners association, and a statement requiring any dispute to be put in writing, violated 15 U.S.C. § 1692g(a) of the FDCPA and Cal. Civ. Code §1788.17. The FDCPA required strict compliance; actual confusion on debtors' part was not required).

d. *Forsberg v. Fid. Nat'l Credit Servs.*, 2004 U.S. Dist. LEXIS 7622 (S.D. Cal. 2004) (Plaintiff alleged sufficient facts to support his claim that a collection company, in its initial communication, did not comply with the statutory requirements for notice of validation of debts under the FDCPA).

e. *Sparrow v. Mazda Am. Credit*, 385 F. Supp. 2d 1063 (N.D. Cal. 2005) (Court struck Defendant's counter claim of the underlying debt in a fair debt action based on lack of subject matter jurisdiction).

f. *Geoffroy, et al. v. Washington Mutual Bank,* 484 F. Supp. 2d 1115 (S.D. Cal. 2007) (Court striking down Defendant's arbitration agreement as both procedurally and substantively unconscionable).

g. *CashCall, Inc. v. Superior Court*, 159 Cal. App. 273 (2008); The 2008 *CashCall* case expanded the rights of putative class members to obtain pre-certification class member discovery to substitute a new

class representative, even when the named plaintiffs had no standing to initially bring the action.

h. *Yang v. DTS Financial Group*, 07-CV-1731 JLS (WMc); Holding that for-profit debt settlement companies are covered under the FDCPA and can be construed as "debt collectors" under 15 U.S.C. § 1692a(6).

i. *Mason v. Creditanswers,* 2008 U.S. Dist. LEXIS 68575; Holding that a forum selection clause causing a California consumer to litigate its claims seems contrary to the polices advanced by certain consumer protection statutes.

j. *Myers v. LHR, Inc.*, 543 F. Supp. 2d 1215 (2008); Recognizing actual and statutory damages in the amount of $92,000 in a default judgment based on violations of the state and federal collection statutes.

k. *Yates v. Allied Intl Credit Corp.*, 578 F. Supp. 2d 1251 (2008); Holding a debtors claim based on the FDCPA stemming from the filing of a false police report was not subject to the litigation privilege under Cal. Civ. Code § 47(b).

l. *Owings v. Hunt & Henriques, et al.*, 2010 U.S. Dist. LEXIS 91819 (S.D. Cal.); Recognizing that the Servicemembers Civil Relief Act applies to California National Guard Members and that the debt collection attorney's false declaration to the court violates the FDCPA.

m. *Kight v. CashCall, Inc.*, 4th District, Div. One, D057440 (Nov. 21, 2011); In the recent *CashCall* case, the Court of Appeal reversed the trial court's granting of summary judgment for Defendant on the issue of the type of warning required to be provided when calls are monitored by companies, and what types of entities must provide

such warnings. The Court of Appeal thereby protected the rights of California citizens under the Privacy Act.

47. I have undergone extensive training in the area of the Fair Debt Collection Practices Act. The following is a list of recent training conferences I attended:

   a. National Consumer Law Conference; Oakland, CA – 2003;
   b. National Consumer Law Conference (FDCPA Mini-Conference); Kansas City, MO – 2004;
   c. National Consumer Law Conference; Boston, MA – 2004;
   d. Five-day extensive one-on-one training with The Barry Law Office; San Diego, CA – 2005;
   e. Three-day FDCPA Mini-Conference; Minneapolis, MN – 2005;
   f. Four-day extensive one-on-one training with The Barry Law Office; Minneapolis, MN – 2005
   g. Four-day National Association of Consumer Advocates Conference; Minneapolis, MN – 2005
   h. Four-day National Consumer Law Conference; Nashville, TN – 2008;
   i. Three-day National Consumer Law Conference; Portland, OR – 2008;
   j. **Speaker** at Three-day National Consumer Law Center Conference; San Diego, CA – 2009;
   k. **Speaker** ABA/JAG presentation to military service members and counsel; MCRD, San Diego, CA – 2010;
   l. **Speaker** ABA teleconference on defending consumer credit card debt and related issues; San Diego, CA – 2010.

48. I am also a member in good standing of the following local and national associations:

   a. National Association of Consumer Advocates;

   b. Federal Bar Association;
   c. Consumer Attorneys of California;
   d. San Diego County Bar Association;
   e. Riverside County Bar Association;
   f. San Bernardino County Bar Association;
   g. Enright Inns of Court

49. I have been requested to and have made regular presentations to community organizations regarding consumer protection laws. The following are a few examples of such presentations:

   a. California Western School of Law, 2005;
   b. Canyon Springs High School, Moreno Valley, CA 2003-2008; Careers in the legal field.
   c. Guest speaker on national talk radio. Topic: the passage of House Bill allowing the IRS to send past due consumer tax bills to private debt collection firms;
   d. Regular host on 103.7 Free FM on the radio show Know The Law. Topics addressing specific collection issues. Appearances number more than ten shows;
   e. Department of Defense; JAG Office, Naval Station San Diego (2006);
   f. Department of Defense; JAG Office, Naval Station San Diego, relevant Fair Credit Reporting issues and the Fair Debt Collection Practices Act (2008);
   g. American Bar Association – Legal Assistance for Military Personnel, Naval Station – North Island (2008);
   h. National Consumer Law Center - E-Discovery issues - San Diego (2009);
   i. National Association of Retail Collection Attorneys - Prosecuting

consumer cases - San Francisco (2009);

j. American Bar Association - Seminar on defending consumer collection cases (2010);

k. Military Law Committee (MCRD) - Representing military service members in consumer related issues - San Diego (2010).

50. Therefore, I believe my experience is sufficient to act as Class Counsel in this case.

I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on May 5, 2014.

By: /s/ Joshua B. Swigart
Joshua B. Swigart